/3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Souther⁻ District of Texas
FILED

JUN 1 9 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CITY OF SAN BENITO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| V. | § | C. A. NO. B03-080 |
| | § | JURY TRIAL REQUESTED |
| TEJAS GAS PIPELINE COMPANY, ET AL., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendants Tejas Gas Pipeline Company, Tejas Gas Pipeline, L.L.C., Tejas Gas Pipeline, L.P., Tejas Gas, L.L.C., Tejas Gas Marketing, L.L.C., Gulf Energy Marketing Company, Gulf Energy Marketing L.L.C., Coral Energy Services L.L.C., Coral Energy Resources L.P., and Shell Gas Trading Company, expressly reserving all objections to improper venue, file this Opposition to Plaintiff's Motion to Remand and show the Court the following:

### INTRODUCTION

The plaintiff in this matter, the City of San Benito, seeks an order from the court forcing defendants to remove any and all pipelines and facilities from within the City limits, including the City rights of way. Plaintiff also seeks a declaration that it is entitled to compensation under a street rental ordinance for defendants' alleged acts, omissions, and trespasses in the city. The injunctive and declaratory relief sought by plaintiff would prevent all defendants from doing business in the City of San Benito and would cause all defendants to suffer substantial damages, both from business interruptions as well as being forced to pay rent to use defendants' own property. Defendants properly removed this suit pursuant to 28 U.S.C. §§ 1331 and 1441(b), and one or more provisions of the United States Constitution, including Art I, § 8, and the Fifth and

30493317.2

Fourteenth Amendments.  Plaintiff's attempt to remand should be denied for each of the following reasons:

- United States Supreme Court precedent clearly evidences that defendants' removal was timely since defendants were never formally served with process;

- All necessary defendants have consented to the removal;

- Substantial federal constitutional questions are raised by plaintiff's demand for an order to prevent all defendants from doing business in the City of San Benito and to pay rent on defendants' own property.  As Chief Judge Schell of the Eastern District of Texas has squarely held in a similar removal case, to obtain equitable relief, plaintiff has necessarily assumed the burden to prove compliance with rights and obligations under federal law; and

- The Tax Injunction Act and abstention do not apply to the present action, particularly because plaintiff's action involves a claim for rent rather than taxes, so injunction or abstention of this action is unnecessary and improper.

## BACKGROUND FACTS

This case was originally brought in December 31, 1996, as a class action by three cities— City of San Benito, City of Primera, and City of Port Isabel—against a local natural gas distribution company and several pipelines not including the current defendants.  This original case was assigned Cause No. 96-12-7404-A.  The City of San Benito initially sought and obtained appointment as class representative; however once the main claims asserted in the case were settled in principle, the City of San Benito sought to opt out of the class and have its new claims against another group of defendants severed into a separate action in the same state district court.  On May 19, 2000 the City of San Benito's claims were severed into another case, Cause No. 2000-08-3596-A, *The City of San Benito v. PG&E Gas Transmission, Texas Corporation, et al.* (the "State Action").

On or about December 31, 2001, plaintiff filed its Fifth Amended Petition in the State Action which added nearly fifty new defendants including these defendants, Tejas Gas Pipeline Company, Tejas Gas Pipeline, L.L.C., Tejas Gas Pipeline, L.P., Tejas Gas, L.L.C., Tejas Gas

Marketing, L.L.C., Coral Energy Services L.L.C., and Coral Energy Resources L.P. None of these defendants were given any notice that they had been named in the lawsuit. On or about January 29, 2002, following the settlement and dismissal of claims against a second group of defendants, plaintiff City of San Benito sought another order of severance which was entered severing the claims against the settling defendants into a third new case in the same state district court.

