47

United States District Court
Southern District of Texas
FILED

FEB 1 2 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| CITY OF SAN BENITO, | § |
| | § |
| v. | § |
| | § |
| | § |
| | § |
| TEJAS GAS PIPELINE COMPANY, | § |
| ET AL. | § |

C.A. NO. B03-080

## PENNZOIL'S MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT COURT:

1.     <u>Relief sought</u>. Pennzoil Gas Marketing Company ("Pennzoil") moves the Court pursuant to Fed. R. Civ. P. 41(b) to dismiss the City of San Benito's claims with prejudice because San Benito has failed to comply with the Court's order to show that Pennzoil (or any other defendant) owned a pipeline or owned a company that owned a pipeline in San Benito.

2.     <u>The Court ordered San Benito to produce evidence that Pennzoil has owned a pipeline within San Benito's corporate limits.</u> On October 27, 2003 the Court described a two stage discovery plan in which San Benito would address the defendants' pipeline ownership before liability issues were addressed. (See Transcript of the October 27, 2003 hearing, p. 11, l. 22-p. 12, l. 15 attached as Exhibit A). If a defendant owned a pipeline within San Benito, the case would proceed to the next step as to that defendant. The Court noted that the threshold issue is pipeline ownership. (Tr. p. 17, ll. 21-23). San Benito has provided no information that Pennzoil (or any other defendant) ever owned a pipeline in San Benito.

3.     <u>San Benito's Initial Disclosures ignored pipeline ownership and the Court's order.</u>   When San Benito served its Initial Disclosures on December 31, 2003 (and its two

supplemental disclosures (attached as Exhibits B1-B3), it wholly ignored the issue of pipeline ownership and chose instead to address only the amounts of putative gas sales in San Benito. At the October 27, 2003 hearing, San Benito argued that liability was based on direct or indirect pipeline ownership (Tr. p. 11, ll. 9-17). In its Initial Disclosures, San Benito does not mention or address pipeline ownership in any way. The defendants were required to make their disclosures thirty days after San Benito's disclosures concerning pipeline ownership if there was "no question regarding ownership of relevant pipelines." See the Court's Scheduling Order. Since San Benito did not make any disclosures regarding pipeline ownership, the defendants have had no obligation to make their initial disclosures. Several of the defendants have instead submitted statements in lieu of initial disclosures which specifically note San Benito's threshold obligation and failure to address ownership of pipelines. Pennzoil submits that the case should go no further. Several of the defendants have asked San Benito to dismiss its case in light of its failure to address pipeline ownership, but San Benito has not responded to the request.

4.  <u>Dismissal with prejudice of San Benito's claims.</u>  Since San Benito did not offer any support for its claim that the defendants owned pipelines in San Benito, the Court may and should dismiss San Benito's claims with prejudice. The Court may dismiss San Benito's claims with prejudice for failure to comply with the Court's instructions or to protect the integrity of its orders. <u>Fendler v. Westgate-California Corp.</u>, 527 F.2d 1168, 1169 (9th Cir. 1975) (per curiam); <u>see also</u> <u>Smith v. Texas Department of Criminal Justice</u>, 79 Fed. Appx. 61, 2003 WL 22426945 (5th Cir. 2003) (not published in the Federal Reporter). Fed. R. Civ. P. 41(b)

2

provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits.

San Benito has not complied with the orders the Court gave at the October 27, 2003 Hearing,

or with the Scheduling Order. The Court may and should dismiss San Benito's claims against

Pennzoil, and under the circumstances, Pennzoil moves the Court to enter an order of

dismissal with prejudice.

5.    For these reasons, among others, and based upon the pleadings, Pennzoil moves

that the Court grant this motion in all things, and:

(i)    dismiss the City of San Benito's claims against Pennzoil with prejudice to re-filing; and

(ii)   that Pennzoil Gas Marketing Company be granted such other and further relief, including without limitation an award of attorneys' fees and costs, to which it is justly entitled.

Respectfully submitted,

J. D. Page
State Bar No. 15406700
3040 Post Oak Blvd., Suite 850
Houston, Texas 77056
(713) 840-9200 Telephone
(713) 840-9217 Facsimile

3

By: _____
        Bradley M. Whalen
        State Bar No. 21238800
        Doyle, Restrepo, Harvin
              & Robbins, L.L.P.
        4700 Chase Tower
        600 Travis Street
        Houston, Texas 77002
        (713) 228-5100 Telephone
        (713) 228-6138 Facsimile

        Rene O. Oliveira
        State Bar No.15254700
        Roerig, Oliveira & Fisher, L.L.P.
        Cameron County Office
        855 West Price road, Suite 9
        Brownsville, Texas 78520
        (956) 542-5666 Telephone
        (956) 542-0016 Facsimile

        Attorneys for Pennzoil Gas Marketing Company

## CERTIFICATE OF SERVICE

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on February 11, 2004.

        Adam Poncio
        Law Office of Cerda & Poncio
        924 McCullough
        San Antonio, Texas 78215
        Facsimile: (210) 212-5880

        Osborne J. Dykes, III
        1301 McKinney, Suite 5100
        Houston, Texas 77010
        Facsimile: (713) 651-5246

4

Julie Ezell
Cinergy Marketing & Trading, L.P.
1000 East Main Street
Plainfield, Indiana

Randy Beevis
Cinergy Marketing & Trading, L.P.
1100 Louisiana, Suite 4900
Houston, Texas 77002
Facsimile: (713) 393-6903

Francis I. Gandy
Attorney at Law
148 American Bank Plaza
Corpus Christi, Texas 78475
Facsimile: (361) 883-0148

Robert Galligan
Jones, Galligan, Key & Lozano, LLP
2300 West Pike, Suite 300
Weslaco, Texas 78599-1247

Bradley M. Whalen

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3      _____
                                )
 4      CITY OF SAN BENITO       )
                                )
 5                              ) CIVIL ACTION NO.
        VS.                      ) CA B-03-080
 6                              )
        TEJAS GAS PIPELINE, ET AL)
 7      _____)

 8

 9

10            INITIAL PRETRIAL & SCHEDULING CONFERENCE
              BEFORE THE HONORABLE ANDREW S. HANEN
11                     OCTOBER 27, 2003

12

13      APPEARANCES:

14      For the Plaintiff:       MR. ADAM PONCIO
                                 Law Office of Cerda & Poncio
15                               924 McCullough
                                 San Antonio, Texas  78215-1642
16
        For Tejas Gas Pipeline:  OSBORNE J. DYKES, III
17                               JEFFREY D. PALMER
                                 Fulbright & Jaworski
18                               1301 McKinney, Suite 5100
                                 Houston, Texas  77010-3095
19
        For Cinergy:             MS. JULIE L. EZELL
20                               Cinergy Services
                                 1000 East Main Street
21                               Plainfield, Indiana  46168

22

23      For Pennzoil:            MR. JOHN DAVID PAGE
                                 Attorney At Law
24                               3040 Post Oak Blvd., Suite 850
                                 Houston, Texas  77056
25
```

**CERTIFIED COPY**



```
1    APPEARANCES (Continued)

2    For Gulf Coast Energy:        MR. CHARLES SWEETMAN
                                   Sweetman, Skaggs, Lawler & Franz
3                                  855 E. Harrison Street
                                   Brownsville, Texas  78520
4

5    Transcribed by:               BARBARA BARNARD
                                   Official Court Reporter
6                                  600 E. Harrison, Box 301
                                   Brownsville, Texas  78520
7                                  (956)548-2591

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        THE COURT:  Thank you, counsel.  Be seated, please.

2    All right.  We're here this afternoon on City of San Benito

3 versus Tejas Gas, et al, B-03-80.

4    And, Mr. Poncio, you're here representing the city?

5        MR. PONCIO:  Yes, Your Honor.

6        THE COURT:  And, Mr. Dykes, you're here representing how

7 many of the defendants.

8        MR. DYKES:  I have to count to tell you that.

9        THE COURT:  Well, what defendants are you not

10 representing?

11        MR. DYKES:  Well --

12        THE COURT:  Maybe that will be easier, or is there just

13 a number of those too?

14        MR. DYKES:  There are a total of 65 defendants, and I

15 represent eight to ten of them.  And I can name them precisely

16 if you'd like.

17        THE COURT:  Okay.  Why don't you do that for the record.

18        MR. PONCIO:  We're representing Tejas Gas Pipeline

19 Company, Tejas Gas Pipeline, L.L.C., Tejas Gas Pipeline L.P.,

20 Tejas Gas, L.L.C., Tejas Gas Marketing, L.L.C., Coral Energy

21 Services, L.L.C., Coral Energy Resources, L.P., Gulf Energy

22 Marketing Company, Gulf Energy Marketing, L.L.C., and Shell Gas

23 Trading Company.

24        THE COURT:  Okay.  All right.  And with you is

25 Mr. Palmer?

4

```
 1              MR. PALMER:  Yes, Your Honor.

 2              THE COURT:  And, Ms. Ezell, you represent Cinergy?

 3              MS. EZELL:  Yes.  Originally we were named in the

 4    lawsuit as Producers Energy Marketing, L.L.C.

 5              THE COURT:  Okay.  Now, does Cinergy own Cinergy Field

 6    in Cincinnati?

 7              MS. EZELL:  Well, it's no longer Cinergy Field.  It's

 8    been imploded.

 9              THE COURT:  Along with the gas market.

10         All right.  Y'all can be seated.

11         Mr. Sweetman, you represent?

12              MR. SWEETMAN:  Chuck Sweetman for Gulf Coast Energy,

13    Inc. appearing for Mr. Gandy.

14              THE COURT:  Mr. Sweetman has filed a motion to appear on

15    behalf of Gulf Coast.  Does anybody have a problem with that?

16              MR. PONCIO:  No opposition, Your Honor.

17              MR. DYKES:  None, Your Honor.

18              THE COURT:  All right.  Let me first of all say we're

19    sorry we had a little false start here.

20         Come in.

21              MR. PAGE:  I apologize for being late, Your Honor.

22              THE COURT:  Okay.  And you are?

23              MR. PAGE:  J.D. Page.

24              THE COURT:  Representing Pennzoil?

25              MR. PAGE:  Yes, Your Honor.
```

1        THE COURT:  I had a blank here for who the Pennzoil

2   lawyer was.

