IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—

United States District Court
Southern District of Texas
ENTERED
JUN 1 6 2004
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| CITY OF SAN BENITO § | |
| § | |
| VS. § | CIVIL NO. B-03-080 |
| § | |
| TEJAS GAS PIPELINE CO. ET AL. § | |

### ORDER

Pending is the plaintiff's Motion for Reconsideration, Docket No. 66, of this court's March 18, 2004 order of dismissal and judgment in favor of defendants Tejas Gas Pipeline Co., Tejas Gas Pipeline, L.L.C., Tejas Gas Pipeline, L.P., Tejas Gas, L.L.C., Tejas Gas Mktg, L.L.C., Gulf Energy Mktg. Co., Gulf Energy Mktg. L.L.C., Coral Energy Servs. L.L.C., Coral Energy Resources L.P., Shell Gas Trading Co., Conoco, Inc., Total E&P USA, Inc. (successor in interest to FINA), Union Pacific Resources Co. (n/k/a Anadarko E&P Co. LP), Natural Gas Clearinghouse, Inc., Anadarko Energy Servs. Co., Texaco Gas Mktg., Inc., Texaco Natural Gas, Inc., Chevron U.S.A., Inc., Texaco Exploration and Production, Inc., BP Energy Co., Amoco Energy Trading Corp. (n/k/a BP Energy Co.), Arco Natural Gas Mktg, Inc. (n/k/a Vastar Gas Mktg., Inc.), Vastar Gas Mktg., Inc., and Transco Petro Source Co. (n/k/a Transco P-S Co.). As a basis for this Order, the plaintiff claims its total failure to follow the rules of this court was the result of an "accident or mistake." As set forth below, the court conditionally grants the plaintiff's motion.

**I.   PROCEDURAL POSTURE**

As the Federal Rules of Civil Procedure do not provide for a "motion for reconsideration" per se, the court must first decide what procedural rule controls the plaintiff's motion before considering its substance. The plaintiff does not invoke any specific rule in its request for relief.

The court perceives two options as to how it can catagorize plaintiff's motion. It could construe plaintiff's motion as one for new trial under FED. R. CIV. P. 59 or as a motion filed pursuant to FED. R. CIV. P. 60(b).

But for when it was filed, the plaintiff's motion might appropriately considered a "motion for new trial" under Rule 59. The court's order of dismissal and entry of judgment in favor of specified defendants was entered on March 18, 2004. Plaintiff's motion was filed on April 2, 2004—more than ten days after the entry of the judgment. Accordingly, the plaintiff's motion for reconsideration was not sufficiently timely to be considered as one for new trial. FED. R. CIV. P. 59(b) (specifying that motions for new trial "shall be filed no later than 10 days after entry of the judgment").

The other rule under which the court could consider this motion is under FED. R. CIV. P. 60(b), which, of course, allows relief from an order or judgment due to mistake, inadvertence or excusable neglect. The rule provides for an outside deadline of one year for such a motion and sets as a standard that it must be filed within a "reasonable time." Given the language employed by the plaintiff in its motion for reconsideration and the timing (or lack thereof) of the filing of its motion, the court will consider the pending motion pursuant to Rule 60(b). Relief under Rule 60(b) lies within the sound discretion of the trial court. Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 997 (5th Cir.2001). Similarly, a court's enforcement of a scheduling order and the local rules—both of which are at relevant to plaintiff's request for reconsideration—are also reviewed under an abuse of discretion standard. Geiserman v. MacDonald, 893 F.2d 787, 790 (5th Cir. 1990).

