**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

JUL 1 8 2005

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CITY OF SAN BENITO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| V. | § | C. A. NO. B03-080 |
| | § | JURY TRIAL REQUESTED |
| KINDER MORGAN TEJAS PIPELINE, L.P., | § | |
| | § | |
| Defendant. | § | |

---

# DEFENDANT KINDER MORGAN'S
# MOTION FOR SUMMARY JUDGMENT

---

Osborne J. Dykes, III
State Bar No. 06325500
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Facsimile: 713-651-5246

**OF COUNSEL:**

FULBRIGHT & JAWORSKI L.L.P.

William D. Wood
State Bar No. 21916500
Jeffrey D. Palmer
State Bar No. 24027585

ROERIG, OLIVEIRA & FISHER, L.L.P.

David G. Oliveira
State Bar No. 15254675
855 West Price Road, Suite 9
Brownsville, Texas 78520
Telephone: 956-542-5666
Facsimile: 956-542-0016

ATTORNEY-IN-CHARGE FOR KINDER
MORGAN TEJAS PIPELINE, L.P.

# TABLE OF CONTENTS

**Page**

Table Contents ...................................................................................................... i

Table of Authorities .............................................................................................. ii

Introduction And Summary ................................................................................... 1

Statement Of The Nature And Stage Of The Proceedings .................................... 3

Statement of the Issues To Be Ruled Upon By The Court .................................... 5

Facts  ..................................................................................................................... 5

Standard of Review ............................................................................................... 7

Argument and Authorities ..................................................................................... 8

I.      THE STREET RENTAL ORDINANCE IS INAPPLICABLE BY ITS TERMS
        TO KINDER MORGAN BECAUSE KINDER MORGAN HAS NOT
        ENGAGED IN DISTRIBUTION OF NATURAL GAS IN SAN BENITO ...................... 8

        A.      The Term "Distribution" Does Not Include the Sale of Gas to a Single
                Customer .................................................................................................. 8

        B.      Kinder Morgan Has Sold Gas to Only One Consumer ............................ 10

II.     UNDER TEXAS LAW, THE CITY LACKS POWER TO CHARGE STREET
        RENTAL FOR KINDER MORGAN'S PIPELINE BECAUSE THE PIPELINE
        IS AN INTERURBAN BUSINESS ............................................................................ 11

        A.      The City May Not Charge Street Rental To An Interurban Business ................. 11

        B.      Because Kinder Morgan Does Not Operate As A Public Utility In San
                Benito, Statutes Authorizing Street Rental Charges Do Not Apply To
                Kinder Morgan ........................................................................................ 15

III.    THERE IS NO EVIDENCE THAT KINDER MORGAN HAS DISTRIBUTED
        NATURAL GAS IN THE CITY OF SAN BENITO ....................................................... 17

IV.     THERE IS NO EVIDENCE OF TORTIOUS INTERFERENCE WITH CITY
        BUSINESS OR OTHER TORTIOUS CONDUCT ......................................................... 18

V.      THERE IS NO EVIDENCE OF DAMAGES TO THE CITY RESULTING
        FROM ANY ALLEGED TORT .................................................................................. 19

        Conclusion and Prayer ............................................................................................. 19

        Certificate of Service ............................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).........................................................7

*Celotex v. Catret*, 477 U.S. 317 (1986) ...................................................................................7

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) .......................................................7

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).............7

*SEC v. Recile*, 10 F.3d 1093 (5th Cir. 1993) ..........................................................................8

*TIG Insurance Co. v. Sedgwick James of Washington*, 276 F.3d 754 (5th Cir.
1993)...............................................................................................................................8

## STATE CASES

*City of Arlington v. Lillard*, 294 S.W. 829 (1927)................................................12, 13, 14

*City of Brownwood v. Brown Telegraph & Telegraph Co.*, 157 S.W. 1163
(1913)......................................................................................................................12, 14

*City of Mission v. Popplewell*, 294 S.W.2d 712 (1946) ......................................................18

*City of Weslaco v. General Telephone Co. of the Southwest*, 359 S.W.2d 260
(1961)......................................................................................................................13, 15

*City of West Lake Hills v. Westwood Legal Defense Fund*, 598 S.W.2d 681
(1980)...........................................................................................................................13

*City of Wichita Falls v. Kemp Hotel Operating Co.*, 162 S.W.2d 150 (1942)..................15

*County of Harris v. Tennessee Product Pipe Line Co.*, 332 S.W.2d 777 (1960)..............14

*Fleming v. Houston Lighting & Power Co.*, 138 S.W.2d 520 (Tex. 1940),
*rehearing overruled*, 143 S.W.2d 923 (Tex. 1940), *cert. denied*, 313 U.S. 560
(1941)............................................................................................11, 12, 14, 15, 17

*Gulf States Utilities Co. v. State*, 46 S.W.2d 1018 (1932).................................................16