On or about March 14, 2003, plaintiff filed its Seventh Amended Petition, Petition for Declaratory Judgment, Request for Injunctive Relief and Request for Jury Trial (the "Seventh Amended Petition") in the 107th Judicial District Court of Cameron County, Texas, styled *City of San Benito v. Tejas Gas Pipeline Company, et al.* On or about the same day, plaintiff's counsel sent a letter to the defendants attaching the Seventh Amended Petition, and for the first time the defendants received notice that they had been named in the lawsuit. None of the defendants named in the Seventh Amended Petition has been formally served. Nevertheless, on or about April 11, 2003, Pennzoil Gas Marketing Company, without being served, filed its original answer. Without defendants' knowledge, on or about April 30, 2003, the same day the defendants' removed this action, at 10:00 a.m., Cinergy Marketing & Trading, LP, without being served, filed its original answer. Approximately three hours later, at 1:55 p.m., defendants filed their Notification of Removal in the State Action after filing their Notice of Removal in federal court. On May 5, 2003, without knowledge that the State Action had been removed, Gulf Coast Energy, Inc. first appeared in the State Action by filing its original answer (mislabeled as its First Amended Original Answer). Pennzoil Gas Marketing Company, Cinergy Marketing & Trading, LP , and Gulf Coast Energy, Inc. have all filed consents to removal in this Court.

## ARGUMENT AND AUTHORITIES

### I. DEFENDANTS' REMOVAL WAS TIMELY

Plaintiff's argument that the "case should be remanded to state court based on defendants' failure to remove the case within thirty days of the filing of Plaintiff's Seventh Amended Petition" is contrary to controlling United States Supreme Court precedent directly on point. *See* Motion to Remand at ¶ 17. In *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999), the United States Supreme Court held that the 30-day removal period began to run only after the defendant was formally served, bringing the individual or entity under the court's authority. In *Murphy Bros.*, the plaintiff sent the defendant a courtesy copy of a file stamped complaint but did not formally serve the defendant until after settlement discussions. *See id.* at 348. The defendant removed the action within 30 days of being formally served with the complaint but 44 days after receiving the faxed copy of the complaint. *See id.* Plaintiff claimed that the removal was untimely under 28 U.S.C. § 1446(b) because the notice of removal had not been filed within 30 days of the date on which defendant had received the facsimile transmission. *See id.* The Court rejected plaintiff's claim stating:

> In sum, it would take a clearer statement than Congress has made to read its endeavor to extend removal time (by adding receipt of the complaint) to effect so strange a change – to set removal apart from all other responsive acts, to render removal the sole instance in which one's procedural rights slip away before service of a summons, *i.e.*, before one is subject to any court's authority.

*Id.* at 356.

In the present action the City of San Benito, like the plaintiff in *Murphy Bros.*, argues that defendants' removal is untimely under 28 U.S.C. § 1446(b) because the notice of removal was not filed within 30 days of the date on which the Seventh Amended Petition was filed and a copy provided to defendants. However, unlike the defendant in *Murphy Bros.*, defendants were never

formally served with the petition.[1]  Although not required to do so, defendants filed their notice of removal within 30 days of the date on which Pennzoil Gas Marketing Company, the first defendant to appear in the State Action, filed its original answer in the State Action.[2]  Therefore, defendants removal was timely.

## II.  ALL NECESSARY DEFENDANTS HAVE CONSENTED TO THE REMOVAL

"[A] defendant who has not been properly served need not consent to the notice of removal."  *McCrary v. Kansas City Southern Railroad*, 121 F. Supp.2d 566, 570 (E.D. Tex. 2000); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 540 (1939) (providing for removal "although the other defendants have not been served with process and have not appeared"); *Jones v. Houston Indep. School Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) (finding that the party's failure to join in the removal petition was not a bar to the federal court's jurisdiction because the party was not served until after the case had been removed).  The only party, to defendants' knowledge at the time of filing their Notice of Removal, to appear and answer in the State Action, Pennzoil Gas Marketing Company ("Pennzoil"), joined in and consented to the removal.  *See* Notice of Removal at ¶ 21.[3]  Following removal of the action, defendants became aware that Cinergy Marketing & Trading, LP ("Cinergy") had appeared and answered in the State Action only hours before the removal papers were filed.  Upon learning that Cinergy had answered in the State Action, defendants obtained Cinergy's consent to the removal and Cinergy has filed its Consent to Removal.  Gulf Coast Energy, Inc. ("Gulf Coast") first appeared and

---

[1] The Seventh Amended Petition also evidences that none of the defendants were formally served.  Paragraph 1.2 of the petition states, "Service is not requested on Defendants at this time."  Seventh Amended Petition at ¶ 1.2.