3      Let me back up now to the lawyers and who they represent.

4   Are these all the defendants that have been served, or are we

5   going to see some more defendants appear in this?

6        MR. PONCIO:  Your Honor, actually none of the defendants

7   were served.  What we did was we filed a petition where we named

8   them all, sent them a letter saying, "We're naming you.  We'd

9   like to try to negotiate on this issue."  And that's when Tejas

10  came in.  Pennzoil filed an answer.  Tejas came in, filed a

11  notice for removal after Cinergy had already filed an answer,

12  but they did not join in the consent to removal, et cetera, et

13  cetera, et cetera.

14       THE COURT:  What are we going to do with the rest of the

15  defendants?  Let's assume for my purposes that I'm not

16  prejudging your motion to remand, but what are we going to do

17  with the rest of these defendants?  Are we going to bring them

18  in the lawsuit or --

19       MR. PONCIO:  No.  With regard to the rest of the

20  defendants, Your Honor, what I would like to do is, to the

21  extent you consider them in this case, non-suit as to those

22  defendants so that we can take whatever action we need to with

23  regard to those defendants separately.

24       THE COURT:  Okay.  My only hesitation in that,

25  Mr. Poncio, is I don't want to create unnecessary -- you know, I

1   don't want another 30 lawsuits if we just have -- if we can

2   resolve everything in one.

3         MR. PONCIO:  Well, I'll tell you that with regard to the

4   practice in other cases in which I'm now involved, I think in,

5   for example, the City of Victoria case, which they conferred

6   with me on last week, I think only two or three actual

7   defendants filed removals in that case because they filed

8   individual lawsuits against those defendants.

9         THE COURT:  Okay.

10        MR. PONCIO:  So for practical purposes, you probably

11  wouldn't have the other 45 to 50 defendants.  It might actually

12  be simpler on this court.

13        THE COURT:  Okay.  Now, the City of Victoria cases, are

14  they -- you referenced in your pretrial stuff three different

15  Victoria cases.  Are they ongoing and alive and well?

16        MR. PONCIO:  Those are ongoing in that particular venue,

17  Your Honor.  I'm not specifically joined in those yet.  I

18  anticipate that I will be to some extent.  In fact, Mr. Dykes is

19  involved --

20        THE COURT:  Okay.

21        MR. PONCIO:  -- in those as well.

22        THE COURT:  Are those ongoing lawsuits, Mr. Dykes?

23        MR. DYKES:  That is correct, Your Honor.

24        THE COURT:  All right.  Now, the case that was here that

25  this got removed from or got severed from and then removed, is

1   it over, the Cameron County case?

2       MR. PONCIO:  Yes, Your Honor.  That was actually a class

3   action.  It didn't actually involve this particular case.  In

4   fact, the class action itself didn't involve the street rental

5   ordinance whatsoever.  The reason the City of San Benito severed

6   itself out of that case is that they found that they did have a

7   street rental ordinance.

8       THE COURT:  All right.

9       MR. PONCIO:  So different issues.

10      THE COURT:  Okay.  Y'all be seated.  Well, one of the

11  reasons I wanted to meet with y'all is obviously I want to get a

12  scheduling order in place.  As I started to say a minute ago, we

13  apologize for the fact that Judge Black had to recuse himself;

14  but actually, we have pretty strict federal recusal rules.

15  And -- I mean, they're not optional.  I mean, even if you guys

16  would have given your consent, he couldn't have heard it, and so

17  that's why he had to do that.

18      Let me -- somebody in state court has a venue motion?  Is

19  there a lurking venue motion?  I'm not talking about the remand

20  and whether we're supposed to be here, but --

21      MR. DYKES:  Your Honor, if the state court rules for us,

22  venue -- motion for transfer of venue must be asserted initially

23  if it's ever going to be asserted.  And we didn't file an answer

24  in state court, but we also wanted to preserve our venue

25  position.

1    THE COURT:  In case you got remanded back.

2    MR. DYKES:  In case we got remanded.  And we would like

3  also to reserve the right to move for a transfer of venue in

4  this court.  I'm not representing that we would do it, but that

5  might be a matter to be put on a scheduling order, to file a

6  motion for change of venue if one is ever going to be filed.

7    THE COURT:  Okay.  Yeah.  Well, I'll probably allow you

8  to do that, Mr. Dykes.  You're going to have to do some heavy

9  duty convincing of me that a case involving the City of San

10 Benito shouldn't be heard in this county; but, you know, you're

11 pretty creative.  You may come up with a way that convinces me.

12   All right.  So I'm taking it from what you said, though,

13 that it's not something that I necessarily need to deal with in

14 order to move forward today?

15   MR. DYKES:  We do not believe it's necessary to deal

16 with the venue motion before the removal-remand issue.

17   THE COURT:  Okay.  Okay.  Let me talk first about

18 scheduling, and then -- because I want to give y'all time to

19 talk to me about the remand.  Now, the defendants have proposed

20 more or less a bifurcated procedure, which I know the plaintiff

21 has not acquiesced in; in fact, do not want to go on that

22 procedure.

23   Mr. Dykes, why do you -- and I'm asking Mr. Dykes these

24 questions.  Any of y'all are welcome to chime in from the

25 defense side.  Why do you prefer a bifurcated proceeding?

1          MR. PAGE:  Your Honor, J.D. Page on behalf of Pennzoil.

2     We prefer the bifurcated proceeding because we've seen

3     absolutely nothing that would suggest that my client, at least,

4     has any business being sued in this.  Based upon what we

5     understand the lawsuit is about, we don't belong here.

6        We've asked Mr. Poncio for any documents that would

7     substantiate the claim that has been made.  It looks otherwise

8     like it's just sort of a shotgun approach to anybody and

9     everybody that might ever, ever possibly have business that

10    somehow touched the City of San Benito.  We've never gotten any

11    documents.

12       Until we get the threshold documents, something that makes

13    it look like there's maybe a liability issue as to us, we don't

14    think we ought to have to spend the enormous amount of time that

15    would be necessary for the damages issue.

16          THE COURT:  Let me ask what may be a naive question.

17    But, I mean, wouldn't you know if you owned a pipeline under the

18    City of San Benito or not?

19          MR. PAGE:  Yes, Your Honor, and we've said we don't own

20    a pipeline under the City of San Benito.  We've never owned one.

21    And that's exactly where we started.  And I think Mr. Poncio has

22    a claim which we do not believe is in any way supported by the

23    case law or by statute that we should be liable anyway,

24    Mr. Poncio.  And I look to Mr. Poncio, notwithstanding the fact

25    that I'm arguing or answering your question, Your Honor, because

1    I don't mean to misstate it.  But I think Mr. Poncio, having

2    nodded, has confirmed for me my understanding of his position.

3    Even though we don't own a pipeline, he contends that we should

4    be liable.

5        It is precisely because we don't own a pipeline that we

6    think that at the threshold, we should not be involved in any

7    lawsuit wherever it is brought.  And that's why, backing up to

8    the issue of bifurcation, we thought we should have a very

9    straightforward resolution in this court of whether there should

10   be any liability whatsoever before we spend, again, all the time

11   that would be necessary on the damages issues.

12       THE COURT:  Anyone else from the defense side want to

13   address that?

14       MR. DYKES:  I might just emphasize Mr. Page's point;

15   that the damages research, if it's necessary to undertake that,

16   would be an enormous labor.  Mr. Poncio has sued all the

17   defendants in this case for a period going back over 60 years,

18   back to 1941 when this ordinance was enacted.  And these

19   companies, many of them are that old, and they've had mergers

20   and acquisitions; they've had dispositions of pipeline assets.

21   If it were necessary to research all or any significant part of

22   that 60-year period, the labor involved would be -- could be, it

23   depends from company to company, but it could very well be quite

24   staggering.

25       THE COURT:  Okay.  Mr. Poncio, what's -- why doesn't

1    their position make sense?

2         MR. PONCIO:  Your Honor, the difficulty in this

3    particular case -- well, first of all, with regard to severing

4    or bifurcating, the damage documents are going to be the same

5    documents that establish liability.  For example, you're going

6    to have actual sales documents that show sales within the city.

7    The difficulty is the way gas companies and gas marketing

8    companies conduct themselves.

9         They create layer upon layer of shell companies in order to

10   avoid liability, as we've shown in other cases we've been

11   involved in, where they may say, "We don't technically own the

12   pipeline in the company, but one of our other companies do," and

13   they perform these types of transactions in order to avoid this

14   type of liability.  And our intent is to show a form of fraud

15   and manipulation of these shell companies in order to avoid

16   direct liability, but we intend to show liability based on those

17   transactions and occurrences.

18        THE COURT:  Well, here's what -- here's what strikes me.

19   I understand your point.  You can sit down.

20        MR. PONCIO:  Thank you.

21        THE COURT:  There ought to be a neutral point to this or

22   at least a common denominator in here.  There ought to be some

23   showing that at least we know or have to find out whether

24   Pennzoil owns a pipeline under there or owns a company that owns

25   a pipeline or some, you know, second cousin third time removed

1    that they actually control somehow, and I understand that.