## II. DISCUSSION

### A. Grounds Asserted In Support of Reconsideration

The excuses given for plaintiff's "mistake, inadvertence, surprise, or excusable neglect" are multiple, but this court has heard better excuses for lost homework from elementary school children. The most plausible of plaintiff's excuses concerns the bankruptcy of Southern Gas Pipeline Company. However, plaintiff's excuse is not supported by well-settled bankruptcy law. Bankruptcy stays under 11 U.S.C. § 362 do not generally halt the litigation as to other litigants. Arnold v. Garlock, Inc., 278 F.3d 426, 436 (5th Cir. 2001); Matter of S.I. Acquisition, Inc., 817 F.2d 1142, 1147-48 (5th Cir. 1987). Moreover, the Fifth Circuit has already characterized the contention that a debtor subject to a § 362 stay must be severed in order for litigation to continue against the non-bankrupt defendants as "border[ing] on frivolousness." GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir. 1985). Counsel's unfounded legal assumptions hardly constitute grounds for reconsideration. See Halicki v. Louisiana Casino Cruises, Inc., 151 F.3d 465, 470 (5th Cir. 1998); Pryor v. U.S. Postal Serv., 769 F.2d 281, 287 (5th Cir. 1985). The court also deems it significant that the "bankrupt party" has never been served nor has it appeared in this lawsuit.

Counsel's less credible excuses were that he had scheduling and vacation conflicts. He writes that he "was scheduled for a spring break vacation out of state from March 13 to March 19, 2004" and that he was in an arbitration from February 23 to March 1, 2004, and that the week prior he was getting ready for the arbitration and that after March 1, 2004, he had a variety of mediations and depositions.

Initially, this court notes that the foregoing recitation is factually <u>no</u> excuse for the lack of cooperation in this case. The discovery about which the defendants' motions urging dismissal

revolve was ordered on October 27, 2003—literally months before this court's order and judgment of March 18, 2004. Also at that same hearing, this court instructed all attorneys to respond to all motions pursuant to Local Rule 7.4 and even went well beyond the norm and told all counsel:

> And then secondly, I do consider—and the local rules provide for this . . . I do consider <u>an unresponded to motion as being unopposed. So if somebody files a motion and you don't like it, you'd better respond to it, because otherwise I'm going to grant it.</u>[1]

Docket No. 44 at 37 (transcript of October 27, 2003 hearing) (emphasis added). However, even if plaintiff's counsel's scheduling excuses were factually more substantive, they would not be grounds for excusable neglect under the governing legal standards. Conflicting personal and professional obligations do not constitute excusable neglect. McKenzie v. Principi, No. 03-30653, 2003 WL 22964867, at *1-2 (5th Cir. Dec. 16, 2003) (per curiam) (unpublished opinion); Prior Products v. Southwest Wheel-NCL, Co., 805 F.2d 543, 546 (5th Cir. 1986).

Counsel's reliance on the court's scheduling order, Docket No. 38, is also without merit. The scheduling order's provision to the effect that the court would not consider a motion for summary judgment prior to April 30, 2004 was based upon both sides producing the ordered discovery, which, to date, the plaintiff has refused to produce. The scheduling order contemplated motions on the merits and was designed to give the parties adequate time and means to either make or respond to those types of motions. The court's order of dismissal and judgment in favor of specified defendants was not initiated by way of summary judgment motions, but rather was premised on plaintiff's

---

[1] Plaintiff's current motion for reconsideration also fails to follow the court's immediately preceding admonition regarding certificates of conference. See Docket No. 44 at 37 (noting that no motion will be granted without a proper certificate of conference). However, given the nature of plaintiff's instant motion, the court feels that it falls into the same category as a summary judgment motion, which is presumed to be opposed. LOCAL RULE 7.1(D).

failure to comply with the court's orders, including the scheduling order, and various procedural rules. The plaintiff cannot simultaneously flout court-ordered discovery and then try to wield the same order as a shield.

### B.     Appropriate Sanctions

In its motion for reconsideration, the plaintiff also asks this court to consider lesser sanctions (i.e., some sanction less than dismissal with prejudice). The appropriate time to debate the merits of defendants' motions for dismissal was when their motions were filed. LOCAL RULE 7.4. This local rule—the very rule that the court highlighted for all the parties at the October 27, 2003 hearing—states "failure to respond will be taken as a <u>representation of no opposition</u>" (emphasis added). Thus, at the time the motions were considered, the plaintiff had <u>no</u> opposition on record to the proposed dismissal. The only question left before this court is why the plaintiff's hitherto unannounced opposition should be considered at this juncture.