*Hammond v. City of Dallas*, 712 S.W.2d 496 (1986)........................................................13

*Moore v. Logan*, 10 S.W.2d 428 (1928)..............................................................................15

## TABLE OF AUTHORITIES
(continued)

*Utilities Natural Gas Company v. State of Texas*, 128 S.W.2d 1153 (1939) .................8, 9

*West v. City of Waco*, 294 S.W.2d 832 (1927) ....................................................................18

### FEDERAL RULES

Fed. R. Civ. P. 56(c) ...........................................................................................................7

Fed. R. Civ. P. 56(e) ...........................................................................................................7

### STATE STATUTES

Tex. Rev. Civ. Stat. art. 7060, *repealed* by Acts 1959, 56th Leg., 3d C.S.,
   ch 1, § 7 .........................................................................................................................9

Tex. Rev. Civ. Stat. art. 1175, § 1 ........................................................................14, 15, 16

Texas Util. Code § 181.005 ........................................................................................12, 18

Texas Util. Code § 181.022 ........................................................................................12, 18

Texas Tax Code § 182.025 ....................................................................................14, 16, 17

### OTHER

Op. Tex. Att'y Gen. No. V-1084 (1950) ..............................................................................9

Op. Tex. Att'y Gen. No. V-994 (1950) ................................................................................9

12 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 34.08 (3d ed.
   1988) ............................................................................................................................15

BLACK'S LAW DICTIONARY 329 (6th ed. 1991) .................................................................10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CITY OF SAN BENITO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| V. | § | C. A. NO. B03-080 |
| | § | |
| KINDER MORGAN TEJAS PIPELINE, L.P., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT KINDER MORGAN'S MOTION FOR SUMMARY JUDGMENT

Defendant Kinder Morgan Tejas Pipeline, L.P. ("Kinder Morgan") moves for summary judgment on the grounds set out below.

### Introduction And Summary

The City of San Benito ("City") is the only plaintiff in this case. The only defendant is Kinder Morgan.[1]  The City's current pleading is Plaintiff's Eighth Amended Petition, Petition For Declaratory Judgment, Request For Injunctive Relief And Request For Jury Trial ("Petition"), which was filed on or about June 29, 2004. Plaintiff alleges that defendants[2] have used streets in the City to engage in a wide variety of activities, which can be summarized as

---

[1]  By order signed April 12, 2005, Kinder Morgan Tejas Pipeline, L.P. was substituted as defendant in place of Tejas Gas Pipeline Company; Tejas Gas Pipeline, L.L.C.; Tejas Gas Pipeline, L.P.; and Tejas Gas Marketing, L.L.C., which were dismissed with prejudice from this suit in the same order.  The relationship between the dismissed defendants identified in the order and the current defendant, Kinder Morgan Tejas Pipeline, L.P., is detailed in Stipulation of Corporate Identity, filed in this cause on April 11, 2005, and contained in the accompanying Appendix To Defendant Kinder Morgan's Motion For Summary Judgment ("Appendix" or "App.") as Exhibit A.

[2]  The Petition names 23 defendants.  All have been dismissed, with the exception of Kinder Morgan.

30936998.4

owning or operating gas pipelines and transporting and selling gas. *See* Petition at ¶¶ 3.2 & 3.5.

Plaintiff contends that the City is entitled to collect street rentals from defendants under the

City's Ordinance No. 478 ("Street Rental Ordinance" or "Ordinance") and that defendants'

activities tortiously interfere with "other business activities of the City" and with "the City's

ability to rent that space [being used by defendants] to others." Petition at ¶ 3.7. Plaintiff lists

and purports to allege the following causes of action: Violation of City Charter and/or City

Statutes, Removal of Purpresture, Unjust Enrichment/Quantum Meruit, Trespass, Wrongful

Appropriation and/or Pernance of Profits, Tortious Interference, and Negligence/Negligence Per

Se. *See id.* at ¶¶ 4.1-4.20. As remedies, the City sues for damages, including exemplary

damages, declaratory relief, an order for an accounting, injunctive relief relating to preservation

of records, and attorney fees. *See id* at 13.

Since approximately 1986, Kinder Morgan has owned and operated an intrastate gas

pipeline system, a segment of which serves the La Palma electric generating plant in the City of

San Benito. The pipeline system extends across a considerable portion of the State of Texas

from as far Southwest as Webb County to as far North as Morris County. A portion of this

pipeline runs through the City of San Benito, and some portions of the line lie under streets in the

City. Kinder Morgan has made sales of natural gas from this pipeline in the City only at a single

location, at the La Palma plant. Kinder Morgan has never operated the pipeline as a local

distribution company in the City and has never made sales from the pipeline to any customer in

the City other than the La Palma plant owner or a party supplying gas to the plant owner.