[2] Pursuant to the Court's holding in *Murphy Bros.*, the defendants could have waited until they were formally served to remove the present action.

[3] Although not required, Pennzoil has filed a Consent to Removal to confirm its consent and joinder in the removal.

answered in the State Action after removal was effectuated and therefore its consent is

unnecessary. Nevertheless, Gulf Coast has also filed its Consent to Removal.[4] Therefore, all

necessary defendants have consented to the removal.

### III. PLAINTIFF'S ATTEMPT TO PREVENT ALL DEFENDANTS FROM DOING BUSINESS IN THE CITY OF SAN BENITO AND TO REQUIRE DEFENDANTS TO PAY RENT ON THEIR OWN PROPERTY RAISES A SUBSTANTIAL FEDERAL QUESTION

Federal courts have jurisdiction to hear cases where "plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v.

Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). As the Supreme Court made

clear in *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1996), there is no "automatic

test" or talismanic presumption that precludes the removal of cases in which a plaintiff alleges

only causes of action founded on state law. *Id.* at 814. On the contrary, the propriety of removal

in such cases turns on "careful judgments about the exercise of federal judicial power" based on

the "nature of the federal interest" at issue in the particular case.[5] *Id.* The substantial federal

question doctrine requires that, in determining the existence of removal jurisdiction, "the nature

of the federal issues at stake" must be analyzed "with an eye to practicality and necessity"[6] and

must be "informed by a sensitive judgment about whether the existence of federal judicial power

**is both appropriate and pragmatic.**" *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th

Cir. 1996) (emphasis added). "Even though state law creates [a party's] causes of action, its case

---

[4] Gulf Coast confirmed in its Consent to Removal that it first appeared in the State Action after removal. Gulf Coast inadvertently filed a pleading mislabeled "First Amended Original Answer" in the State Action which was in reality its original answer and first appearance.

[5] *Merrell Dow* "reserve[s] a wide discretion to tailor the 'arising under' jurisdiction to the practical needs of the particular situation." RICHARD H. FALON, HART & WECHSLER'S FED. COURT'S & THE FEDERAL SYSTEM at 931 (4th ed. 1996).

[6] *Merrell Dow*, 478 U.S. at 810, 814; *West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987).

might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 13.

This case is properly in federal court and the equities are in favor of Defendants. A defendant has a fundamental right to a federal forum and courts will scrutinize a plaintiff's attempt to craft its pleadings in a calculated way to deprive a defendant of this right. *See, e.g., Prince v. Rescorp Realty*, 940 F.2d 1104, 1105 (7th Cir. 1991) ("A federal forum for federal claims is certainly a defendant's right."); *McCaulley v. Purdue Pharm., L.P.*, 172 F. Supp.2d 803, 810 (W.D. Va. 2001) ("It is the defendants who will be prejudiced should they lose their federal forum, to which they now have a right."); *Nogueras Cartagena v. Rossello Gonzalez*, 182 F.R.D. 380, 386 (D.P.R. 1998) (denying remand and emphasizing defendant's statutory right to federal forum). Here, plaintiff, intent on avoiding federal court, disingenuously asserts that it "does not seek a taking without due compensation" and that defendants will only have to remove their property from the City limits and rights of way if they are unwilling to comply with the City's ordinances. Motion to Remand at ¶ 4. Plaintiff's characterization of its lawsuit, of course, is not controlling on this Court. *See, e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) ("As one treatise puts it, courts 'will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization.'" (citing 14 C. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3722, p. 564-66 (1976)). Since plaintiff seeks unprecedented and far-reaching equitable relief, the case raises substantial federal constitutional issues which must be resolved before any such sweeping relief can be awarded.