2        On the other hand, it seems somewhat backwards, if you will,

3    to make Mr. Page -- Mr. Page's client go through a bunch of

4    hoops producing a bunch of production documents, if you will, or

5    witnesses with regard to how much gas they sell if they don't

6    have any that runs under the City of San Benito.  And I'm, in a

7    way, opening this a little bit for discussion, but I think there

8    ought to be a way that you ought to be able to satisfy yourself,

9    and you ought to be allowed the discovery you need to satisfy

10   yourself that there is no hanky-panky corporate shell game going

11   on, at the same time without making them produce a million

12   documents since 1941 to bring it up to date.  And I'm -- I mean,

13   I would think that we ought to be able to establish a two-tier,

14   if you will, or two-stage discovery setup where you get to

15   figure out the ownership issues.

16       And pending a positive answer to that, you go forward into

17   the next stage.  And with a negative answer, you'd either come

18   to the court, perhaps, and voluntarily dismiss them, or that the

19   defendants would file a motion for summary judgement and say,

20   you know, "Me no Alamo.  I've never owned a pipeline there, and

21   I shouldn't be sued and shouldn't have to pay any rent for

22   pipeline rent."

23       What kind of information do you need to establish -- now,

24   what comes to mind is immediately some kind of interrogatory or

25   some kind of request for admission with an interrogatory

1    attached to it, something that basically says, "Mr. Defendant,

2    have you now or have you in the last 60 years since 1941 owned a

3    pipeline that runs under the City of San Benito or had any

4    ownership interest in a company that owned a pipeline that had

5    any ownership interest in gas that ran under the City of San

6    Benito?"  I mean, how does it -- tell me about that.

7         MR. PONCIO:  I think we could formulate something, Your

8    Honor, if you're talking about a two-tiered level of discovery.

9    What I didn't want to do was work towards a liability trial,

10   then start all over again working towards a damage trial.

11        THE COURT:  Yeah.  I'm not really -- and I know the

12   defendants might prefer that.  I'm not leaning toward that.  I'm

13   leaning toward, though -- but I do understand the "Don't make us

14   jump through every hoop and produce every accounting record we

15   have for every ounce of gas we've ever sold," or MCF of gas or

16   however this is sold so that -- only to eventually come forward

17   with our motion for summary judgment saying, "We haven't been

18   near the City of San Benito."

19        MR. PONCIO:  I think if Your Honor, once you've made

20   your decision on the motion to remand, if you could give me a

21   two-week period to formulate some sort of proposed discovery

22   plan towards that end that you just relayed to us, I think I can

23   come up with that for you, Your Honor.

24        THE COURT:  Gentlemen, what would be wrong with that?

25   Or gentlemen and lady?

14

1          MR. DYKES:  Your Honor, Mr. Poncio and I have talked

2    going back to when I first learned of this lawsuit.  I think

3    that was sometime a few months after it was filed, and I think

4    this is useful to recount -- this was an attempt at discovery on

5    my part, so I think it's relevant to what we're talking about.

6          I asked him why he believed that these companies had

7    pipelines or sales or any other connection with the City of San

1    staggering.  If we can avoid that 60-year search without any

2    focus, that's -- that's my aim in proceeding further on

3    discovery.

4        We have -- when we talked back on August the 15th, and this

5    is reflected in the -- in the joint discovery case management

6    plan that we -- that we filed, we had agreed with Mr. Poncio

7    that he would file his initial disclosure from whatever date we

8    were looking at, and that we would then have -- after we got a

9    look at these -- at this evidence that he felt that he had, we

10   would then have 60 days to do our research on those identified

11   areas.  And if we -- I would submit, Your Honor, that that is a

12   logical plan.

13           THE COURT:  Is that problematic for you?

14           MR. PONCIO:  We don't have any problem with that.  We

15   talked before you came out, Your Honor, and said using that same

16   plan that we had set out, just setting a 30-day period from

17   whatever date you've decided on the motion to remand, then we

18   can work using that same trial plan initially.

19           THE COURT:  All right.  Here's what -- let me do this.

20   It's the 27th.  And unfortunately, I have two conferences, one

21   this week and one next week.  But let's take it as quasi-gospel

22   that I will rule on the motion to remand by the 14th of

23   November.

24       All right.  Then, Mr. Poncio, what I want the plaintiffs to

25   do -- and I'm going to give you to the end of the year to do

1    this.  That's six weeks, but I know the holidays are sitting in

2    the middle of that; not only Thanksgiving, but Christmas as

3    well -- to produce your information that you gleaned to name

4    these defendants.  And it sounds -- I mean, was he right?  Were

5    we talking Railroad Commission documents or whatever?  But let

6    me not limit it to that, though.  I mean, if you have City of

7    San Benito documents or some correspondence between any of these

8    defendants to the city or whatever that says, "Oh, by the way,

9    we've got a pipeline running down Main Street," I mean, I want

10   you to produce that too, okay?

11        All right.  And then I will go out to the -- let me change

12   calendars -- okay.  Let's just say yours is due -- Mr. Poncio,

13   that's due the 31st of December, so, I mean, right at year's

14   end.  On the 27th of February, in that six -- almost two months

15   there, you know, I want the defendants to do the research that

16   goes along with that, having received these documents to find

17   out exactly where you are.

18     And I'm trying to think the best way of bringing that issue

19   to a resolution.  It may be by, Mr. Poncio, you then sending out

20   the discovery that we talked about.

21        MR. PONCIO:  Right.

22        THE COURT:  You know, give me a list of every company

23   you've ever owned a piece of, you know, however you want to

24   phrase it.  But design it enough to where you pick up not only

25   the defendants, but any subsidiary or parent corporation or

1    whatever you think you need.  But that will give them two months

2    to gather the information they'll need to answer that, and just

3    send them a regular interrogatory.  And why don't you plan on

4    sending that by the -- by February 27th.  And then the

5    defendants will have until March 31st to answer that.

6        All right.  And at that point, we ought to be in a position

7    that by the end of April, that either you can file a motion to

8    dismiss if you've accidentally named somebody that doesn't

9    belong here; or if there's a disagreement about whether they

10   belong here or not, if they feel strongly about it, they can

11   file a motion for summary judgment saying, "We've never been

12   here."

13       Now, having said that, I may allow at that point, depending

14   on what the motion looks like, Mr. Poncio to take further

15   discovery, because it may not be extensive enough to allow him

16   some solace.  I mean, it may be -- he may be put in a situation

17   where he's saying, "I just don't know enough to let you out, and

18   I don't want to get sued for malpractice."  But it may also be

19   clear enough, and I'll go ahead and rule on the motion for

20   summary judgment in that case.

21       Okay.  Now, talk to me about what the other issues in this

22   case will be.  I mean, the one issue will be do they have the --

23   a pipeline.  The second issue, no doubt, would be the amounts

24   that they've delivered in the last -- since 1941.  I take it

25   none of these people have ever paid according to that ordinance?

```
 1          MR. PONCIO:  Except for certain defendants, Your Honor,
 2     that had separate franchise fee agreements subject to the
 3     ordinance.
 4          THE COURT:  Okay.  And so the main issue, once you've
 5     established whether a pipeline exists or not or was ever owned
 6     or not by these defendants, will be amounts and rent due from
 7     your standpoint?
 8          MR. PONCIO:  (Nod indicated.)
 9          THE COURT:  Now, there may be some -- from the
10     defendants' standpoint, they may have some -- you know, hey,
11     we've been doing this for 60 years.  Where have you been for the
12     last 60 years kind of issues that they want to bring up,
13     although I'm not sure limitations can run against a city, but
14     that's a -- you know, a bridge we'll cross when we get to it.
15        But I would think at this point, once you get their response
16     on the 31$^{st}$, that you could then frame whatever discovery you
17     need regarding the amount of gas and the -- and, I guess, the
18     price, because it's a percentage of the price is the way I read
19     that, right?
20          MR. PONCIO:  Yes, Your Honor.  And then by June, they'll
21     pay me plus interest, I think.
22          THE COURT:  Well, I wouldn't advise -- not that I give
23     advisory opinions, but I wouldn't advise holding your breath on
24     that.
25        All right.  What's wrong with that scheme, guys from the
```

1    defense side?  Why can't that work?

2         MR. DYKES:  I think that sounds very workable.

3         THE COURT:  And that will give, Mr. Page, your client,

4    if he truly has never owned a pipeline down here, doesn't own

5    anybody that's owned a pipeline, never seen a pipeline, and the

6    dog didn't bite me and I don't own a dog, you get an opportunity

7    to -- let's answer those issues first before you have to go

8    through and search every accounting folder known to mankind to

9    find your gas sales in South Texas.

10        MR. PAGE:  I think that sounds great.  If Mr. Poncio has

11   a further theory, though -- and, frankly, fraud is something

12   that I -- I'm not sure I had ever really understood, and I

13   thought we had been very straightforward in answering that we

14   don't own a pipeline and haven't owned a pipeline.  And I'm

15   certainly not aware of my clients ever having committed some

16   fraud or subterfuge regarding the ownership of the pipeline, and

17   had never understood that to be even the allegations, if there's

18   something beyond that.

19        THE COURT:  Well, if that's still alive, you can include

20   that in your motion for summary judgment, and then he's going to

21   have to explain it to me or convince me that he's got a cause of

22   action.

23        MR. PAGE:  Actually I've got a motion for summary

24   judgment I can file in short order.

25        THE COURT:  Well, I'm going to let him do this discovery

1    first.