The rules seem clear. Rule 41(b) contemplates dismissal with prejudice under the instant circumstances. <u>See</u> FED. R. CIV. P. 41(b) ("For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant."). The phrasing "any order" conveys the impression that a single instance of noncompliance could properly result in dismissal. Similarly, "a federal district court possesses the inherent authority to dismiss an action for want of prosecution." <u>Gonzalez v. Firestone Tire & Rubber Co.</u>, 610 F.2d 241, 247 (5th Cir. 1980). In addition, other relevant procedural rules also provide for dismissal as a sanction for failure to abide by scheduling orders or court-ordered discovery. FED. R. CIV. P. 16(f), 37(b)(2)(C). The aforementioned local rule effectively add failure to respond to a motion to dismiss as an additional ground for dismissal. <u>See</u> LOCAL RULE 7.4.

Nevertheless, the Fifth Circuit seems to have restricted the application of Rule 41(b) and the other rules, as well as the inherent authority of district courts, to far narrower circumstances than the rules' language or the general statement of the courts' inherent authority might otherwise indicate. Although such orders of dismissal are purportedly reviewed under an abuse of discretion standard, dismissal with prejudice is generally considered an abuse of discretion in the absence of certain factors on account of the due process concerns implicated by involuntary adjudication on other than the merits. Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 749 (5th Cir. 1987); Riggs v. City of Pearland, 177 F.R.D. 395, 401 (S.D. Tex. 1997). Ordinarily, dismissal with prejudice must be made with reference to five distinct considerations, namely whether: (1) the noncompliance at issue was wilful or in bad faith; (2) it was accompanied by an unambiguous record of delay or renitency; (3) the conduct is attributable not only to the attorney but to the client as well; (4) the conduct resulted in substantial prejudice to the opposing parties; and (5) the record indicates that lesser sanctions were considered but rejected as being inadequate as a deterrent. Coane v. Ferrara Pan Candy Co., 898 F.2d 1030, 1032 (5th Cir. 1990). However, these are merely "general principles" and "the facts of each case largely determine the appropriateness of dismissal." Brinkmann, 813 F.2d at 749. Not all of the foregoing factors need be present in order for dismissal to be warranted. See Callip v. Harris County Child Welfare Dept., 757 F.2d 1513, 1519 (5th Cir. 1985) (per curiam) ("[M]ost of the cases affirming dismissals with prejudice have involved the presence of one or more of three 'aggravating factors': (1) delay attributable directly to the plaintiff rather than his attorney; (2) actual prejudice to the defendant; and (3) delay caused by intentional conduct.") (emphasis added). However, dismissal is reserved for "the most egregious circumstances." Id. (internal quotation marks omitted).

If the record in this case in any way presents a close call, it is only because prior precedent sets a very high standard where an involuntary dismissal with prejudice is concerned. When viewed in context, plaintiff's failings thus far are substantial. Nonetheless, they are probably not sufficient to warrant dismissal with prejudice under the stringent governing legal standard. The relevant factual context for considering whether dismissal with prejudice was too harsh a sanction is elaborated below.

This case was removed to this Court on April 30, 2003. Docket No. 1; however, the litigation had already been pending in state court for some time. The plaintiff's most recent state court petition, the Seventh Amended Petition, was filed on March 14, 2003. Id. at Exhibit 22. It is unclear when this suit was initially filed in state court, but it dates from at least May of 2000. Id. at Exhibit 1. The earliest version of the petition in the record, the Fourth Amended Petition, dates from May 8, 2001, but does not appear to include any of the present defendants.[2] Id. at Exhibit 12. Although there are some differences in the parties named in each petition, almost forty (of the over sixty) defendants named in the Seventh Amended Petition were listed as defendants in the Fifth Amended Petition, which was filed on January 8, 2002. Id. at Exhibits 18, 22. The defendants in the instant suit were never served with process, however, and only became aware of its existence when the plaintiff informed them about it by letter at some imprecisely identified subsequent point in time.[3] Docket No. 44 at 5, 14.