The Street Rental Ordinance upon which the City sues applies by its terms only to a

person or corporation which uses City streets for the sale and "distribution" of natural gas.

Kinder Morgan is not liable to the City for the following reasons: (1) The Street Rental Ordinance does not apply to Kinder Morgan or its pipeline in the City of San Benito, because Kinder Morgan has not engaged and does not engage in "distribution" of natural gas. (2) Under Texas law the City is precluded from charging street rental for an interurban pipeline such as Kinder Morgan's. (3) There is no evidence that Kinder Morgan has engaged in distribution of natural gas in the City of San Benito. (4) There is no evidence of any tortious conduct on the part of Kinder Morgan, particularly since the State of Texas, which owns the streets in the City, has by statute authorized the location and operation of gas pipelines under streets and roads. (5) There is no evidence of damages to the City from any alleged tort.

## Statement Of The Nature And Stage Of The Proceedings

This suit grew out of a long-running state court action which was originally filed December 31, 1996. After a series of settlements, amendments to pleadings, and severances,[3] plaintiff City of San Benito filed Plaintiff's Seventh Amended Petition, Petition For Declaratory Judgment, Request For Injunctive Relief And Request For Jury Trial on or about March 14, 2003 against 65 defendants, but no defendants were served. Some defendants, including Kinder Morgan, removed the case to this Court and answered the suit. At a scheduling conference on October 27, 2003, the Court directed the parties to proceed according to a phased discovery plan. After plaintiff's failure to comply with the Court's directives concerning discovery, this suit was dismissed, either voluntarily by plaintiff or upon a defendant's motion, as to all defendants except Kinder Morgan. Kinder Morgan is the sole remaining defendant.

---

[3] The procedural history is set out in greater detail in the Notice of Removal filed in this case on April 30, 2003.

Plaintiff sues Kinder Morgan for rental charges under City of San Benito Ordinance No. 478. This Ordinance was adopted by the City in June 1941, after the Texas Supreme Court's 1940 decision in the *Fleming* case. The Ordinance imposes a rental charge on persons or companies which use City streets for "sale and distribution of natural gas to consumers." Street Rental Ordinance, section II (App. Exhibit C). The charge, if applicable, is 2% of gross receipts from sales of natural gas to consumers within the City. *Id.*

Since approximately 1986, Kinder Morgan, including predecessor entities, has owned a pipeline which serves the La Palma electric generating station in the City, but Kinder Morgan has never used this pipeline for "distribution" within the City. Accordingly, Kinder Morgan contends that the Street Rental Ordinance does not apply to its pipeline in the City. Additionally, if the Street Rental Ordinance did apply, it would be void and unenforceable under Texas law because a City is not permitted to charge street rental to a state-wide or "interurban" business, as distinguished from a local public utility.

Plaintiff has also asserted various purported tort claims against the defendants, including trespass and tortious interference. Defendant contends that there is no evidence of any tort on the part of Kinder Morgan, particularly since the State of Texas, as ultimate owner of the streets in the City of San Benito, has authorized companies by statute to own and operate natural gas pipelines under streets and roads. Nor is there any evidence of damages to the City resulting from a tort.

The City and Kinder Morgan have exchanged written discovery. Under the Scheduling Order, signed by the Court July 15, 2005 is the last day for filing a dispositive motion. Discovery must be completed by September 1, 2005, and trial is set for November 3, 2005.

### Statement of the Issues To Be Ruled Upon By The Court

This motion presents the following issues:

1. Does the Street Rental Ordinance apply to the pipeline owned and operated by Kinder Morgan in the City of San Benito, when the pipeline has never been used for "distribution."

2. Does the City of San Benito lack authority under Texas law to impose a street rental charge upon an "interurban" business, such as Kinder Morgan's pipeline?

3. Is there "no evidence" that Kinder Morgan has engaged in "distribution" of natural gas within the City of San Benito?

4. Is there "no evidence" of any trespass, tortious interference, or other tort on the part of Kinder Morgan?

5. Is there "no evidence" of any tort damages to the City?

### Facts

Kinder Morgan relies upon the following summary judgment evidence, which is contained in the accompanying Appendix:

| | |
|---|---|
| **Exhibit A** | Stipulation of Corporate Identity |
| **Exhibit B** | Affidavit of Stewart Lee Baskin ("Baskin Affidavit") |
| **Exhibit C** | City of San Benito Ordinance No. 478 ("Street Rental Ordinance" or "Ordinance") [4] |

---

[4] Kinder Morgan asks the Court to take judicial notice of the Street Rental Ordinance.

The summary judgment evidence establishes these facts without dispute:

1.      Kinder Morgan owns and operates an intrastate gas pipeline system which extends across a considerable portion of the State of Texas from as far Southwest as Webb County to as far North as Morris County. Baskin Affidavit at ¶ 7 (App. Exhibit B).