A.    **The Substantial Constitutional Issues Present in the Lawsuit are an Element of Plaintiff's Prima Facie Claim for Equitable Relief**

Plaintiff's own petition and Chief Judge Schell's opinion in *Grynberg Prod. Corp. v. British Gas,* 817 F. Supp. 1338 (E.D. Tex 1993), establish that the constitutional issues are a material element of plaintiff's claim for equitable relief.

In *Grynberg,* Chief Judge Schell of the Eastern District of Texas held: "Texas has chosen to make negativing certain facts <u>part of the plaintiff's prima facie case for injunction,</u> and therefore, such allegations form part of the 'well-pleaded complaint' for federal question purposes." 817 F. Supp. at 1361 (emphasis in original). Chief Judge Schell carefully explained his reasoning:

> The requirement that the plaintiff's petition for injunction must negative certain inferences <u>is not simply a technical pleading rule.</u> Instead, the negativing allegations are necessary to state a claim for injunctive relief. . . . It is part of the plaintiff's case and the plaintiff's burden to <u>disprove</u> any lawful explanations for the defendant's behavior or any other reasonable inference that could justify denial of relief. . . . Thus, in an injunction suit under Texas substantive law, many things which might otherwise be characterized as defenses are really not defenses but essential elements of the plaintiff's prima facie case.

*Grynberg,* 817 F. Supp. at 1361 (emphasis in original) (citations omitted). The *Grynberg* court found that to state a claim for an injunction compelling specific performance and other injunctive relief, the plaintiff "would have to negative every hypothesis by which British Gas's actions could be found lawful," which raised substantial issues of federal law related to an international acquisition. *Id.* at 1362. Plaintiff seemingly concedes the holding in *Grynberg* by failing to distinguish the case and instead choosing to make broad self-serving assertions that "Plaintiff's Petition solely states causes of action under Texas law" and "Plaintiff does not invoke any federal law or federal question or state a federal claim." Motion to Remand at ¶¶ 4, 10.

Texas law has long established that a petition for injunction "should allege all, and negative all, which is necessary to establish the right to an injunction." *Coleman v. Wright,* 136

S.W.2d 270, 272 (Tex. Civ. App.—Waco 1940, no writ); *see also Pecos County Water Control and Improvement Dist. v. Williams*, 271 S.W.2d 503,507 (Tex. Civ. App.—El Paso 1954, writ ref'd n.r.e.); *Rawson v. Brownsboro Indep. School Dist.*, 263 S.W.2d 578, 581 (Tex. Civ. App.—Dallas 1953, writ ref'd n.r.e.); *Southwestern Associated Tel. Co. v. City of Dalhart*, 254 S.W.2d 819, 826 (Tex. Civ. App.—Amarillo 1952, writ ref'd n.r.e.); *Powell v. City of Baird*, 132 S.W.2d 464, 468 (Tex. Civ. App.—Eastland 1939, no writ).  "It is elementary that a party who seeks injunctive relief must plead and prove such facts as will show that party entitled to such relief . . . 'the petition for injunction should state all, and negative all, which is necessary to establish a right.'"  *Sneed v. Ellison*, 116 S.W.2d 864, 866 (Tex. Civ. App.—Amarillo 1938, writ dism'd) (citations omitted).

Plaintiff on the face of its petition demands an order to force defendants to remove "any and all pipelines and/or facilities . . . from within City rights of way and within City limits." Seventh Amended Petition at ¶ 4.26.[7]  Plaintiff's demand that all defendants remove any and all pipelines and/or facilities from the City limits and rights of way is nothing short of a mandatory injunction preventing all defendants from transporting gas or conducting business in the City of San Benito.  Plaintiff also requests injunctive relief with regard to its alleged cause of action for removal of purpresture.  *See id.* at ¶ 4.4.  Additionally, plaintiff requests a declaration that "Plaintiff is entitled to compensation for Defendants' unauthorized and ultra vires acts and trespasses that were not authorized; and judgment declaring that Plaintiff is entitled to compensation under the applicable city ordinances and/or statutes for Defendants' acts,