2          MR. PAGE:  Well, I'm just saying, I have a motion for

3    summary judgment I can file in short order because not only a

4    pipeline, and certainly not being aware that we were even

5    being -- that anybody even suggested that if we did own one, we

6    must have engaged in some sort of fraud, we would like to get

7    out and not to go too much further with it.  But I really kind

8    of thought it was inappropriate that we should have been sued in

9    the first place unless somebody could really establish that we

10   owned a pipeline or had some good faith basis.  I don't remember

11   exactly how the rule puts it, but unless somebody really had a

12   good faith basis for bringing us into this lawsuit when we don't

13   own a pipeline and otherwise don't seem to come under the

14   statute.

15         THE COURT:  Well, I'm going to let him do the discovery

16   I talked about, Mr. Page --

17         MR. PAGE:  Yes, sir.

18         THE COURT:  -- and you can file your motion whenever you

19   want to file it, but I'm telling you I'm not ruling on it --

20         MR. PAGE:  Yes.

21         THE COURT:  -- until we get through these stages.

22         MR. PAGE:  I understand, Your Honor.

23         MR. PONCIO:  And just to clarify, Your Honor, we never

24   brought him into the lawsuit.  They decided to join the lawsuit.

25   Just to clarify for the court, they voluntarily came in, even

1    though they've never been served, even though it was sent, the

2    petition was sent with a courtesy letter saying, "We're not

3    joining you as a defendant right now.  We're just sending this."

4         THE COURT:  Well, they've been sued, though.  I know

5    what you're saying, and I'm not --

6         MR. PONCIO:  But I'm just saying, I hear his threats;

7    and I'm just telling him, we never joined you.

8         THE COURT:  I'm not worried about that.  I'm not worried

9    about that.

10        All right.  Let's assume, counsel, that either one or more

11   of the counsel sitting at defense counsel table will be here

12   with a viable defendant.  Mr. Poncio is going to be here with a

13   viable plaintiff.  When can we try this case?  Next summer?

14        MR. PONCIO:  I think that's what we're looking at, Your

15   Honor, after -- you're talking about -- excuse me.  You're

16   talking about the motion to dismiss or a motion for summary

17   judgment by the end of April.  If we do this initial discovery,

18   you're probably talking late summer for damage calculations and

19   probably expert depositions.

20        THE COURT:  See, that's what I would think would be the

21   time consuming and costly part of this case, will be deposing

22   their accountants --

23        MR. PONCIO:  Right.

24        THE COURT:  -- their expert economist or gas expert or

25   whatever and vice versa, their deposing yours.

1          MR. PONCIO:  So you're probably looking at, I would

2   anticipate, probably next September; next August, next September

3   for doing that.

4          THE COURT:  What do you think?  Is that too optimistic?

5          MR. DYKES:  We had pencilled in November of '04, so

6   we're not far off.

7          MR. PONCIO:  That's fine, Your Honor.  September,

8   October of next year.  Even November would work.

9          THE COURT:  Let's see what I -- okay.  Let's do this.

10  We're going to pick juries -- a jury in this case on

11  November 4th at 9:00 o'clock.  Do y'all want to do the voir

12  dire?

13         MR. DYKES:  Yes, Your Honor, we do request lawyer voir

14  dire.

15         THE COURT:  Mr. Poncio?

16         MR. PONCIO:  Your Honor, I -- I don't know that it's

17  really a jury trial issue.

18         THE COURT:  I think there's a jury request that's been

19  made, though.  Didn't I see one?

20         MR. PONCIO:  That's right, Your Honor, but I think when

21  you're looking at the damage calculations -- well, if they're

22  selecting voir dire, I'll be glad to take that, Your Honor.  I

23  just don't see it as a --

24         THE COURT:  Well, let's leave it this way.  Unless y'all

25  decide to try it to the bench, and you can always opt to do

23

```
 1    that, and I'm fine with that, we'll assume that counsel are

 2    going to do the voir dire.

 3              MR. PONCIO:  Sure.

 4              THE COURT:  Any objection to that from anybody?

 5              MR. PONCIO:  No, Your Honor.

 6              THE COURT:  All right.  Now, by saying that, of course,

 7    I don't -- I'd like it to be a little something less than your

 8    final jury argument.  Mix a question in there every once in a

 9    while, but we'll assume that.

10        Now, I'd prefer a 12-person jury.  Now, you know in federal

11    court, you're going to get a six.  I prefer 12 and with the

12    standard like we do in state court, 10/2 verdict or above.  Are

13    there any objections to that?

14              MR. PONCIO:  No, Your Honor.

15              MR. DYKES:  No, Your Honor.

16              THE COURT:  All right.

17              MR. SWEETMAN:  No objection.

18              THE COURT:  That's what we'll do.  Ms. Ezell?

19              MS. EZELL:  No.

20              THE COURT:  All right.  On Thursday, the 28th of October

21    at 1:30, and we may have to play a little bit with this time,

22    but for your scheduling purposes at 1:30, we're going to have

23    basically a pretrial conference.  And at that, I'm going to want

24    to go through, you know, every issue that we're going to be

25    arguing about.  I'd like to go ahead and admit the exhibits.
```

1  I'd like to go ahead and talk about jury issues, although I

2  probably won't finalize them by then, and I'd like to go

3  ahead -- and, obviously, if there's going to be some bone of

4  contention that's going to come up, although this fact situation

5  doesn't lend itself to, you know, some smoking gun that you

6  don't want the other side to know about necessarily, I don't

7  want any surprises in front of the jury that are going to cause

8  me to have to send them home early and send me to the library.

9  So I want to flush those out that Thursday.

10       On Thursday the 14th, I want your joint pretrial order, and

11  that will have all the exhibits, motion in limine, you know, the

12  whole gamut that's under the rules.  All right.

13            MR. PAGE:  Do you have the Louis Moore ace in the hole

14  rule?

15            THE COURT:  I'm sorry, I didn't hear you.

16            MR. PAGE:  Do you have the Louis Moore ace in the hole

17  rule?

18            THE COURT:  Which means?

19            MR. PAGE:  Judge Moore, I remember trying a case in his

20  court, and he said, you know, "No surprises unless you have an

21  ace in the hole."

22            THE COURT:  Well, it better be a really good ace, is all

23  I can say, if it's a surprise to me.

24            MR. PAGE:  I'm just trying to understand the --

25            THE COURT:  I don't want -- this doesn't lend itself to

25

1   it, but a personal injury case would; you know, something where

2   the defendant is sitting there, and he knows the guy has been

3   convicted ten times of, you know, murder, and he's sitting on

4   those convictions, and all of a sudden in front of the jury

5   stands up and starts pulling those convictions out.  I don't

6   want to be surprised by that, and I don't want to lose my jury

7   over that.

8       What I'm really talking about is if you know something is

9   going to be controversial, you know you have a piece of evidence

10  you want to get in, you know Mr. Poncio is going to fight like

11  the dickens to keep it out and vice versa, let's go ahead and

12  have the fight before we have a jury in the box.  I mean, you --

13  rarely is there going to be something.  I mean, if it's

14  absolutely a surprise, I'm not going to keep either side, if

15  it's otherwise admissible, from using it.  But if -- you know,

16  any more we discover these cases to death; rarely is there

17  really a surprise.  I mean, you know, Mr. Poncio comes up with

18  an e-mail that says, "Gee, whatever you do, don't tell the city

19  we snuck a pipeline under their main street."  I mean, you know,

20  he knows you're not going to want that into evidence, and you

21  know you're going to fight it.  So let's go ahead and have the

22  fight before the jury is in the box.  That's all I'm saying.

23      The last couple times I tried a case in Louis Moore's court,

24  by the time we got to trial, neither one of us wanted to face

25  him, so we settled somehow.

```
1        Mr. Poncio, when can you name experts?  End of June?
2             MR. PONCIO:  I think that's fine, Your Honor.  I mean,
3    pretty much that's fine, Your Honor.
4             THE COURT:  June 30th?
5             MR. PONCIO:  Sure.  Any date is fine.
6             THE COURT:  Let me see what day of the week that is.
7             COURT CLERK:  It's a Wednesday, Judge.
8             THE COURT:  Okay.  June 30th.
9        And then why don't the defendants name experts on
10   August 13th.  That will give you time to depose each other, and
11   I know people will also still have vacations lurking around in
12   there.
13       By October -- I'm sorry, September 17th, I want any
14   dispositive motions filed that I haven't already had.  I mean, I
15   would imagine from the defense side, you guys are going to run
16   in as soon as you possibly can and file your motions for summary
17   judgment.  But if there's something that comes up and you figure
18   out, "Gee, we said we owned this pipeline, but we really don't,"
19   that will be a creative affidavit, but I'd like to have it filed
20   by the 17th of September.  And then discovery cutoff will be
21   October 8th.
22       Now, any of these deadlines, with the exception of the
23   pretrial order, the pretrial conference, and the jury selection,
24   y'all can move around by agreement.  And I don't -- you don't
25   have to file a motion.  I'd like a letter from counsel saying
```

1    federal common law.  This case is based on state law.  Does it

2    change the rule?

3         MR. PALMER:  No, Your Honor.  Once they seek an

4    injunction, part of their prima facie case then is to negate

5    those inferences; and, therefore, that doesn't matter.

6    Essentially you start looking at what could prevent them from

7    obtaining that injunction, and here you have federal

8    constitutional law.  Essentially we have issues with the taking

9    clause, commerce clause, substantive due process, as well as

10   equal protection.

11       I know plaintiff was talking -- he raised the Tax Injunction

12   Act.  But you will see the cases basically stand for the

13   proposition that that's not applicable where you're seeking to

14   collect taxes.  That's only applicable if we're seeking to

15   enjoin taxes.

16       We would hold that this whole case isn't about taxes; it's

17   about street rental ordinance and street rents.  It's about

18   rentals, not taxes.  And it's pretty clear from the ordinance

19   itself, which is entitled "Street Rental Ordinance" and also

20   refers several times to rentals.