---

[2] The record is not entirely clear on this point, as the second page of the referenced exhibit is blank. Whether this is by design or accident is not clear. It may be that additional parties, including some of the instant defendants, appear on this page in the original.

[3] Of course, there was substantial delay in bringing this lawsuit as well. The plaintiff appears to believe that its cause of action dates back to the 1940s. See Docket No. 72 at Exhibit A (San Benito's requests for production seeking documents from 1941 to present).

Quite apart from plaintiff's aforementioned noncompliance with the court's orders, more than one opposing counsel has indicated that counsel for plaintiff has been unresponsive to general inquiries and discovery. Counsel for plaintiff disputes this. See Docket No. 66 at 3 (stating that documents concerning gas sales within the city limits of San Benito "were produced and/or were made available for inspection and copying" and averring that no defendant "has contacted Plaintiff's counsel to obtain a copy of the documents available"). In some measure, the parties may simply be talking past one another (i.e., the defendants are referring to documents pertinent to pipeline ownership while the plaintiff is referencing documents concerning sales of gas). See, e.g., Docket No. 70 at 3-4, 7-8 (defendant Pennzoil's uncontested contention that no documents pertaining to pipeline ownership have been produced). However, defense counsel have complained not just of nonresponsiveness (i.e., answers that fail to genuinely respond to the query posed), but also outright unresponsiveness (i.e., failure to respond to queries altogether). Docket No. 72 at Exhibit D (apparently unanswered correspondence concerning pipeline ownership and possible dismissal); Docket No. 73 at 3 (stating that correspondence early in the litigation went unanswered). In addition, at least one defendant claims that the plaintiff has failed to make any documents available. See Docket No. 70 at 8 ("Even as to the alleged sale of gas—the only issue which San Benito now wants to discuss, San Benito has not produced any documents or any meaningful information.").

Although such accusations might ordinarily be discounted in litigation,[4] other facts render these complaints unusually credible. Plaintiff's counsel has more than once failed to return phone calls concerning opposition to motions filed by opposing counsel. Docket No. 60 at 4; Docket No.

---

[4] Indeed, in the two years this judge has been on the bench, this court has not yet felt the need to sanction any lawyer or party appearing before it, notwithstanding multiple requests.

65 at 1; Docket No. 69 at 2. In addition, counsel for several defendants has never been properly served with multiple filings in violation of FED. R. CIV. P. 5. Docket No. 73 at 2-3. Under the Guidelines for Professional Conduct in this District, counsel have a duty to punctually communicate and cooperate with opposing counsel when possible. LOCAL RULES APPENDIX D.[5] Such communication and cooperation appears to be lacking in this case where plaintiff's counsel is concerned.

The foregoing background is the relevant backdrop in which the court's prior order of dismissal and judgment and the plaintiff's present motion for reconsideration should be viewed. The dismissal with prejudice was premised on: (1) the plaintiff's failure to provide the threshold discovery ordered by this court; (2) the plaintiff's failure to respond to the defendants' motions to dismiss; and (3) the plaintiff's failure to comply with the local rules of the Southern District of Texas. There is an unambiguous record of delay in this case. This case was pending against nearly forty of the present defendants in state court for over two years before they were even apprised of its existence. Now, over a year after the case was removed, no meaningful discovery has taken place. Cf. Gonzalez, 610 F.2d at 247 (finding abuse of discretion for dismissal where the record did not indicate "any significant period of inactivity"). Although plaintiff's counsel offers various excuses for the failures that finally resulted in dismissal, he does not actually claim to have been unaware of defendants' motions to dismiss. See Anthony v. Marion County Gen. Hosp., 617 F.2d 1164, 1168 (5th Cir. 1980) (party offered no explanation for failure to prosecute and did not claim to have been