2.      The pipeline also runs through other Texas counties and municipalities, including Hidalgo, Starr, Zapata, Webb, Jim Hogg, Brooks, Duval, Jim Wells, Kleberg, Nueces, Live Oak, San Patricio, Refugio, Calhoun, Jackson, Matagorda, Wharton, Brazoria, Fort Bend, Harris, Galveston, Liberty, Chambers, Jefferson, Orange, Montgomery, Grimes, Walker, Houston, Leon, Anderson, Freestone, Cherokee, Nacogdoches, Rusk, Panola, Gregg, Upshur, and Harrison counties. *See* Exhibit 2 to Baskin Affidavit (App. Exhibit B).

3.      A portion of this pipeline, which was constructed in approximately 1986, lies within the city limits of the City of San Benito, and some portions of it cross under streets in the City of San Benito. Baskin Affidavit at ¶ 6 (App. Exhibit B).

4.      Kinder Morgan has only sold natural gas within the City of San Benito at a single location, the La Palma electric generating plant. The purchaser at all times has been either the owner of the plant (Central Power & Light Company ["CP&L"] or starting in 2004, Sempra Energy Resources ["Sempra"]) or a party supplying gas to the plant owner. *Id.* at ¶¶ 8-9.

5.      Kinder Morgan is not operating and has never operated its pipeline to distribute natural gas to multiple consumers in the City of San Benito. *Id.* at ¶ 10.

6.      The Street Rental Ordinance upon which the City's suit is based, if applicable and valid, would charge a "rental equal to two percent (2%) of the gross receipts" from sale of natural gas within the City. Street Rental Ordinance, section II (App. Exhibit C). The ordinance

applies, however, only to persons operating pipelines under City streets for "sale and distribution." *Id.*, sections I and II (emphasis added).

### Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex v. Catret*, 477 U.S. 317, 323 (1986). The non-movant cannot escape summary judgment by making conclusory allegations, unsubstantiated assertions, or by a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "The party moving for summary judgment 'must demonstrate the absence of a genuine issue of a material fact,' but need not negate the elements of the non-movant's case." *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 325). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To establish genuineness, the opponent of a summary judgment must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *See* FED R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 587. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a

genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### Argument and Authorities

I.    **THE STREET RENTAL ORDINANCE IS INAPPLICABLE BY ITS TERMS TO KINDER MORGAN BECAUSE KINDER MORGAN HAS NOT ENGAGED IN DISTRIBUTION OF NATURAL GAS IN SAN BENITO.**

The Ordinance only applies to persons engaged in "distribution" of natural gas within the City of San Benito.  Street Rental Ordinance, sections I and II (Exhibit C).  Since Kinder Morgan has not "distributed" gas within the City of San Benito, the ordinance does not apply.

### A.    The Term "Distribution" Does Not Include the Sale of Gas to a Single Customer.

The Texas Supreme Court has held that "distribution" in the context of gas pipelines means the transfer of possession of gas to <u>various</u> consumer individuals or concerns in the city.  Therefore, the sale of gas to a single consumer in the City of San Benito would not qualify as "distribution."

In *Utilities Natural Gas Company v. State of Texas*, 128 S.W.2d 1153, 1153 (Tex. 1939), the State of Texas sued the Utilities Natural Gas Company to recover an occupation tax.  Utilities Natural Gas Company owned and operated a natural gas producing, gathering, and transmission system in Refugio and Victoria Counties.  *See id.*  Its principal customer was the Central Power & Light Company ("CP&L").  *See id.* at 1153-54.  It delivered gas to CP&L through a gas pipeline it owned which extended from a point outside the city limits of Victoria directly into the CP&L plant in Victoria.  *See id.* at 1154.  The occupation tax statute at issue, which closely resembles the Ordinance at issue in this lawsuit, provided:

> Each individual, company, corporation or association, owning, operating or managing or controlling any gas, electric light, electric power or water works, or water and light plant, located within any incorporated town or city in this State, and **used for local sale and distribution** in said town or city, and charging for such gas, electric lights, electric power or water, shall make quarterly . . . a report to the Comptroller . . . showing the gross amount received from such business . . . . Said individual, company, corporation or association . . . shall pay to the Treasurer of this State an occupation tax. . . .

TEX. REV. CIV. STAT. art. 7060, *repealed* by Acts 1959, 56th Leg., 3d C.S., ch. 1, § 7 (emphasis added).

The court held the defendant company was not subject to the statute because the pipeline was not used for the sale and distribution of gas in the City of Victoria. *See Utilities Natural Gas*, 128 S.W.2d at 1155. The court reasoned:

> But considered in the light of the provisions of the statute, as a whole, we have no doubt that the simple fact that a delivery of gas is made in the city, by means of said pipe line, to a single customer, and to nobody else, was not intended by the legislature to be comprehended by the term "distribution" as used. This term as used does not mean the transfer of the possession of gas, by means of the pipe line, to a single purchaser where such purchaser is the only customer to whom the gas company sells gas in the city. It means the transfer of possession of gas to various individuals or concerns in the city. Any other construction of the term would, in our opinion, involve a departure from the legislative intent.