---

[7] Plaintiff's suggestion that it is only requesting that all defendants remove their property from the City's rights of way if they are unwilling to comply with the City's ordinances is contrary to its own pleading.  *See* Motion to Remand at ¶ 4.  This condition for removal is not contained in Plaintiff's Seventh Amended Petition.  Moreover, plaintiff has plead that it "does not now, nor ever has, consented to any such use" of its streets, rights of way, and other city property by the defendants.  Seventh Amended Petition at ¶ 3.6.

omissions and trespasses." *Id.* at ¶ 4.16. Consequently, in demanding injunctive and declaratory relief, plaintiff has undertaken the burden of pleading and proving its right to equitable relief, including the absence of an adequate legal remedy. Accordingly, plaintiff has the burden to disprove any lawful explanations for defendants' behavior or any other reasonable inference that could justify denial of relief.

Similarly, in *Grynberg*, Judge Schell explained that the plaintiff demanded "an injunction ordering British Gas to transfer title to Grynberg," 817 F. Supp. at 1360, while in this case plaintiff demands an order forcing all defendants to remove their pipelines and facilities from the City of San Benito's limits and rights of way. A well-pleaded complaint for equitable relief, therefore, may raise substantial federal issues, as it does here, when the equitable relief directly conflicts with constitutional rights. Plaintiff will necessarily have to prove that an order forcing the removal of all defendants' pipelines and facilities from the City's limits and rights of way is in compliance with the federal constitution and does not violate the Equal Protection Clause, Substantive Due Process, the Takings Clause, or the Commerce Clause. [8]

### B. Substantial Constitutional Issues are Readily Apparent

In resolving the motion to remand, this Court, of course, does not have to rule on the merits of whether a constitutional issue exists. The question on remand is merely whether such an issue is raised. Nevertheless, to place the dispute in context, it is helpful to review the constitutional issues.

---

[8] *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"); *Braniff Int'l, Inc. v. Florida Pub. Serv. Comm'n*, 576 F.2d 1100, 1106 (5th Cir. 1978) (federal question jurisdiction exists where party seeks injunctive and declaratory relief challenging the constitutionality of statute as violating the commerce clause and the equal protection clause of the Fourteenth Amendment); *New York State Waterways Ass'n v. Diamond*, 469 F.2d 419, 421 (2d Cir. 1972) (federal question was raised where statute was an impermissible burden on interstate commerce and violated the Fourteenth Amendment).

Deprivation by the state of a protected interest in life, liberty, or property is a denial of substantive due process under the Fourteenth Amendment to the United States Constitution. *See Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir.), *cert. denied*, 477 U.S. 905 (1986). The opportunity to pursue one's livelihood is a constitutionally protected liberty interest, which may not be arbitrarily deprived. *See Cowan v. Corley*, 814 F.2d 223, 227-28 (5th Cir. 1987); *Santos*, 852 F. Supp. at 607. Plaintiff will need to show that forcing defendants to remove any and all pipelines and/or facilities from within the City of San Benito's rights of way and City limits, effectively depriving the defendants from conducting business in the City of San Benito and pursuing their livelihood, is not a violation of due process.

The Taking Clause of the Fifth Amendment to the U.S. Constitution provides "nor shall private property be taken for public use, without just compensation." U.S. CONST. Amend. V; *see also Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 121-23 (1978) (applying the Fifth Amendment to the States through the Fourteenth Amendment). "The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). Additionally, government regulatory action may amount to a taking. *See, e.g., Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). Plaintiff will have to establish that forcing defendants to pay rent to use their own property does not amount to plaintiff asserting title over defendants' pipeline assets and activities that are alleged to have been conducted within the city without due process of law and without compensation.