21       He's also raised consent.  And when we filed the removal,

22   Pennzoil Gas Company joined in and consented to the removal.  We

23   had Cinergy, which essentially filed an answer in state court

24   three hours prior to us removing -- filing the actual

25   notification of removal, effectuating removal in state court.

1   And then Gulf Cost answered approximately five days later after

2   the case had already been removed.  Once we found out about

3   Cinergy and Gulf Coast, we contacted them and got them to

4   consent to the removal.

5       If, for whatever reason, you still find consent was not met,

6   the 5th Circuit has adopted the exceptional circumstances

7   exceptions procedural requirements for removal, and we would say

8   this is just a case like that where you have 60-some-odd

9   defendants who have been named, and no one knows who's been

10  served.  And apparently no one has been served, and no one knows

11  who is answering.  We had no idea that anyone was going to

12  answer; and then all of a sudden, we found out Pennzoil

13  answered, and that's why -- although we don't think we had to,

14  we wanted to make sure that we got an answer and removed it

15  within 30 days of their answer, Your Honor.

16          THE COURT:  All right.  Mr. Poncio, you want to talk

17  about why you don't belong here?

18          MR. PONCIO:  Sure, Your Honor.  Just a couple of things.

19  I think everything is pretty clearly set out.

20      But with regard to removal, Your Honor, we think they have

21  the burden to determine who had filed answers before the

22  removal.  They had plenty of time to make that determination.

23  It was noted in the clerk's records.  Nevertheless, they didn't

24  obtain consent.

25      With regard to removal pursuant to 1331, I have a couple of

1  case cites, Your Honor, and I'll follow-up with a letter to the

2  court.

3          THE COURT:  Okay.

4          MR. PONCIO:  But one particular case, the *Appling County*

5  Case, which is 621 F.2d, 1301, a 5th Circuit case, 1980.  It

6  says that the federal court has subject matter jurisdiction only

7  when the plaintiff's statement of his own cause of action shows

8  that it is based on federal law.

9      Clearly, we demonstrate in our petition that it's not based

10  on federal law, but simply state law and a local ordinance.

11  With regard to the *Grynberg* case, it's simply a district court

12  case which has no compelling authority, I believe, in light of

13  these other 5th Circuit opinions.

14      With regard to the injunction act, Your Honor, one other

15  case we'd like to cite, the *A Bonding Company* case, 629 F.2d,

16  1127, another 5th Circuit case out of 1980, which says that the

17  defendant in that case, where we're arguing the Tax Injunction

18  Act and the abstention as to tax issues applies, the defendant

19  in that case did not contend that state remedies are inadequate

20  for the disposition of the case so that the federal court in

21  that particular case must dismiss.  We have the same instance

22  here where they haven't demonstrated that even in light of these

23  other federal issues that they're raising, that the state court

24  is not an adequate -- is not inadequate in order to protect

25  their federal issues.

1    The second point to that case, Your Honor, the court must

2    assume that the state's equitable remedies are sufficient to

3    protect the defendant's federal rights; and, therefore, the

4    federal court must dismiss in light of those particular issues.

5    They cite one particular case arguing that this ordinance

6    is, in fact, not a tax.  That particular case was limited to its

7    issues.  They cite a footnote which is simply dicta and not

8    governing law in that case.  I think it's clear that this is a

9    tax issue with regard to the city.

10    Also, Your Honor, with regard --

11    THE COURT:  Doesn't the ordinance itself say rent?

12    MR. PONCIO:  It says rent, Your Honor; but I think any

13    and all rents are classified as a form of tax when you look at

14    the purpose, and that's to raise money for the city, which is

15    what typically is a tax.

16    With regard to the *City of Santa Monica* case, Your Honor,

17    which they cite as authority, it says that, "To show equal

18    protection issues, you must demonstrate unfair or improper

19    application," which you do not have a demonstration of in this

20    case.  And we think the case was improperly removed, and I don't

21    need to take up too much more of the court's time.

22    THE COURT:  Did you -- in your pleading, Mr. Poncio, you

23    mentioned that some years ago that this court was actually faced

24    with that.  Did you ever find the ruling on that?

25    MR. PONCIO:  Your Honor, I went down to our district

1    court -- I mean the direct clerk's office.  They don't have

2    records going back that far.  But I think if you're not going to

3    rule until the 14th, if I could have another week, I think I

4    could dredge it up.

5         THE COURT:  I think all the old records are kept up in

6    Fort Worth in some -- maybe they're microfilmed, I don't know,

7    but I think that's where they are.  But I think if you contacted

8    them and had the style of the case --

9         MR. PONCIO:  It's a *Rio Grande Valley Gas Company versus*

10   *San Benito* case, Your Honor.  I have the style.

11        THE COURT:  I think they might be able to come up with

12   it.

13        MR. PONCIO:  I think I can obtain that for you, but it

14   was based on the same issues.  And in that case, they argued

15   that the -- they held that the Injunction Act did apply and

16   dismissed the case of Rio Grande Valley Gas Company.

17        THE COURT:  Well, I'd like to see that if you could

18   possibly come up with it.

19        MR. PONCIO:  Okay.  I'll try to get that, Your Honor.

20        THE COURT:  I realize it's 60 years ago, and so it's not

21   going to be an easy thing.

22        MR. PONCIO:  Let me also point out to the court.  If you

23   look at Tejas Gas' answer, they specifically look to it arguing

24   that it's a tax because they say that certain -- it says,

25   "Defendants plead the following sections of the Texas Tax Code

1    which exempts certain sales from the imposition of a sales tax."

2    Then at paragraph 4, they say that it -- "While it may be a

3    tax of a public utility, it may not exceed the amount or amounts

4    prescribed by the statute for sales within the City of San

5    Benito."  I think it's clear from their answers that they're

6    arguing that it is a tax, just for the court's benefit.

7    THE COURT:  I mean, you're not going to take the

8    position, are you, that this wouldn't be interstate commerce,

9    are you; I mean, a pipeline, gas pipeline?

10    MR. PONCIO:  Well, it depends, Your Honor.  I think if

11    you look at the *City of Santa Monica* case, it's only dealing

12    with actual sales within the city in this particular case.  It's

13    not dealing with an issue where you're making sales to another

14    provider who intends to transport them outside of the state,

15    because you don't have that.  It deals with only sales and

16    transport for sale within the city to consumers as that may be

17    defined.

18    THE COURT:  Well, but if they had to go, for instance,

19    and dig up their pipelines and move it, wouldn't that affect

20    interstate commerce?

21    MR. PONCIO:  No.  I think what the cases say, Your

22    Honor, is that they have the right to go to private landowners

23    to create their right of way.  They can go outside the city to

24    create their right of way.  But my argument is even if it does

25    apply, even if interstate commerce would apply, that they have

1   not met the burdens under the Tax Injunction Act which say,

2   well, you've got to show that this state court is inadequate to

3   protect your federal rights, and you haven't done that.

4           THE COURT:  Okay.  All right.  Any reply from the

5   defendants?

6           MR. PALMER:  Yes, Your Honor.  I apologize.  I probably

7   should have started off with this.  Essentially, the defendant

8   has a fundamental right to a federal forum once you establish

9   subject matter jurisdiction.  That's based on not the

10  characterization of the plaintiff in his lawsuit, but on the

11  face of the petition.  It's very clear in his -- in plaintiff's

12  petition, they're seeking an injunction causing defendants to

13  remove any and all pipelines and/or facilities from the City of

14  San Benito's city limits or right of way.

15      As far as that we had the burden of finding out who had

16  answered lawsuits, like I said -- and I don't know if Mr. Poncio

17  disagrees -- but our records show that Cinergy essentially filed

18  an answer three hours before.  We had already gotten certified

19  copies of the state pleadings.  We had no idea whatsoever that

20  they had answered; and as soon as we found that out, we got

21  their consents.

22      And again, I want to give you a citation for the exceptional

23  circumstances.  It's *White versus White*, 32 F. Supp. 2d, 890.

24  And the pinpoint is 893.  And there they found exceptional

25  circumstances where it appeared plaintiff's counsel was taking

35

```
 1    advantage of what they called removal track.  Essentially you
 2    serve the dumb defendant first and get him to waive it, and then
 3    you serve all the more sophisticated defendants to come in and
 4    who will remove.
 5          THE COURT:  You're not referring to anybody here in the
 6    courtroom, are you?
 7          MR. PALMER:  No, no, no.  He didn't serve anyone, so I'm
 8    not referring to him.
 9       Lastly on the tax issue, one, we contend -- again, we
10    contend it's not a tax, and it's pretty straight from the
11    ordinance itself.  And even if it was a tax, the Tax Injunction
12    Act does not apply because, again, that's about not allowing
13    people to enjoin taxes.  It does not apply when like the
14    plaintiff here is seeking to collect taxes.  That's our position
15    on that, Your Honor.
16          THE COURT:  Counsel, anyone else want to add anything?
17          MR. DYKES:  Your Honor, I might add one more comment on
18    the tax versus rental point.  Mr. Poncio has cited in his
19    pleading the case of Fleming versus Houston Lighting and Power
20    Company decided by the Texas Supreme Court in 1940, one year
21    before the ordinance was enacted.  And I think that's not an
22    accident.  But if we read this Supreme Court case that preceded
23    that ordinance by one year, it's extremely plain that the court
24    is talking about rental and not taxes.
25       The citation, again, is in the pleading, and the court says
```

1    the ordinance, speaking of the one in issue in that case, "The

2    ordinance required all telegraph, telephone, electric and gas

3    companies using the streets or other public places within the

4    corporate limits of the city to pay, for the privilege of such

5    occupancy, a rental."