---

[5] Multiple sections of APPENDIX D are relevant. For example, section C states that "[a] lawyer owes, to opposing counsel, a duty of courtesy and cooperation," while section I requires "punctual[ity] in communication with others" and admonishes against "neglect and tardiness." Finally, section J requires attorneys not to unreasonably refuse to cooperate with "a just request for cooperation."

ignorant of hearing, deposition, and correspondence that was neglected). Counsel for plaintiff was undeniably aware of the court-ordered discovery, and he was equally aware of the fact that the discovery in question was considered the threshold issue in this litigation. See Brinkmann, 813 F.2d at 749 ("The court's . . . order could not have been more clear and unequivocal, and [the plaintiff] never claims that it confused him."). Moreover, the court flatly stated during the October 27, 2003 hearing that it would consider failure to respond to motions to be an indication that there was no opposition. Docket No. 44 at 37; cf. Brinkmann, 813 F.2d at 750 ("The . . . order warned that failure to timely comply with it would result in dismissal."). Given the parties' apparent agreement that pipeline ownership was the threshold issue during the aforesaid hearing, it was not at all unreasonable for the court to assume that the plaintiff was, in fact, unopposed to dismissal after having failed to produce any evidence of pipeline ownership. See infra Part II.C. (concerning the consensus that pipeline ownership was the threshold issue).

However, a clear record of delay standing alone may not always be sufficient to warrant dismissal with prejudice. Callip, 757 F.2d at 1521. Moreover, a fairly long line of cases indicates that "noncompliance with two or three orders or rules of the district court" is also insufficient. Id. at 1520-21 & n.10. Such noncompliance has been considered insufficient where, as here, the lawyer's failures are arguably as attributable to simple neglect or incompetence as wilful disregard when the record is viewed as a whole. Cf. Gonzalez, 610 F.2d at 248 ("While the attempts of Gonzalez's counsel to explain his absence at the conference are less than adequate, the district court had no reason to believe that his failure to appear resulted from intentional misconduct rather than inadvertence."). Though the sheer duration of this litigation and the delay in bringing the suit implicates the client in its counsel's dawdling, the specific conduct that triggered dismissal may well

pertain solely to the attorney, which does counsel against dismissal. See Callip, 757 F.2d at 1522 ("We of course have been reluctant to affirm dismissals based on conduct attributable to counsel, rather than the plaintiff."). In addition, the Fifth Circuit has expressly disapproved of dismissal solely on the basis of failure to respond to motions as required by local rules. John v. State of Louisiana, 757 F.2d 698, 709 (5th Cir. 1985). Such disapproval would, no doubt, be accentuated in a case such as this one where lesser sanctions were neither contemplated not imposed as a prior to dismissal. Callip, 757 F.2d at 1521.

Accordingly, while the record does fairly establish that plaintiff's counsel has failed to meet his obligations to both opposing counsel and this court, it may not justify dismissal with prejudice solely on procedural grounds. However, nothing prevents this court from imposing an alternative sanction for the aforementioned failings of counsel as a condition to the reinstatement of this lawsuit against the dismissed defendants. See Gonzalez, 610 F.2d at 248 (reversing dismissal but stating that the district court was free to impose reasonable and appropriate sanctions short of dismissal on remand). The Fifth Circuit has "suggested alternatives to dismissal, including the assessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." Callip, 757 F.2d at 1521. Accordingly, while the court does feel that it is constrained to reconsider and rescind its prior order of dismissal and entry of judgment, it conditions the reinstatement of the lawsuit on plaintiff's compliance with the alternative lesser sanctions imposed infra in Part III of this opinion.

### C. The Bases of Liability

Finally, the plaintiff also contends that dismissal was improper because the defendants' liability is not premised on pipeline ownership alone—the subject matter of the discovery that

plaintiff failed to produce in accordance with the court's scheduling order. The court need not determine whether this is sufficient basis for reconsideration of its dismissal and entry of judgment, given that the court has determined that conditional reinstatement of plaintiff's lawsuit against the previously dismissed defendants is in order on other grounds. However, the court is compelled to comment on this matter inasmuch as it highlights the nature of plaintiff's conduct in this lawsuit thus far and involves issues that must be resolved if and when this lawsuit resumes.