*Id.* Because the company had not distributed gas within the City of Victoria, it was not subject to the occupational tax statute. *Id. See also* Op. Tex. Att'y Gen. No. V-1084 (1950) (concluding that distribution does not include the sale of gas to only one industrial customer within the city and that sales to a distributor would not count as sales to an industrial customer) (App. Exhibit D); Op. Tex. Att'y Gen. No. V-994 (1950) (concluding that distribution requires the sale of gas to more than one customer or purchaser within a city) (App. Exhibit E).

The dictionaries support this holding, which accords with common usage. The Merriam-Webster On-Line Dictionary defines "distribution" as "the act or process of distributing." The Merriam-Webster On-Line Dictionary *available at* http://63.240.197.88/cgi-

30936998.4                                    -9-

bin/dictionary?book=Dictionary&va=distribution. "Distributing" is defined as "to divide among several or many." *Id.* Additionally, Black's Law Dictionary defines "distribution" as "[t]he giving out or division among a number, sharing or parceling out, allotting, dispensing, apportioning." BLACK'S LAW DICTIONARY 329 (6th ed. 1991). Consistent with these definitions, the Street Rental Ordinance itself (section II) speaks of distribution to "consumers," using the plural. Plainly, sale to a single consumer is not "distribution."

A company that only sells natural gas to one customer within the City, whether the plant owner or a reseller which supplies the plant, is not "distributing" gas and is not subject to the Street Rental Ordinance.

### B.    Kinder Morgan Has Sold Gas to Only One Consumer.

The affidavit of Mr. Baskin establishes that Kinder Morgan has made gas sales to only one consumer in the City of San Benito. Since its construction in approximately 1986, the pipeline in question has served only one consumer of gas in the City—the La Palma plant. Baskin Affidavit at ¶¶ 6, 8-9. The owner was originally CP&L, and in 2004 the plant was sold to Sempra. *Id.* at ¶ 9. Over the almost twenty years since construction of the pipeline, Kinder Morgan has sold only to the plant owner or a party supplying gas to the plant owner.[5] *Id.* Therefore, Kinder Morgan has not "distributed" gas within the City of San Benito. Since the ordinance does not apply to Kinder Morgan under the undisputed facts, Kinder Morgan is

---

[5] Kinder Morgan's sales to a reseller are excluded from the scope of the Street Rental Ordinance for the additional reason that a reseller is not a "consumer," and the Street Rental Ordinance imposes charges only for sale and distribution to "consumers."

30936998.4                                    -10-

entitled to summary judgment as a matter of law on all claims based on the Street Rental Ordinance.

## II. UNDER TEXAS LAW, THE CITY LACKS POWER TO CHARGE STREET RENTAL FOR KINDER MORGAN'S PIPELINE BECAUSE THE PIPELINE IS AN INTERURBAN BUSINESS.

### A. The City May Not Charge Street Rental To An Interurban Business.

The leading case concerning the ability of municipalities in Texas to charge street rental—and the limit of that ability—is *Fleming v. Houston Lighting & Power Co.*, 138 S.W.2d 520, 522 (Tex. 1940), *rehearing overruled*, 143 S.W.2d 923 (Tex. 1940), *cert. denied*, 313 U.S. 560 (1941). In *Fleming*, the City of West University Place adopted an ordinance to charge a street rental fee to Houston Lighting and Power Company ("HL&P"), the local electric utility. *See Fleming*, 138 S.W.2d at 520. "The ordinance required all telegraph, telephone, electric and gas companies using the streets or other public places within the corporate limits of the City to pay, for the privilege of such occupancy, a rental equal to 4 per cent. of the gross receipts from business conducted in the City." *Id.* at 520-21. HL&P challenged the street rental charge on the basis that state law gave it the right to use streets. *See id.* at 521. Specifically, article 1436, R.S. 1925 provided, "Such corporation [meaning electric corporation] . . . shall have the right to erect its lines over and across . . . any street or alley of any incorporated city or town in this State with the consent and under the direction of the governing body of such city or town." The court reviewed Texas authorities extensively and held that cities may charge street rental only for businesses which are exclusively local. *See id.* at 521-22. The court made clear that a city may not charge street rent for an "interurban" business noting that in each case reviewed, the issue turned on "whether the business . . . [is] interurban or intraurban." *Id.* at 522.

The state legislature has given the right to gas pipeline companies to use streets. *See* Texas Util. Code § 181.005 ("A gas corporation has the right to lay and maintain lines over and across a public road, a railroad, railroad right-of-way, an interurban railroad, a street railroad, a canal or stream, or a municipal street or alley."); Texas Util. Code § 181.022 ("A gas utility has the right to lay and maintain a gas facility through, under, along, across, or over a public highway, a public road, a public street or alley, or public water."). These statutes are substantially identical to the statute relied upon by HL&P in *Fleming*. Thus, *Fleming* controls the issue in this case. Because Kinder Morgan is not exclusively a local business in San Benito and is, on the contrary, an interurban business, San Benito is precluded from charging a street rental fee to Kinder Morgan.

An "interurban" business has an "absolute" right to "pass through a city or town, over and upon its streets," and a city has "no authority to deny that right." *City of Brownwood v. Brown Tel. & Tel. Co.*, 157 S.W. 1163, 1165 (Tex. 1913). In other words, a city has no authority to require a business to accept its ordinances as a "condition precedent" to entering the city. *Id.*

In *City of Arlington v. Lillard*, 294 S.W. 829, 830 (Tex. 1927), the Texas Supreme Court described this interurban limitation as follows:

> The limitation of power in mind and adhered to here is that the jurisdiction and power exercised by a municipal corporation is and must be confined to the territory of its situs (except where authorized for purely local purposes) to its inhabitants, to its corporate entity, "and cannot be divorced therefrom, either in fact, thought or law."
>
> . . . .
>
> And wherever the municipality shall attempt to exercise powers not within the proper province of local self-government, whether the right to do so be claimed under express legislative grant, or by implication from the charter, the act must be considered as altogether ultra vires, and therefore void.

(quoting JUDGE COOLEY, COOLEY'S CONSTITUTIONAL LIMITATIONS (7th ed.) at 309). The *Lillard* court concluded that a city cannot deny a state-wide business the use of streets within city limits, so as to prevent the business from passing through the city. *See id.* at 830. Such a denial is an "exercise of a power of the general government, and one in its nature which cannot be delegated to cities." *Id.* The *Lillard* court further noted that any fair, reasonable doubt as to the existence and possession of the power of a municipality will be resolved against the municipality, "and the power denied to it." *Id.*; *see also Hammond v. City of Dallas*, 712 S.W.2d 496, 498 (Tex. 1986) (the grant of power to municipal corporations will be strictly construed; the power should not be enlarged by liberal construction; and any conflicts should be resolved against the municipal corporation); *City of West Lake Hills v. Westwood Legal Defense Fund*, 598 S.W.2d 681, 683 (Tex. Civ. App.—Waco 1980, no writ) (stating that "any fair, reasonable, or substantial doubt as to the exercise of a power [of a municipality] will be resolved against the municipality").

The San Antonio Court of Appeals applied the interurban limitation described above in *City of Weslaco v. General Telephone Co. of the Southwest*, 359 S.W.2d 260 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.). In that case, General Telephone sought to prevent the City of Weslaco from enforcing the terms of a rate regulatory ordinance. *See id.* at 261. Specifically, General Telephone alleged that the City had no power to regulate "intrastate" rates.

Before reaching its decision, the *Weslaco* court first noted that while <u>local service</u> may be authorized by a franchise, <u>intrastate service</u> may be furnished without the grant of a franchise, "as a matter of right." *Id.* at 262-63. The *Weslaco* court concluded that the City had no regulatory powers over intrastate long distance telephone service, "[e]xcept for such regulation as will avoid inconveniences to a city," and that the trial court properly enjoined the city from enforcing the provisions of the rate regulatory ordinance. *Id.* at 263.

Similarly, in *County of Harris v. Tennessee Prod. Pipe Line Co.*, 332 S.W.2d 777, 778 (Tex. Civ. App.—Houston 1960, no writ), Harris County appealed a trial court judgment perpetually enjoining it from interfering with an intercounty pipeline company's laying of pipelines across and under county roads. The County in *Tennessee Prod. Pipe Line* asserted that the court erred in its decree for the reason that the Texas legislature has delegated to Harris County the power and duty to build, repair, and maintain county roads and therefore its official orders with respect to crossings are within its jurisdiction. *See id.* at 779. The pipeline contended that it had the statutory right to lay its pipeline across and under any public road or highway in the state without obtaining a permit or license from the County. *See id.* After reviewing the *City of Brownwood* and *Lillard* cases, discussed above, the *County of Harris* court agreed with the pipeline company, holding that a county had no power to deny a pipeline company the right to lay its intercounty pipelines under and across county roads without first obtaining a license or permit to do so. *See id.* at 781.

As a gas pipeline company, Kinder Morgan enjoys the same statutory rights, and under *Fleming* the City is precluded from charging a street rent to an interurban gas pipeline.[6]

---

[6] The Ordinance, if applicable to Kinder Morgan, also would be invalid and unenforceable under federal law, for a different reason. Under the Commerce Clause of the U. S. Constitution, a state (or city) may not change rental for a pipeline's use of land based on a "volumetric" charge. *Western Oil & Gas Ass'n v. Cory,* 726 F.2d 1340, 1345 (9th Cir. 1984)(holding rental charges for pipelines based on throughput invalid because "volumetric rates are a disguised revenue raising measure" not reflecting the value of the land and "place an undue burden on interstate commerce and are violative of the Commerce Clause"), *aff'd per curiam by an equally divided Court,* 471 U. S. 81 (1985); *see also Shell Oil Co. v. City of Santa Monica,* 830 F. 2d 1052, 1059 (9th Cir. 1987), *cert. denied,* 487 U.S. 1235 (1988).

**B.    Because Kinder Morgan Does Not Operate As A Public Utility In San Benito, Statutes Authorizing Street Rental Charges Do Not Apply To Kinder Morgan.**

There are two statutes, article 1175 of the Texas Revised Civil Statutes and section 182.025 of the Texas Tax Code 182.025, on which plaintiff may attempt to rely as authorization for a street rental charge. Consistent with the *Fleming* case, each statute authorizes a charge <u>only</u> to a local public utility, but not to a state-wide business.

Plaintiff alleges, and Kinder Morgan agrees, that the City of San Benito is "a Texas municipal corporation, chartered as a home-rule city." Petition at ¶ 1.1. Under article 1175 of the Texas Revised Civil Statutes entitled "Enumerated Powers," home-rule cities may charge "compensation" for use of streets by public utilities:

> A home-rule municipality has the following powers:
>
> 1. To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, **gas company, or any other character of public utility** without first obtaining the consent of the governing authorities expressed by ordinance and upon paying such compensation as may be prescribed and upon such condition as may be provided by any such ordinance.

TEX. REV. CIV. STAT. art. 1175, § 1 (Vernon 1999) (emphases added); *see also City of Weslaco v. General Tel. Co. of the Southwest*, 359 S.W.2d 260, 263-64 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.) (concluding that the statute only applies to public utilities).

The accepted meaning of public utility is explained as follows:

> [I]n order to constitute a public utility, the business or enterprise must be impressed with the public interest, and those engaged in that business must hold themselves out as serving or ready to serve all members of the public to the extent of their capacity, and the nature of the service must be such that all members of the public have an enforceable right to demand it.

12 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 34.08, at p.29 (3d ed. 1988) (footnote omitted) (copy attached as Exhibit F). A public utility has the duty to treat all members

30936998.4                                              -15-

of the public alike and to serve all members of the public, each of whom has an enforceable right to demand the service of the public utility. *See Moore v. Logan*, 10 S.W.2d 428, 434 (Tex. Civ. App.—Beaumont 1928, writ dism'd). Further, a public utility is characterized by the devotion of private property to public service. *See City of Wichita Falls v. Kemp Hotel Operating Co.*, 162 S.W.2d 150, 152-53 (Tex. Civ. App.—Fort Worth 1942) (defining public utility as "a business organization which regularly supplies the public with some commodity or service such as gas, electric, etc. . . . [and] one of the distinguishing characteristics of a public utility is the devotion of private property by the owner to a service useful to the public and which the public has a right to demand so long as it shall be continued, with reasonable efficiency, under proper charges"), *aff'd*, 170 S.W.2d 217 (Tex. 1943); *Gulf States Utils. Co. v. State*, 46 S.W.2d 1018, 1021 (Tex. Civ. App.—Austin 1932, writ ref'd) ("[T]he distinguishing characteristic of a public utility is the devotion of private property by the owner or person in control thereof to such a use that the public generally, or a part of the public, which has been served and has accepted service, has the right to demand that the use or service, so long as it is continued, shall be conducted with reasonable efficiency and under proper charges.").

Kinder Morgan satisfies none of the foregoing requirements of a public utility. Kinder Morgan does not engage in direct deliveries or sales of natural gas to the public generally commercial users and is not required to do so. Baskin Aff. at ¶ 10. All gas delivered by Kinder Morgan within the City of San Benito was sold and delivered on a privately negotiated basis. *Id.* Most importantly, Kinder Morgan does not hold itself out as willing or able to serve the general public. *Id.* Thus, Kinder Morgan is not a public utility and art. 1175 does not apply to Kinder Morgan.

Likewise, Section 182.025 of the Texas Tax Code authorizes charges for street use only to a public utility:

> An incorporated city or town may make a reasonable lawful charge for the use of a city street, alley, or public way **by a public utility** in the course of its business.

TEXAS TAX CODE § 182.025 (Vernon 2002). (emphasis added).

The same statute defines "public utility" as follows:

(A)   a person who owns or operates a gas or water works or water plant used for local sale and **distribution** located within an incorporated city or town in this state; or

(B)   an electric utility or transmission and distribution utility providing distribution service within an incorporated city or town in this state.

*Id.* (emphasis added). Under the undisputed facts, Kinder Morgan is not a public utility in San Benito, nor does it engage in distribution in San Benito. Accordingly, section 182.025 of the Texas Tax Code is also inapplicable.

Kinder Morgan's pipeline in question is a transmission line that serves a single electric plant. It is not a local distribution line that serves hundreds or thousands of consumers. Under the *Fleming* case, an interurban transmission line, such as the Kinder Morgan line in question, may not be subjected to a street rental charge by the City.

## III.   THERE IS NO EVIDENCE THAT KINDER MORGAN HAS DISTRIBUTED NATURAL GAS IN THE CITY OF SAN BENITO.

Plaintiff has failed to produce any evidence that Kinder Morgan has ever distributed natural gas in the City of San Benito. Therefore, Kinder Morgan is entitled to summary judgment as a matter of law on all claims based on the Street Rental Ordinance.

## IV.   THERE IS NO EVIDENCE OF TORTIOUS INTERFERENCE WITH CITY BUSINESS OR OTHER TORTIOUS CONDUCT.

Plaintiff has alleged a claim of tortious interference against Kinder Morgan based on allegations that Kinder Morgan's activities tortiously interfered with "other business activities of the City" and with "the City's ability to rent that space [being used by defendants] to others" Petition at ¶ 3.7. There is no evidence, however, that Kinder Morgan has tortiously interfered with the City's other business activities or with the City's ability to rent the space being used by Kinder Morgan to others. Likewise, there is no evidence of any other tortious conduct by Kinder Morgan. All streets and roads in the State of Texas, including city streets, belong to the state and not the local authority:

> The highways of the state, including streets in cities, belong to the state, and the state has full control and authority over them. They "are the property of and for the use of the state, which, through its Legislature, has absolute control over same, which control it may or may not, from time to time, delegate to the local authorities."

*West v. City of Waco*, 294 S.W.2d 832, 833-34 (Tex. 1927); *see also City of Mission v. Popplewell*, 294 S.W.2d 712, 714 (Tex. 1946) ("[C]ourts everywhere decline to recognize that the city possesses any property rights in the streets, although they may be a source of profit to the municipality. Their interest is exclusively public juris, and is in any respect wholly unlike property of the private corporation which is held for its own benefit and used for its private gain and advantage . . . It has no proprietary title nor right to exclusive possession.").

As noted previously, the state legislature has given the statutory right to gas pipeline companies to use and go under city streets. *See* TEXAS UTIL. CODE §§ 181.005 & 181.022. Since gas companies, such as Kinder Morgan, have express authorization to place their pipelines under the city streets from the owner of those streets, the State of Texas, placement of the

pipelines under streets does not constitute a trespass or any other wrongful conduct. Accordingly Kinder Morgan is entitled to summary judgment on the tort claims.

## V.    THERE IS NO EVIDENCE OF DAMAGES TO THE CITY RESULTING FROM ANY ALLEGED TORT.

Plaintiff has failed to produce any summary judgment evidence of damages sustained by the City as the result of any alleged tort committed by Kinder Morgan. Therefore, Kinder Morgan is entitled to summary judgment as a matter of law on all tort claims asserted by plaintiff.

### Conclusion and Prayer

The undisputed facts show that Kinder Morgan has not "distributed" gas within the City of San Benito. Therefore, plaintiff's claims based on the Street Rental Ordinance should be dismissed. Additionally these claims fail because under Texas law the City of San Benito lacks power to charge street rental for an interurban pipeline. Kinder Morgan is not a local public utility, which could properly be subjected to street rental charges. The State of Texas, which owns the streets, has by statute authorized the location and operation of gas pipelines under streets and roads, and the fact that Kinder Morgan's line crosses under some City streets therefore is not wrongful. Further, the City of San Benito's tort claims fail because there is no evidence of tortious conduct by Kinder Morgan or of resulting damages to the City.

Kinder Morgan respectfully asks the Court to render summary judgment dismissing plaintiff's suit with prejudice, and for such other and further relief to which it may be justly entitled.

Respectfully submitted,

Osborne J. Dykes, III
State Bar No. 06325500
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:  713-651-5151
Facsimile:  713-651-5246

Attorney-in-Charge for Kinder Morgan Tejas Pipeline, L.P.

**OF COUNSEL:**

FULBRIGHT & JAWORSKI L.L.P.
William D. Wood
State Bar No. 21916500
Jeffrey D. Palmer
State Bar No. 24027585

ROERIG, OLIVEIRA & FISHER, L.L.P.
David G. Oliveira
State Bar No. 15254675
855 West Price Road, Suite 9
Brownsville, Texas 78520
Telephone:  956-542-5666
Facsimile:  956-542-0016

## Certificate of Service

This pleading was served on July 14th, 2005, by First Class U.S. Mail on the following

counsel of record:

    Mr. Adam Poncio
    Cerda & Poncio
    924 McCullough
    San Antonio, Texas  78125

                                      Osborne J. Dykes, III