The Commerce Clause will also be implicated since removal of pipelines in the City of San Benito's city limits will disrupt the flow of gas through pipelines and effect certain interstate

pipeline's costs and purchasing patterns. Plaintiff will be required to establish that its injunctive relief comports with the Commerce Clause, which provides that Congress has the power "To regulate commerce . . . among the several states." U.S. CONST. art. I, § 8, cl. 3. The commerce clause thus acts as a limitation on the power of the states and reflects the framers' concern "that the tendencies of the State toward economic Balkanization had to be avoided." *Hughes v. Oklahoma*, 441 U.S. 322, 325-26 (1979). Under the commerce clause, "[a] state is . . . precluded from taking any action which may fairly be deemed to have the effect of impeding the free flow of travel between the states." *Id.* The flow of gas through interstate pipelines constitutes interstate commerce. *See Maryland v. Louisiana*, 451 U.S. 725, 755 (1981). Further, gas crossing a state line at any stage of its movement to the ultimate consumer has been held to be interstate commerce during the entire journey. *See Michigan-Wisconsin Pipe Line Co. v. Calvert*, 347 U.S. 157, 164-68 (1954); *Western Oil & Gas Ass'n v. Corey*, 726 F.2d 1340, 1342 (9th Cir. 1984), *aff'd*, 471 U.S. 81 (1985). Statutes or ordinances will not be upheld if "the burdens they impose on interstate commerce are clearly excessive in relation to putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Whether the burden is "clearly excessive" depends on "the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Id.* Plaintiff will need to show justification for the burden on interstate commerce caused by the removal of pipelines within the city limits of the City of San Benito.

---

[3]/On its face, the commerce clause merely grants Congress the power to regulate interstate commerce and does not speak of restricting the power of the states. However, for over a century, the Supreme Court has held that the commerce clause also prohibits the states from taking certain actions which affect interstate commerce, even when Congress has not acted. *E.g., Quill Corp. v. North Dakota*, 504 U.S. 298, 309 (1992); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987).

Plaintiff will also have to establish that preventing the defendants from using the City of San Benito's rights of way and having their facilities in the city limits, while allowing other businesses to use these same rights of way and to operate within the city limits, does not violate the Equal Protection Clause of the U.S. Constitution. The Fourteenth Amendment to the United States Constitution commands that no person shall be denied equal protection of the law by any State. *See* U.S. CONST. amend. XIV, § 1 ("No State shall . . .; nor deny to any person within its jurisdiction the equal protection of the laws."). This protection governs all governmental actions that classify individuals for different benefits or burdens under the law. The injunctive relief sought by plaintiff will impose different burdens on defendants, such as not operating within the City limits and rights of way, as compared to other businesses who freely operate within those same City limits and rights of way. Therefore, plaintiff must show that the government action is rationally related to a legitimate governmental purpose. *See Santos v. City of Houston*, 852 F. Supp. 601, 607 (S.D. Tex. 1994).

Assuming that plaintiff's allegations were true and it could otherwise force the removal of defendants' pipelines and facilities from the City's limits and rights of way, as well as the payment of rent for defendants' own property, such action is subject to challenge under the U.S. Constitution and, therefore, raises federal questions pursuant to 28 U.S.C. § 1331 and one or more provisions of the United States Constitution, including Art. I, § 8, and the Fifth and Fourteenth Amendments.

## IV.    THE TAX INJUNCTION ACT AND ABSTENTION DO NOT APPLY BECAUSE PLAINTIFF'S ACTION INVOLVES THE PAYMENT OF RENT RATHER THAN TAXES, THUS INJUNCTION OR ABSTENTION OF THIS ACTION IS UNNECESSARY AND IMPROPER

### A.    The Tax Injunction Act and Abstention Do Not Apply To The Present Action

The Tax Injunction Act "does not bar federal court jurisdiction of a suit . . . to collect a state tax." *Louisiana Land & Exploration Co. v. Pilot Petroleum Corp.*, 900 F.2d 816, 818 (5th

Cir. 1990) (holding that the Tax Injunction Act did not apply "because the suit was filed to collect a state tax, rather than enjoin, suspend, or restrain the collection of taxes."); *see also Jefferson County v. Acker*, 527 U.S. 423, 433-34 (1999) ("[A] suit to collect a tax is surely not brought to restrain state action, and therefore does not fit the [Tax Injunction Act's] description of suits barred from federal district court adjudication."). Plaintiff has asserted that this action is "against Defendants for the failure to pay taxes under a valid street rental ordinance." Motion to Remand at ¶ 8. Even under plaintiff's characterization of this suit as an action to collect a tax, the Tax Injunction Act does not apply.

Abstention should also not apply to this case since the Tax Injunction Act does not apply, substantial federal questions are raised in this matter, and removal of this matter was expressly authorized by Act of Congress. *See* 28 U.S.C. § 1446(d) ("[T]he State court shall proceed no further unless and until the case is remanded"). Plaintiff cites *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1942), for the proposition that "a judicially created doctrine of abstention appertains to cases in federal court involving state tax administration." Motion to Remand at ¶ 9. In *Great Lakes*, the party sought a declaration pursuant to the Federal Declaratory Judgment Act against a state officer that a state tax was unconstitutional. *See id.* at 295. The Court found that "[t]he statutory authority to render declaratory judgments permits federal courts a new form of procedure to exercise the jurisdiction to decide cases or controversies, both at law and in equity" and that pursuant to the Federal Declaratory Judgment Act, the Court could decline jurisdiction in the exercise of their discretion. *Id.* at 299. Importantly, the Court noted that after payment of the challenged tax, "the taxpayer may maintain a suit to recover it back" and in that suit "he may assert his federal rights and secure a review of them by this Court." *Id.* at 301. Unlike the plaintiff in *Great Lakes*, the plaintiff in

this case seeks to collect, not prevent collection, of certain charges, and also asserts numerous causes of action beyond a declaration. Moreover, while the plaintiff in *Great Lakes* was able to bring another cause of action asserting his federal rights, this present action has raised substantial federal questions.

Plaintiff's assertion that the Court has apparently conceded the rights of municipalities to levy and collect taxes is inaccurate. *See* Motion to Remand at ¶ 10. The Supreme Court has "left open whether federal court abstention and stay doctrines might counsel federal courts to withhold adjudication, according priority to state courts on questions concerning the meaning and proper application of a state tax law." 17A WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 121.46[1] (3d ed. 1999) (citing *Jefferson County*, 527 U.S. at 435 n.5).

**B.   Plaintiff's Action Involves A Claim For Rent Rather Than Taxes, So Abstention Is Unnecessary And Improper**

Plaintiff's assertion that the present matter involves taxes is contrary to plaintiff's own pleadings, case law, and the ordinance which forms the basis for the suit.

In its Seventh Amended Petition, plaintiff makes numerous references to charging defendants rent: "the City space that has been used or is being used by these very defendants (without proper payment or consent) could have been , or could be *rented* to others willing to pay for such use" (Seventh Amended Petition at ¶ 3.7); "Defendants have actual knowledge that they are interfering with the City's ability to *rent* that space to others" (*Id.*); "Defendants know . . . (2) that they are taking up space within City property that could be *rented* by others" (*Id.*); "Upon information and belief, none of the Defendants does now pay, nor in the past, paid to Plaintiff . . . street *rental*" (*Id.* at ¶ 3.9); "Defendants have wholly and/or partially failed to comply with the *street rental ordinance* duly enacted by San Benito" (*Id.* at ¶ 4.2 ); "The Texas Supreme Court has upheld and sustained the right of cities to fix a *rental* charge for the use of its streets and

other public places by gas companies and other utilities which carry on a local business" (*Id.*); "The City could be collecting *rental* fees from the very space being used by the Defendants, but cannot because if the existence of the Defendants unauthorized business activities within that space" (*Id.* at ¶ 4.11); and "The Defendants business activities and existence within the City's property constitutes tortious interference with the City's ability to *rent* the City space being used by the Defendants to others willing to pay for such use." (*Id.* at ¶ 4.14).

Case law also evidences that plaintiff's suit is for rent not taxes. Plaintiff not only classifies its ordinance as a "street rental ordinance" but it proclaims the ordinance's validity based on a Texas Supreme Court case, *Fleming v. Houston Lighting & Power Co.*, 138 S.W. 520 (Tex. 1940), that holds that in certain circumstances cities have the right to fix a *rental* charge on gas companies and other utilities which carry on a local business. *See* Seventh Amended Petition at ¶ 4.2. The Ninth Circuit has also agreed with the characterization of an analogous situation, where the city sought to secure payment for a company's use of a substreet easement, as a "user fee or rent, as opposed to a tax." *Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, 1059 n.8. Additionally, taxes are designed to raise revenue and are not tied to the reasonable value of property.

Any doubt as to whether the ordinance at issue in this lawsuit involves a tax or a rent is easily resolved by the language of the ordinance itself.[9] The ordinance is entitled, "AN ORDINANCE FIXING **RENTALS** TO BE PAID BY NATURAL GAS UTILITIES FOR THE PRIVILEGES OF USING, WITH THEIR NATURAL GAS AND AUXILIARY LINES, APPURTENANCES AND FIXTURES, THE STREETS, ALLEYS AND PUBLIC WAYS

---

[9] Plaintiff refers to the ordinance in both its Seventh Amended Petition and Motion for Remand as a "street rental ordinance." Seventh Amended Petition at ¶ 4.2; Motion to Remand at ¶ 8.

WITHIN THE CORPORATE LIMITS OF THE CITY OF SAN BENITO." City of San Benito Ordinance No. 478 (emphasis added). Section II of the Ordinance provides that "every person or corporation using the streets, highways, alleys, parks or other public places within the City of San Benito . . . shall pay to the City of San Benito, Texas, a *rental* equal to two per cent. (2%) of its gross receipts . . . ." *Id.* at § II. (emphasis added). The Ordinance also provides that charges accrued prior to the effective date of the ordinance "shall be credited on the amount owed by such person or corporation as a charge or *rental* imposed for the use of the streets, alleys and other public places and ways within the said City . . . ." *Id.* at § III. (emphasis added).

Since the present action involves the payment of rent not taxes, the application of the Tax Injunction Act and/or abstention by the Court is unnecessary and improper.

### CONCLUSION

The present lawsuit was properly removed to this Court based on federal question grounds. Therefore, plaintiff's Motion for Remand should be denied.

Respectfully submitted,


_Osborne J. Dykes III by permission_

Osborne J. Dykes, III
State Bar No. 06325500
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Facsimile: 713-651-5246

Attorney-in-Charge for Tejas Gas Pipeline Company, Tejas Gas Pipeline, L.L.C., Tejas Gas Pipeline, L.P., Tejas Gas, L.L.C., Tejas Gas Marketing, L.L.C., Gulf Energy Marketing Company, Gulf Energy Marketing L.L.C., Coral Energy Services L.L.C., Coral Energy Resources L.P., and Shell Gas Trading Company

**OF COUNSEL:**

FULBRIGHT & JAWORSKI L.L.P.
    William D. Wood
    State Bar No. 21916500
    Jeffrey D. Palmer
    State Bar No. 24027585

ROERIG, OLIVEIRA & FISHER, L.L.P.
    David G. Oliveira
    State Bar No. 15254675
855 West Price Road, Suite 9
Brownsville, Texas 78520
Telephone: 956-542-5666
Facsimile: 956-542-0016

## CERTIFICATE OF SERVICE

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil

Procedure on June 19, 2003.


Jeffrey D. Palmer

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CITY OF SAN BENITO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| V. | § | C. A. NO. B03-080 |
| | § | JURY TRIAL REQUESTED |
| TEJAS GAS PIPELINE COMPANY, ET AL., | § | |
| | § | |
| Defendants. | § | |

### ORDER DENYING PLAINTIFF'S MOTION TO REMAND

On this day, the Court considered Plaintiff's Motion to Remand (the "Motion"), defendants' response, and the reply, and after reviewing the Motion, the response, the reply, and the evidence, the Court finds that the Motion should be DENIED. It is, therefore,

ORDERED that Motion is DENIED.

SIGNED this _____ day of _____, 2003.

_____
UNITED STATES DISTRICT JUDGE

30495529.1