6        And it comes back to that point at the end of the opinion

7    and again on rehearing.  And I don't want to take a long time to

8    go into that, but I'll just read this one sentence from the

9    rehearing opinion of the Texas Supreme Court in that case.  It

10   said, "The authority has recognized a distinction between a

11   rental charge and a tax or charge for the privilege of doing

12   business."  So that distinction is not one that has escaped the

13   courts.  It's specifically recognized.

14       Cities have essentially three ways, besides gifts, perhaps

15   other unusual ways for a city to get assets or revenue.  They

16   have essentially three ways to get revenue.  One of them is

17   taxes, one of them is rentals, and one of them is regulatory

18   fees.  And the court recognizes that there, perhaps, in this

19   case was some confusion about which was being talked about, but

20   the court wasn't confused and made it very, very plain that it's

21   talking about rental.  And that's the same thing that Mr. Poncio

22   is making claim for.  It's very plain from the ordinance that he

23   is suing on as well as from the case that he cites.

24           THE COURT:  All right.  Counsel, anything else?

25   Here's -- let me tell you.  If you need to communicate with the

1    court, and you've done this so far, feel free to call Ms. Soto.

2    Irma is in our office multiple times during the day and she

3    communicates directly with me, so there's no problem, but that's

4    the way I'd like you to confer with the court.

5        As I said earlier, if you want to change things by

6    agreement, I -- you don't even have to ask, but I do want to

7    know about it, other than those three or four things that I

8    mentioned.

9        I will not grant any kind of motion without a certificate of

10   conference.  So -- and just as a matter of housekeeping, let me

11   reiterate that, because it will sit there because I'm not going

12   to do anything without a certificate of conference one way or

13   the other, even if it's unopposed or represented to be unopposed

14   in the style.

15       And then secondly, I do consider -- and the local rules

16   provide for this, and I know some judges do and some judges

17   don't, but I do consider an unresponded to motion as being

18   unopposed.  So if somebody files a motion and you don't like it,

19   you'd better respond to it; because otherwise, I'm going to

20   grant it.

21       All right.  Any other questions?  Okay.  We will reduce

22   today's hearing into -- into an order, and you'll get a written

23   order on this.  And then, obviously, you're not going to get a

24   remand ruling until the 14th, so if there's anything else you

25   want to tell me, you're welcome to send it by letter.  Obviously

38

1    you need to copy the other side with it.  But, you know, I'm not

2    going to give you a deadline, but you know I'm working on this,

3    so the sooner the better.  All right.  Thank you.

4        (Court adjourned)

5                              *  *  *

6        (End of requested transcript)

7                             -oOo-

8        I certify that the foregoing is a correct transcript from

9    the record of proceedings in the above matter.

10

11   Date:  January 21, 2004

12

13                          _Barbara Barnard_
                            Signature of Court Reporter
14                          Barbara Barnard

15

16

17

18

19

20

21

22

23

24

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **CITY OF SAN BENITO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **C.A. No. B03-080** |
| **v.** | § | |
| | § | |
| **TEJAS GAS PIPELINE COMPANY,** | § | |
| **et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF, THE CITY OF SAN BENITO'S,
RULE 26 DISCLOSURE STATEMENT**

TO: THE DEFENDANTS, as identified herein and listed on the Certificate of Service.

COMES NOW the City of San Benito, and Pursuant to Rule 26 of the Texas Rules of Federal Procedure, submits its initial disclosures:

1.      Rule 26(a)(1)(A): Except for each Defendant's own records, Plaintiff relies upon public documents, filings and information as maintained by the Public Utility Commission of Texas (PUC), and the Federal Energy Regulatory Commission (FERC), to support its claims.  In addition, the City of San Benito passed an ordinance (No. 478), already disclosed to defendants to support its claims as outlined in its Seventh Amended Original Petition, which is incorporated herein, as if stated in the verbatim.

2.      Rule 26(a)(1)(B): The gas fired electric power plant located inside the City of San Benito, and once owned by Central Power & Light Company, is and has been required to report its fuel purchase and use activities and do so by filing Fuel Purchase Reports  with the PUC (on a monthly basis), and by filing FERC Form 423 with FERC. Most relevant of the information reported



in those fuel purchase reports, is that part that shows the supplier of the gas at the San Benito Power Plant, and how much gas was sold and consumed at the plant to generate electricity. These reports show the total cost of gas as to each supplier of gas. All of the Defendant's supplied gas to the San Benito Power Plant during certain points in time from 1976 through the year 2000. The reports breakout the gas sales by gas selling company. Copies of the monthly fuel purchase reports filed by CP&L with the PUC can be found at the PUC library in Austin, Texas. In addition, the monthly fuel purchase reports from 1995-2001, can be found and reviewed as they are maintained on the PUC's web site at http://www.puc.state.tx.us/electric/reports/fuel/index.cfm. Furthermore, unless the design and maintenance of the FERC website has changed, the FERC has in the past maintained a web site at http://www.ferc.gov/docs-filing/eforms/form-423/install-manual.asp where information relating to FERC Form 423 can be discovered, which also shows gas purchase, and gas use information.

3.1     Rule 26(a)(1)(C): Damage calculations as to each defendant are based upon the foregoing records maintained by the PUC and FERC, and based upon violations of the previously provided City of San Benito Ordinance No. 478. According to the records maintained by the PUC and, in some cases, FERC, the following lists approximate damages and amounts owed to the City of San Benito from the defendants that have made an appearance in this case.

3.2     Duke Energy Trading and Marketing has sold approximately $9,108,760 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Duke Energy Trading and Marketing owing the City of San Benito approximately $182,175.20 in actual damages.

3.3     The Pan Energy entities have sold approximately $1,613,925 worth of gas at the San Benito. Applying the 2% gross receipts street rental ordinance to those sales equates to the Pan Energy entities owing the City of San Benito approximately $32,278.50

in actual damages.

3.4    Conoco has sold approximately $2,457,169 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Conoco owing the City of San Benito approximately $49,143.38 in actual damages.

3.5    Fina has sold approximately $1,064,902 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Fina owing the City of San Benito approximately $21,298.04 in actual damages.

3.6    The Union Pacific entities sold approximately $264,621 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to the Union Pacific entities owing the City of San Benito approximately $5,292.42 in actual damages.

3.7    Anadarko Energy Services Co. sold approximately $11,868,462 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Anadarko Energy Services Co. owing the City of San Benito approximately $237,369.24 in actual damages.

3.8    Natural Gas Clearinghouse sold approximately $1,020,375 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Natural Gas Clearinghouse owing the City of San Benito approximately $20,407.50 in actual damages.

3.9    Texaco Natural Gas, Inc. sold approximately $12,898,648 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texaco Natural Gas, Inc. owing the City of San Benito

approximately $257,972 in actual damages.

3.10   Texaco Gas Marketing, Inc sold approximately $9,087,487 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texas Gas Marketing, Inc. owing the City of San Benito approximately $181,749.74 in actual damages.

3.11   Texaco Exploration and Production, Inc. sold approximately $257,685 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texaco Exploration and Production, Inc. owing the City of San Benito approximately $5,513.70 in actual damages.

3.12   Chevron sold approximately $29,359 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Chevron owing the City of San Benito approximately $587.18 in actual damages.

3.13   BP Energy Company sold approximately $1,787,190 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to BP Energy Company the City of San Benito approximately $35,743.80 in actual damages.

3.14   Amoco Energy Trading Corp. sold approximately $16,773,563 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Amoco Energy Trading Corp. owing the City of San Benito approximately $335,471.26 in actual damages.

3.15   Arco Natural Gas Marketing, Inc. sold approximately $1,120,406 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Arco Natural Gas Marketing, Inc. owing the City of San Benito

approximately $22,480.12 in actual damages.

3.16    Vastar Gas Marketing, Inc. sold approximately $1,827,903 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to Vastar Ga Marketing, Inc. owing the City of San Benito approximately $36,558.06 in actual damages.

3.17    Houston Pipeline Co. sold approximately $136,672 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to Houston Pipeline Co. owing the City of San Benito approximately $2,733.44 in actual damages.

3.18    HPL Resources Co. sold approximately $302,175 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to HPL Resources Co. owing the City of San Benito approximately $6,043.50 in actual damages.

3.19    The Transok entities sold approximately sold approximately $3,549,750 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to the Transok entities owing the City of San Benito approximately $70,995.00 in actual damages.

3.20    The documents by which Plaintiff relies upon in calculating the foregoing actual damages are public information maintained by the FERC and by the PUC of Texas, as described above. Any Defendant may visit the PUC library, the PUC website, the FERC library, and/or FERC website to obtain copies of the records and/or public filings as maintained by those agencies. Please see the initial disclosure statement provided in  Paragraph 2 above, which is incorporated herein, as if stated in the verbatim.

4.      Rule 26(1)(D): The City of San Benito does not know of any insurance agreements under which any person carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action.

5.      Rule 26(2)(A): The City of San Benito has not retained or otherwise employed any expert witness at this time, but will supplement this answer in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  Furthermore, it is anticipated that the City will retain an accounting expert and/or an oil and gas expert to testify to the damages as outlined above. Once an expert is retained, the City of San Benito will make the above mentioned public records that are the basis for the damage calculations available for review at a mutually agreeable time and place, and at each Defendant's own cost for such production.

6.      Rule 26(2)(B) and (C): Please see the City of San Benito's disclosure detailed in Paragraph  above.  The City of San Benito will supplement this disclosure in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

7.      Rule 26(3)(A), (B), and (C): The City of San Benito will supplement this disclosure as required by the Rules of Federal Procedure or as directed by this Court.

Respectfully submitted,

ADAM PONCIO
State Bar No. 16109800
LAW OFFICES OF CERDA & PONCIO
A Professional Corporation
924 McCullough
San Antonio, Texas 778215-1642
Telephone (210) 212-7979
Telecopier (210) 212-5880
ATTORNEY FOR PLAINTIFFS

# CERTIFICATE OF SERVICE

I, the undersigned attorney of record, do hereby certify that I have on this _31st_ day of December, 2003, forwarded a true and correct copy of the above document to counsel of record as follows, pursuant to Rule 5 of the  Federal Rules of Civil Procedure:

Ramon Garcia                                  **VIA US FIRST CLASS MAIL**
LAW OFFICES OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539

OSBORNE J. Dykes, III                         **VIA US FIRST CLASS MAIL**
Jeffrey D. Palmer
FULBRIGHT & JAWORSKI, LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

Julie L. Ezell                                **VIA US FIRST CLASS MAIL**
CINERGY MARKETING & TRADING, L.P.
1000 East Main Street
Plainfield, Indiana 46168

Randy Beevis                                  **VIA US FIRST CLASS MAIL**
1100 Louisiana, Suite 4900
Houston, Texas 77002

J.D. Page                                     **VIA US FIRST CLASS MAIL**
3040 Post Oak Boulevard, Suite 85G
Houston, Texas 77056

Bradley Whalen                                **VIA US FIRST CLASS MAIL**
DOYLE, RESTREP, HARVING & ROBBINS,
L.L.P
4700 Chase Tower
600 Travis Street
Houston, Texas   77002

Rene G. Oliveira                              **VIA US FIRST CLASS MAIL**
David G. Oliveira
ROERIG, OLIVEIRA & FISHER
855 West Price Road, Suite 9
Brownsville, Texas 78520

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

CITY OF SAN BENITO,                     §
                                        §
          Plaintiff,                    §
                                        §        C.A. No. B03-080
v.                                      §
                                        §
TEJAS GAS PIPELINE COMPANY,             §
et al.,                                 §
                                        §
          Defendants.                   §


PLAINTIFF, THE CITY OF SAN BENITO'S,
SUPPLEMENTAL RULE 26 DISCLOSURE STATEMENT

TO: THE DEFENDANTS, as identified herein and listed on the Certificate of Service.

COMES NOW the City of San Benito, and Pursuant to Rule 26 of the Texas Rules of Federal

Procedure, submits its initial disclosures, as supplemented herein:

1.       Rule 26(a)(1)(A): Except for each Defendant's own records, Plaintiff relies upon

public documents, filings and information as maintained by the Public Utility Commission of Texas

(PUC), and the Federal Energy Regulatory Commission (FERC), to support its claims.  In addition,

the City of San Benito passed an ordinance (No. 478), already disclosed to defendants to support its

claims as outlined in its Seventh Amended Original Petition, which is incorporated herein, as if

stated in the verbatim.

2.       Rule 26(a)(1)(B): The gas fired electric power plant located inside the City of San

Benito, and once owned by Central Power & Light Company, is and has been required to report its

fuel purchase and use activities and do so by filing Fuel Purchase Reports  with the PUC (on a

monthly basis), and by filing FERC Form 423 with FERC. Most relevant of the information reported



in those fuel purchase reports, is that part that shows the supplier of the gas at the San Benito Power Plant, and how much gas was sold and consumed at the plant to generate electricity. These reports show the total cost of gas as to each supplier of gas. All of the Defendant's supplied gas to the San Benito Power Plant during certain points in time from 1976 through the year 2000. The reports breakout the gas sales by gas selling company. Copies of the monthly fuel purchase reports filed by CP&L with the PUC can be found at the PUC library in Austin, Texas. In addition, the monthly fuel purchase reports from 1995-2001, can be found and reviewed as they are maintained on the PUC's web site at http://www.puc.state.tx.us/electric/reports/fuel/index.cfm. Furthermore, unless the design and maintenance of the FERC website has changed, the FERC has in the past maintained a web site at http://www.ferc.gov/docs-filing/eforms/form-423/install-manual.asp where information relating to FERC Form 423 can be discovered, which also shows gas purchase, and gas use information.

      3.1     Rule 26(a)(1)(C): Damage calculations as to each defendant are based upon the foregoing records maintained by the PUC and FERC, and based upon violations of the previously provided City of San Benito Ordinance No. 478. According to the records maintained by the PUC and, in some cases, FERC, the following lists approximate damages and amounts owed to the City of San Benito from the defendants that have made an appearance in this case.

          3.2     Duke Energy Trading and Marketing has sold approximately $9,108,760 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Duke Energy Trading and Marketing owing the City of San Benito approximately $182,175.20 in actual damages.

          3.3     The Pan Energy entities have sold approximately $1,613,925 worth of gas at the San Benito. Applying the 2% gross receipts street rental ordinance to those sales equates to the Pan Energy entities owing the City of San Benito approximately $32,278.50

in actual damages.

3.4     Conoco has sold approximately $2,457,169 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Conoco owing the City of San Benito approximately $49,143.38 in actual damages.

3.5     Fina has sold approximately $1,064,902 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Fina owing the City of San Benito approximately $21,298.04 in actual damages.

3.6     The Union Pacific entities sold approximately $264,621 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to the Union Pacific entities owing the City of San Benito approximately $5,292.42 in actual damages.

3.7     Anadarko Energy Services Co. sold approximately $11,868,462 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Anadarko Energy Services Co. owing the City of San Benito approximately $237,369.24 in actual damages.

3.8     Natural Gas Clearinghouse sold approximately $1,020,375 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Natural Gas Clearinghouse owing the City of San Benito approximately $20,407.50 in actual damages.

3.9     Pennzoil Gas Marketing n/k/a Devon sold $576,334 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Pennzoil Gas Marketing n/k/a Devon owing the City of San Benito

approximately $11,526.68.

3.10    Texaco Natural Gas, Inc. sold approximately $12,898,648 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texaco Natural Gas, Inc. owing the City of San Benito approximately $257,972 in actual damages.

3.11    Texaco Gas Marketing, Inc sold approximately $9,087,487 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texas Gas Marketing, Inc. owing the City of San Benito approximately $181,749.74 in actual damages.

3.12    Texaco Exploration and Production, Inc. sold approximately $257,685 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texaco Exploration and Production, Inc. owing the City of San Benito approximately $5,513.70 in actual damages.

3.13    Chevron sold approximately $29,359 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Chevron owing the City of San Benito approximately $587.18 in actual damages.

3.14    BP Energy Company sold approximately $1,787,190 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to BP Energy Company the City of San Benito approximately $35,743.80 in actual damages.

3.15    Amoco Energy Trading Corp. sold approximately $16,773,563 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Amoco Energy Trading Corp. owing the City of San Benito

approximately $335,471.26 in actual damages.

3.16    Arco Natural Gas Marketing, Inc. sold approximately $1,120,406 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to Arco Natural Gas Marketing, Inc. owing the City of San Benito approximately $22,480.12 in actual damages.

3.17    Vastar Gas Marketing, Inc. sold approximately $1,827,903 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to Vastar Ga Marketing, Inc. owing the City of San Benito approximately $36,558.06 in actual damages.

3.18    Houston Pipeline Co. sold approximately $136,672 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to Houston Pipeline Co. owing the City of San Benito approximately $2,733.44 in actual damages.

3.19    HPL Resources Co. sold approximately $302,175 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to HPL Resources Co. owing the City of San Benito approximately $6,043.50 in actual damages.

3.20    The Transok entities sold approximately sold approximately $3,549,750 worth of gas at the San Benito Power Plant.  Applying the 2% gross receipts street rental ordinance to those sales equates to the Transok entities owing the City of San Benito approximately $70,995.00 in actual damages.

3.21    The documents by which Plaintiff relies upon in calculating the foregoing actual damages are public information maintained by the FERC and by the PUC of Texas, as described

above. Any Defendant may visit the PUC library, the PUC website, the FERC library, and/or FERC website to obtain copies of the records and/or public filings as maintained by those agencies. Please see the initial disclosure statement provided in Paragraph 2 above, which is incorporated herein, as if stated in the verbatim.

4.    Rule 26(1)(D): The City of San Benito does not know of any insurance agreements under which any person carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action.

5.    Rule 26(2)(A): The City of San Benito has not retained or otherwise employed any expert witness at this time, but will supplement this answer in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Furthermore, it is anticipated that the City will retain an accounting expert and/or an oil and gas expert to testify to the damages as outlined above. Once an expert is retained, the City of San Benito will make the above mentioned public records that are the basis for the damage calculations available for review at a mutually agreeable time and place, and at each Defendant's own cost for such production.

6.    Rule 26(2)(B) and (C): Please see the City of San Benito's disclosure detailed in Paragraph above. The City of San Benito will supplement this disclosure in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

7.    Rule 26(3)(A), (B), and (C): The City of San Benito will supplement this disclosure as required by the Rules of Federal Procedure or as directed by this Court.

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record, do hereby certify that I have on this _16th_ day of December, 2003, forwarded a true and correct copy of the above document to counsel of record as follows, pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Ramon Garcia                                          **VIA US FIRST CLASS MAIL**
LAW OFFICES OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539

OSBORNE J. Dykes, III                                 **VIA US FIRST CLASS MAIL**
Jeffrey D. Palmer
FULBRIGHT & JAWORSKI, LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

Julie L. Ezell                                        **VIA US FIRST CLASS MAIL**
CINERGY MARKETING & TRADING, L.P.
1000 East Main Street
Plainfield, Indiana 46168

Randy Beevis                                          **VIA US FIRST CLASS MAIL**
1100 Louisiana, Suite 4900
Houston, Texas 77002

J.D. Page                                             **VIA US FIRST CLASS MAIL**
3040 Post Oak Boulevard, Suite 85G
Houston, Texas 77056

Bradley Whalen                                        **VIA US FIRST CLASS MAIL**
DOYLE, RESTREP, HARVING & ROBBINS,
L.L.P
4700 Chase Tower
600 Travis Street
Houston, Texas   77002

Rene G. Oliveira                                      **VIA US FIRST CLASS MAIL**
David G. Oliveira
ROERIG, OLIVEIRA & FISHER
855 West Price Road, Suite 9
Brownsville, Texas 78520

Frances I. Gandy                           **VIA US FIRST CLASS MAIL**
148 American Bank Plaza
Corpus Christi, Texas 78475


Robert Galligan                            **VIA FIRST CLASS MAIL**
JONES, GALLIGAN, KEY & LOZANO, L.L.P.
2300 W. Pike, Suite 300
P. O. Drawer 1247
Weslaco, Texas 78599-1247




**ADAM PONCIO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| CITY OF SAN BENITO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. No. B03-080 |
| v. | § | |
| | § | |
| TEJAS GAS PIPELINE COMPANY, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF, THE CITY OF SAN BENITO'S,**
**SECOND SUPPLEMENTAL RULE 26 DISCLOSURE STATEMENT**

TO: THE DEFENDANTS, as identified herein and listed on the Certificate of Service.

COMES NOW the City of San Benito, and Pursuant to Rule 26 of the Texas Rules of Federal Procedure, submits its initial disclosures, as supplemented herein:

1.     Rule 26(a)(1)(A): Except for each Defendant's own records, Plaintiff relies upon public documents, filings and information as maintained by the Public Utility Commission of Texas (PUC), and the Federal Energy Regulatory Commission (FERC), to support its claims. In addition, the City of San Benito passed an ordinance (No. 478), already disclosed to defendants to support its claims as outlined in its Seventh Amended Original Petition, which is incorporated herein, as if stated in the verbatim.

2.     Rule 26(a)(1)(B): The gas fired electric power plant located inside the City of San Benito, and once owned by Central Power & Light Company, is and has been required to report its fuel purchase and use activities and do so by filing Fuel Purchase Reports with the PUC (on a monthly basis), and by filing FERC Form 423 with FERC. Most relevant of the information reported

in those fuel purchase reports, is that part that shows the supplier of the gas at the San Benito Power Plant, and how much gas was sold and consumed at the plant to generate electricity. These reports show the total cost of gas as to each supplier of gas. All of the Defendant's supplied gas to the San Benito Power Plant during certain points in time from 1976 through the year 2000. The reports breakout the gas sales by gas selling company. Copies of the monthly fuel purchase reports filed by CP&L with the PUC can be found at the PUC library in Austin, Texas. In addition, the monthly fuel purchase reports from 1995-2001, can be found and reviewed as they are maintained on the PUC's web site at http://www.puc.state.tx.us/electric/reports/fuel/index.cfm. Furthermore, unless the design and maintenance of the FERC website has changed, the FERC has in the past maintained a web site at http://www.ferc.gov/docs-filing/eforms/form-423/install-manual.asp where information relating to FERC Form 423 can be discovered, which also shows gas purchase, and gas use information.

3.1    Rule 26(a)(1)(C): Damage calculations as to each defendant are based upon the foregoing records maintained by the PUC and FERC, and based upon violations of the previously provided City of San Benito Ordinance No. 478. Specifically, each Defendant below used certain pipelines inside the City of San Benito to sell gas at the San Benito CP&L power plant. According to the records maintained by the PUC and, in some cases, FERC, the following lists approximate damages and amounts owed to the City of San Benito from the defendants that have made an appearance in this case. All such sales made by the Defendants below were sales made by Defendants using pipelines located in the City of San Benito.

3.2    Duke Energy Trading and Marketing has sold approximately $9,108,760 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Duke Energy Trading and Marketing owing the City of San Benito approximately $182,175.20 in actual damages.

3.3    The Pan Energy entities have sold approximately $1,613,925 worth of gas at the San Benito. Applying the 2% gross receipts street rental ordinance to those sales equates to the Pan Energy entities owing the City of San Benito approximately $32,278.50 in actual damages.

3.4    Conoco has sold approximately $2,457,169 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Conoco owing the City of San Benito approximately $49,143.38 in actual damages.

3.5    Fina has sold approximately $1,064,902 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Fina owing the City of San Benito approximately $21,298.04 in actual damages.

3.6    The Union Pacific entities sold approximately $264,621 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to the Union Pacific entities owing the City of San Benito approximately $5,292.42 in actual damages.

3.7    Anadarko Energy Services Co. sold approximately $11,868,462 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Anadarko Energy Services Co. owing the City of San Benito approximately $237,369.24 in actual damages.

3.8    Natural Gas Clearinghouse sold approximately $1,020,375 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Natural Gas Clearinghouse owing the City of San Benito approximately $20,407.50 in actual damages.

3.9 Pennzoil Gas Marketing n/k/a Devon sold $576,334 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Pennzoil Gas Marketing n/k/a Devon owing the City of San Benito approximately $11,526.68.

3.10 Texaco Natural Gas, Inc. sold approximately $12,898,648 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texaco Natural Gas, Inc. owing the City of San Benito approximately $257,972 in actual damages.

3.11 Texaco Gas Marketing, Inc sold approximately $9,087,487 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texas Gas Marketing, Inc. owing the City of San Benito approximately $181,749.74 in actual damages.

3.12 Texaco Exploration and Production, Inc. sold approximately $257,685 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Texaco Exploration and Production, Inc. owing the City of San Benito approximately $5,513.70 in actual damages.

3.13 Chevron sold approximately $29,359 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Chevron owing the City of San Benito approximately $587.18 in actual damages.

3.14 BP Energy Company sold approximately $1,787,190 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to BP Energy Company the City of San Benito approximately $35,743.80 in actual damages.

3.15    Amoco Energy Trading Corp. sold approximately $16,773,563 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Amoco Energy Trading Corp. owing the City of San Benito approximately $335,471.26 in actual damages.

3.16    Arco Natural Gas Marketing, Inc. sold approximately $1,120,406 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Arco Natural Gas Marketing, Inc. owing the City of San Benito approximately $22,480.12 in actual damages.

3.17    Vastar Gas Marketing, Inc. sold approximately $1,827,903 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Vastar Ga Marketing, Inc. owing the City of San Benito approximately $36,558.06 in actual damages.

3.18    Houston Pipeline Co. sold approximately $136,672 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Houston Pipeline Co. owing the City of San Benito approximately $2,733.44 in actual damages.

3.19    HPL Resources Co. sold approximately $302,175 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to HPL Resources Co. owing the City of San Benito approximately $6,043.50 in actual damages.

3.20    The Transok entities sold approximately sold approximately $3,549,750 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to the Transok entities owing the City of San Benito

approximately $70,995.00 in actual damages.

3.21    The Tejas entities sold approximately $32,584,057.69 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to the Tejas entities owing the City of San Benito approximately $651,681.15 in actual damages.

3.22    Gulf Coast Energy sold approximately $1,923,757.45 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Gulf Coast Energy owing the City of San Benito approximately $38,475.14 in actual damages.

3.23    Gulf Coast Energy Marketing sold approximately $44,458,755.00 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Gulf Coast Energy Marketing owing the City of San Benito approximately $889,175.10 in actual damages.

3.24    Gulf Coast Gas sold approximately $5,937,806.40 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to Gulf Coast Gas owing the City of San Benito approximately $118,756.12 in actual damages.

3.25    The Gulf Energy entities sold approximately $29,861,881.00 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates to the Gulf Energy entities owing the City of San Benito approximately $597,237.62 in actual damages.

3.26    Petro Source sold approximately $576.334.00 worth of gas at the San Benito Power Plant. Applying the 2% gross receipts street rental ordinance to those sales equates

Paragraph above. The City of San Benito will supplement this disclosure in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

      7.    Rule 26(3)(A), (B), and (C): The City of San Benito will supplement this disclosure as required by the Rules of Federal Procedure or as directed by this Court.

                             **Respectfully submitted,**

**ADAM PONCIO**
**State Bar No. 16109800**
**LAW OFFICES OF CERDA & PONCIO**
**A Professional Corporation**
**924 McCullough**
**San Antonio, Texas 778215-1642**
**Telephone (210) 212-7979**
**Telecopier (210) 212-5880**
**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I, the undersigned attorney of record, do hereby certify that I have on this _26_ day of January, 2004, forwarded a true and correct copy of the above document to counsel of record as follows, pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Ramon Garcia                           **VIA US FIRST CLASS MAIL**
LAW OFFICES OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539

Osborne J. Dykes, III                  **VIA US FIRST CLASS MAIL**
Jeffrey D. Palmer
FULBRIGHT & JAWORSKI, LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

Julie L. Ezell                         **VIA US FIRST CLASS MAIL**
CINERGY MARKETING & TRADING, L.P.
1000 East Main Street
Plainfield, Indiana 46168

Randy Beevis                           **VIA US FIRST CLASS MAIL**
1100 Louisiana, Suite 4900
Houston, Texas 77002

J.D. Page                              **VIA US FIRST CLASS MAIL**
3040 Post Oak Boulevard, Suite 85G
Houston, Texas 77056

Bradley Whalen                         **VIA US FIRST CLASS MAIL**
DOYLE, RESTREP, HARVING & ROBBINS,
L.L.P
4700 Chase Tower
600 Travis Street
Houston, Texas   77002

Rene G. Oliveira                       **VIA US FIRST CLASS MAIL**
David G. Oliveira
ROERIG, OLIVEIRA & FISHER
855 West Price Road, Suite 9
Brownsville, Texas 78520