The plaintiff has addressed the current discovery situation in his motion for reconsideration. In particular, the plaintiff now contends that pipeline ownership is not dispositive. Docket No. 66 at 2-4. Specifically, the plaintiff argues that "[p]ipeline ownership is just one of the issues before this court" and that the defendants' sale of gas that was transported via the pipelines in question is sufficient to establish liability under the 1941 municipal ordinance that underlies this suit. Id. In addition, the plaintiff maintains that documents relevant to the issue of gas sales "were produced and/or were made available for inspection or copying." Id. at 3.

The plaintiff's argument is unexpected to say the least. Although such a claim may well lurk within the plaintiff's state court petition, see Docket No. 1 at Exhibit 22 (Seventh Amended Petition), such was not apparent to the parties or the court. For example, the Joint Discovery/Case Management Plan filed by the parties contains the following statement:

> 21.    Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.
>
> Defendants would like to alert the court as to the threshold liability question in this lawsuit: Whether any of the defendants own or owned pipelines within the city limits of the City of San Benito.

Docket No. 15. The plaintiff has never demurred from this characterization of the suit. This

characterization was not controverted during the October 27, 2003, hearing. Indeed, this mutual understanding of the case permeated that hearing and served as the basis of the court's scheduling order. Docket No. 44 at 9-20. The only alternative theory of liability hinted at during the hearing was the possibility that the plaintiff might allege some sort of fraudulent corporate structuring on the part of defendants (i.e., some kind of single business enterprise theory) akin to that alleged in S. Union v. City of Edinburg, 129 S.W.3d 74, 85-90 (Tex. 2003). See Docket No. 44 at 11, 19 (discussion of shell companies and fraud). The court clearly articulated a two-stage discovery plan, in which any progress beyond the initial stage was predicated on satisfaction of the threshold issue of ownership. Id. at 12, 17-18. Notwithstanding the obvious assumptions of the discovery plan contemplated by the court and the announced position of the defendants that ownership was the threshold issue concerning liability, counsel for plaintiff never once objected or indicated that any issue other than pipeline ownership was relevant. In fact, counsel for plaintiff embraced a two-tiered discovery plan in which the first stage was centered on pipeline ownership. Id. at 14-15. Given plaintiff's present contrary contentions concerning the potential bases of liability, most if not all of the court's time and effort and the efforts of the defendants (both those which were dismissed and those that have motions pending) have been wasted. The court has designed certain of the conditions enumerated infra in Part III of the opinion to prevent any further confusion or waste of resources.

### III. CONCLUSION

While it comes as somewhat of a shock to this court that "mere disobedience" with court orders and obstinate, obstreperous conduct have been held to be insufficient to dismiss a case with prejudice, the court notes that the aforementioned Fifth Circuit rulings seem to have arisen in a context in which, as here, there is no proof that the client participated in the conduct. That being the

case, the court will conditionally grant the motion to reconsider upon plaintiff's compliance to the conditions set out below. However, with the issuance of this order, the court now considers the plaintiff on notice and will hold it responsible for its counsel's similar failings, if any, in the future.

The court hereby conditionally grants the motion to reconsider and thereby reinstates the causes of action against Tejas Gas Pipeline Co., Tejas Gas Pipeline, L.L.C., Tejas Gas Pipeline, L.P., Tejas Gas, L.L.C., Tejas Gas Mktg, L.L.C., Gulf Energy Mktg. Co., Gulf Energy Mktg. L.L.C., Coral Energy Servs. L.L.C., Coral Energy Resources L.P., Shell Gas Trading Co., Conoco, Inc., Total E&P USA, Inc. (successor in interest to FINA), Union Pacific Resources Co. (n/k/a Anadarko E&P Co. LP), Natural Gas Clearinghouse, Inc., Anadarko Energy Servs. Co., Texaco Gas Mktg., Inc., Texaco Natural Gas, Inc., Chevron U.S.A., Inc., Texaco Exploration and Production, Inc., BP Energy Co., Amoco Energy Trading Corp. (n/k/a BP Energy Co.), Arco Natural Gas Mktg, Inc. (n/k/a Vastar Gas Mktg., Inc.), Vastar Gas Mktg., Inc., Transco Petro Source Co. (n/k/a Transco P-S Co.), if the plaintiff does each of the following in the time prescribed:

1. Provide each and every defendant that has appeared in this suit (*i.e.*, not just those dismissed by the court's March 18, 2003, order) proof of pipeline ownership concerning a pipeline covered by the San Benito City ordinance at issue in this case or send each defendant through its counsel of record a stipulation that the plaintiff has no evidence that the defendant in question ever owned or operated a pipeline within the city limits of San Benito with 10 business days of the date of this order;

2. Dismiss all those defendants named in the Seventh Amended Petition that have not appeared in this suit, as per plaintiff's counsel's representation at the October 27, 2003 hearing. This may be done in conjunction with the supplemental complaint

required in the third paragraph below;

3. File a supplemental complaint within 10 business days of this order if it intends to rely on any theory of liability <u>other than ownership</u> of a pipeline covered by the San Benito ordinance. Such supplemental pleading shall be concise and shall also be both factually and legally unambiguous;

4. Provide to each defendant within 20 business days of this order plaintiff's evidence as to any theory of liability raised either in the original complaint (<u>i.e.</u>, the Seventh Amended Petition) or the supplemental complaint referred to in paragraph 3; and

5. Finally, each defendant (including those not previously dismissed from this lawsuit) has 20 business days from the date of this order to file a motion for costs in connection with any motion to dismiss, motions to compel compliance with the court's orders or this motion for rehearing concerning the court's prior order of dismissal;[6] within 10 business days of the approval of these costs by the court, plaintiff or plaintiff's counsel will pay those costs and file proof of such payment with the clerk of this court.[7]

If the plaintiff complies with the conditions stated in paragraphs 1-5, then this court will reinstate this matter against the previously dismissed defendants. If the plaintiff does not comply with the

---

[6] The court has also contemplated ordering the plaintiff to pay the costs involved for the October 27, 2003 hearing. While the court considers the plaintiff's conduct in connection with that hearing to have been wasteful, it has limited its order to those items most directly involved in the plaintiff's failure to comply with the court's orders and rules.

[7] The court notes that, in the absence of direct evidence that the client was complicit in its attorney's misdeeds, the court's order with regard to fees and costs will not specify which is responsible. Suffice it to say the court will leave that to the plaintiff and its counsel, but it does expect the fees specified to be timely paid.

foregoing conditions, its motion for reconsideration concerning the dismissal of the specified defendants will be denied.

The court's resolution of plaintiff's motion for reconsideration renders all pending motions pertinent to discovery and costs, including <u>Docket Nos. 59, 62-64, 68</u>, moot, and they are hereby denied. The court's prior scheduling order and discovery plan, <u>Docket No. 38</u>, is void. If the plaintiff complies with the conditions requisite to reconsideration of this court's prior order of dismissal and reinstatement of this lawsuit against the dismissed defendants, the court and the parties will subsequently revisit discovery and scheduling deadlines.

Concerning the additional motions to dismiss that were not granted in this court's March 18, 2004 order and judgment, <u>Docket Nos. 56-58, 60-61, 69</u>, they remain pending before the court. The court hereby defers consideration of these additional motions to dismiss pending plaintiff's decision to comply or not comply with the court's conditions concerning the reinstatement of its claims against the previously dismissed defendants. If the plaintiff fails to timely comply with the conditions set forth by the court above, these motions will also be granted and the remainder of the case will also be dismissed pursuant to those pending motions of the defendants.

Signed in Brownsville, Texas on this 16th day of June, 2004.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE