Tex.)   CITY OF BROWNWOOD v. BROWN TELEGRAPH & TELEPHONE CO.   1163

that case, and is decisive of the question certified. The judgment, in our opinion, should be construed to mean that the plaintiffs recover of the defendants the sum of $14,000 and costs, and that they are to take nothing more either in the property claimed or in money. We answer the question in the affirmative."

The principle which controlled the last-mentioned two cases is, we think, applicable in great measure to this case. The rule is thus stated in Freeman on Judgments, § 279, and note 1: "There is no doubt that if a set-off is presented by defendant in his pleadings, and attempted to be supported by evidence to the jury, it will, whether allowed or disallowed, become res judicata. It is settled by the judgment as conclusively, when it does not appear to have been allowed, as though there were an express finding against it." "Wright v. Salisbury, 46 Mo. 26; Nave v. Wilson, 33 Ind. 294; Howe v. Lewis, 121 Ind. 110 [22 N. E. 978]; Stevens v. Miller, 13 Gray [Mass.] 283; Worrel v. Smith, 6 Colo. 141; Ruegger v. Indianapolis, etc., R. R. Co., 103 Ill. 449. Nor is it material that the evidence to support a set-off was excluded because insufficient. Green v. Sanborn, 150 Mass. 454 [23 N. E. 224]."

We feel constrained to hold that the judgment of the trial court, although irregular and imperfect in form, is sufficient to support the appeal. However, we feel impelled to say, also, that we think that, as a matter of practice, and to avoid confusion, every final judgment should plainly, explicitly, and specifically dispose of each and every party to the cause, and of each and every issue therein presented by the pleadings.

The judgment of the Court of Civil Appeals is reversed, and the cause is remanded to that court.

---

(106 Tex. 114)

CITY OF BROWNWOOD et al. v. BROWN TELEGRAPH & TELEPHONE CO.

(Supreme Court of Texas. June 18, 1913.)

1. TELEGRAPHS AND TELEPHONES (§ 10*)—RIGHT TO ROADS AND STREETS.

Rev. Civ. St. 1911, art. 1231, authorizing corporations created for constructing magnetic telegraph lines to set their poles and wires along roads and streets, includes long-distance telephone lines.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

2. TELEGRAPHS AND TELEPHONES (§ 10*)—CONTROL OF STREETS—RIGHT OF CITY.

Under Rev. Civ. St. 1911, arts. 1231, 1235, providing that telegraph corporations may set their poles and wires along and across any of the public roads and streets of the state in such a manner as not to incommode the public use thereof, and that the corporate authorities of any city, town, or village through which the line of any telegraph corporation is to pass may, by ordinance, specify where the poles shall be located, and after the erection may direct alterations, the right of a long-distance telephone company to pass through a city or town over and upon its streets is absolute, although the city may enforce reasonable regulations.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

3. TELEGRAPHS AND TELEPHONES (§ 10*)—USE OF STREET—APPLICATION FOR PERMIT—CERTIFIED CHECK.

A city cannot refuse a long-distance telephone company a permit to erect poles in the streets on the ground that it deposited a certified check instead of money to cover any damages, and accepted only the civil ordinances of the town, for the check was equal to cash, and the acceptance of civil ordinances embraced all that were regulatory.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

4. TELEGRAPHS AND TELEPHONES (§ 10*)—USE OF STREET—ADOPTION OF ORDINANCE.

A municipal corporation cannot require a long-distance telephone company to adopt its ordinances as a condition precedent to the use of the streets granted by Rev. Civ. St. 1911, art. 1231, for it is the right and duty of the city to enforce its ordinances prescribing reasonable regulations, whether acceptable to the company or not.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

5. TELEGRAPHS AND TELEPHONES (§ 10*)—RIGHTS TO STREET—REGULATION BY CITY—WAIVER.

A city, being without right to exclude a long-distance telephone company from using its streets, but having merely a right to regulate the same, waives the right of regulation by refusing to prescribe the streets to be used and the details of construction, and having threatened to criminally prosecute and punish the employés of the company for using the streets, the company's right will be enforced by injunction.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by the Brown Telegraph & Telephone Company against the City of Brownwood and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (152 S. W. 709), and defendants bring error. Affirmed.

Paul Harrell and Harrison & Waymann, all of Brownwood, and Chilton & Chilton, of Dallas, for plaintiffs in error. I. J. Rice, of Brownwood, and E. B. Anderson, of Goldthwaite, for defendant in error.

BROWN, C. J. The writ of error was granted in this case in order that this court might have the benefit of a discussion of the issues of law which are important. We have heard counsel on each side present ably and elaborately the issues as they respectively believe them to be applicable to the facts.

In his usual careful and thorough manner Judge Rice has stated the case and carefully analyzed the facts. We adopt his statement as follows:

"This suit was brought by appellee to restrain by injunction the officers and agents of

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

EXHIBIT H

appellant from prosecuting, arresting, or in any manner interfering with appellee or its servants in the erection and construction of a telephone line in and upon certain streets of the city of Brownwood, wherein a temporary restraining order was issued as prayed for.

"Prior to the institution of this suit, appellee, who is duly incorporated under the laws of this state for conducting a telegraph and telephone business, filed with the city council of the city of Brownwood, which is a city incorporated under the general laws of this state, its petition, stating that its domicile was at Goldthwaite, Tex., and that it desired to build a telephone line for long-distance service from the city of Temple, along the right of way of the Gulf, Colorado & Santa Fé Railway to Brownwood, and presented therewith for its inspection and approval a map or plat of the route of the proposed telephone line into said city, showing the streets and alleys to be occupied and the location of each pole and fixture to be constructed, representing that, in accordance with said map they would erect 36 poles, for which it tendered a certified check for the sum of $90, payable to the city treasurer of said city, for the purpose of holding the city harmless against any damage that might be done to its sidewalks, streets, or alleys in the erection thereof, to be returned when the city marshal should report that the conditions of the ordinances relating to telephone lines shall have been complied with. Further representing that it desired to erect poles and fixtures for the aforesaid line under the provisions of the ordinances having reference to the construction of telephone lines, the same being articles 108 to 116, inclusive, of the civil ordinances of said city, declaring its acceptance of all the provisions of said ordinances, and agreeing to abide by all ordinances and regulations thereafter to be adopted relating to such lines, and further agreeing to permit the city of Brownwood to occupy and use the top cross-arm of any poles so to be erected by it, for telephone, telegraph, police calls, or fire alarm purposes, free of charge, praying that said city council accept the tender so made, approve the map and plat and the proposed setting and construction of the poles and fixtures, and in the event said plat or route may, for any reason, be objectionable, or any part of the same, then asking the council to point out such objection, to the end that such plat and route along the streets and alleys of the city may be changed to meet such objection.

"Said city had theretofore enacted the following ordinances relating to the construction of telephone lines, designated under the head of 'Criminal Ordinances,' to wit:

"'Art. 108. All telegraph and telephone poles as herein provided shall be of sound timber, not less than five inches in diameter at the upper end, straight, shapely and of uniform size, neatly planed or shaved and thoroughly painted with lead and oil, paint of such coloring as the city council may direct, and shall be supplied with iron steps commencing within twelve feet of the ground and reaching the arms supporting the wires. Said wires shall be run at a height of not less than twenty-four feet from the ground, and the arms' lengths shall be determined by action of the city council. When poles or other fixtures are erected on a street they shall be placed if practicable, on the outer edge of the sidewalk just inside of the curbstone or a line dividing the lots of property owners, but in no case to be placed so as to interfere with, or damage the curbstone, trees or other public or private property.'

"'Art. 110. That any person or corporation desiring to erect or construct said poles or fixtures, shall make a deposit of $2.50 for each and every pole to be erected, and the same shall be held by the city treasurer for the purpose of holding the city harmless against any damage caused to sidewalks, streets and alleys in the erection of poles, and the said deposit shall be returned to the parties making the same when the city marshal shall report that the conditions of this chapter have been complied with, and such persons shall first submit to the city council for its approval a map or plat of the route of the proposed line or lines, showing the streets and alleys to be occupied and location of each pole or fixture to be constructed. Unless the city council approves of the same, such person or corporation or their agents shall have no right to erect such poles, or construct such fixtures. All work pertaining to the erection or construction of such poles on any sidewalk or alley, shall be done under the supervision of the city council, and the pavement shall be restored to its original condition as soon as possible.'

"Article 112 provides that 'all persons, companies or corporations desiring to erect poles and fixtures under the provisions of this ordinance shall first file, in the office of the city secretary a written acceptance of all the provisions of this ordinance; also a written agreement permitting the city of Brownwood to occupy and use the top cross-arms of any pole erected for the use of said city for telegraph, telephone, police calls or fire alarm purposes, free of charge.'

"Article 114 of said ordinances provides that 'every violation of any of the provisions of the articles under the subject of "offenses pertaining to poles and wires" shall constitute a misdemeanor, and the persons or companies or corporations, or any employé, agent, local manager or officer thereof in Brownwood violating any of said provisions shall, upon conviction in the corporation court, be fined in any sum not less than twenty-five dollars nor more than one hundred dollars for each offense.'

Tex.)  CITY OF BROWNWOOD v. BROWN TELEGRAPH & TELEPHONE CO.  1165

"On the 16th of April, 1912, by motion, said petition was referred to the street committee to investigate and make a report at the next regular meeting of said counsel, which on the 7th of May thereafter reported, to the effect that they had investigated the route over which said company proposed to enter said city, and that they found no objection to the use of the streets and alleys for the construction of said line into the city of Brownwood as designated on the map of said route, provided that the construction of the same complied in all respects with the ordinances relative to the construction of such lines in said city, and that the legal rights of all other telephone, telegraph, and electric light companies be respected. Hearing upon this report was postponed until the 21st day of May thereafter, whereupon, after being duly considered, the council refused to concur therein, and denied such permit to the company, ordering that its petition, map, and certified check be returned. At this time appellee had already constructed its line from Goldthwaite to the city of Brownwood, some $700 worth of material, with the view of constructing its line in said town, but was prevented from so doing by threats of prosecution on the part of the officers of said city, in the event it undertook so to do. Thereupon appellee presented its petition to the district judge, setting up these facts, as well as others which may hereafter be noticed, praying for a writ of injunction as heretofore indicated, which was granted and the case set for hearing."

[1] Article 1231, Revised Statutes 1911, reads: "Corporations created for the purpose of contructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such road, streets and waters." In San Antonio & A. P. Ry. Co. v. S. W. Tel. & Tel. Co., 93 Tex. 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. Rep. 884, this court said: "We conclude that, when the Legislature of 1891 enacted the law in its present form, it intended to express that 'telephone' was within the broad meaning of 'telegraph,' and that corporations formed under subdivision 8 of article 641, Revised Statutes, are 'created for the purpose of constructing and maintaining magnetic telegraph lines,' and are authorized by article 699 to condemn right of way for their lines." We could cite many authorities in support of that conclusion but deem it unnecessary, and will proceed upon the assumption that the language of the statute includes long-distance telephones, but we express no opinion as to the rights of local telephone companies or the local business of long-distance companies.

[2] It will be observed that the grant to such corporations by article 1231 is qualified by this important language, "in such manner as not to incommode the public in the use of such road, streets and waters." The effect of the limiting clause is to declare the right of the public to be superior to the rights granted to the corporation. Article 1235, Revised Statutes 1911, reads: "The corporate authorities of any city, town or village through which the line of any telegraph corporation is to pass may, by ordinance or otherwise, specify where the posts, piers or abutments shall be located, the kind of posts that shall be used, the height at which the wires shall be run; and such company shall be governed by the regulations thus prescribed; and, after the erection of said telegraph lines, the corporate authorities of any city, town or village shall have power to direct any alteration in the erection or location of said posts, piers or abutments, and also in the height at which the wires shall run, having first given such company or its agents opportunity to be heard in regard to such alteration." It is apparent that the right of the telephone company to pass through the city or town, over and upon its streets, is absolute, and a city has no authority to deny that right. The interest of the public in convenient service by such means of communication is the basis of the grant, and is superior to any private interest. On the other hand, the interest of the city in the manner in which the corporation exercises its right is the foundation of the authority vested in the city to control the occupancy and use of the streets by such corporations, and a reasonable exercise of the power is equally absolute. The limitation embodied in the grant to the corporation would alone be sufficient to subject it to a reasonable restraint. But the grant to the authorities of the city by article 1235 invests the municipal government with power to enforce any reasonable regulations as to the use of the streets by the city, but such city cannot use its power to regulate in such manner as to deny the corporation the right to pass through the town, and in so doing to use the streets in "such way as not to incommode the public."

[3] It appears that the telephone company complied with the requirements of the city, except that it deposited a certified check instead of money and accepted "civil" ordinances. The check was equal to cash, and the acceptance of civil ordinances embraced all that were regulatory.

[4] But the city had no authority to require the telephone company to accept its ordinances as a condition precedent to entering the city. The right and duty of the city was to enforce such ordinances as prescribed reasonable regulations, whether acceptable to the telephone company or not.

[5] When the city refused to take any action in the matter it abandoned its right to prescribe the streets to be used and the details of construction, and the telephone com-

pany had the right to construct on the streets, as shown upon the plat presented in compliance with the city ordinance. The threat to prosecute and punish the employés of the telephone company was unreasonable, arbitrary, and obstructive to a degree that justified the injunction.

The telephone company will be authorized to construct its line over the streets of the city under and in accordance with the reasonable requirements of the city. The effect of the injunction will not be to take from the city its right of control over its streets, sidewalks, in fact all public places in the city. The telephone company is entitled to all the privileges necessary to its construction and operation as a "distance telephone." But it is not to be inferred from this opinion that this company can, without consent of the city, transact the business of a local company. Our conclusions have been reached by applying to the long-distance telephone the rules of law which would be applicable to the telegraph line under similar conditions, and we expressly reserve from any implication the relative rights of local telephone companies and city governments. Nor do we intend to imply any limitation upon the authority of a city in the regulation of placing of poles, etc., or placing wires underground when necessary to avoid "incommoding" the public. We deem it proper to limit this opinion to the class of cases to which this belongs. The trial court did not err in granting and perpetuating the injunction; it was the only fully adequate remedy, and was fully justified by the arbitrary and unreasonable methods of the city government.

Finding no error in the judgment of the Court of Civil Appeals, it is accordingly affirmed.

---

(106 Tex. 121)

STATE v. TEXAS BREWING CO.

(Supreme Court of Texas.   June 25, 1913.)

1. INTOXICATING LIQUORS (§ 45*)—PENAL STATUTES—STRICT CONSTRUCTION.

Acts 1909, c. 20, § 1 (Rev. Civ. St. 1911, art. 7479), as to taxation of one pursuing the business of selling intoxicants in territory where it is prohibited by local option vote, being highly penal, is to be strictly construed against the state.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 47; Dec. Dig. § 45.*]

2. INTOXICATING LIQUORS (§ 15*)—LOCAL OPTION—EFFECT OF ADOPTION.

The voters of a county having by local option election, as authorized by Const. art. 16, § 20, adopted prohibition, the Legislature cannot authorize sale therein.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 17, 18; Dec. Dig. § 15.*]

3. INTOXICATING LIQUORS (§ 15*)—OCCUPATION TAX—PROHIBITION TERRITORY.

Acts 1909, c. 20, § 1 (Rev. Civ. St. 1911, art. 7479), levying a tax on any one pursuing the business of selling or offering for sale any intoxicating liquors by soliciting or taking orders therefor in any quantities in any county in which the voters thereof have determined that sale of intoxicating liquors shall be prohibited, is a levy of an occupation tax for the illegal business of selling in prohibition territory, and therefore void.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 17, 18; Dec. Dig. § 15.*]

4. INTOXICATING LIQUORS (§ 53*)—OCCUPATION TAX—PLACE OF TAX.

Sales are in T. county so as not to subject one to the occupation tax of pursuing the business of selling intoxicating liquors in C. county, where he sends circulars from T. county to C. county, soliciting orders, and on orders being received delivers the liquor in T. county to the buyer or to a carrier for him; the seller not undertaking to deliver in C. county.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 54; Dec. Dig. § 53.*]

Hawkins, J., dissenting.

Certified Question from Court of Civil Appeals of Second Supreme Judicial District.

Action by the State against the Texas Brewing Company. From a judgment for defendant, plaintiff appealed to the Court of Civil Appeals, which certifies a question to the Supreme Court. Question answered.

P. M. Stine and Leslie Humphrey, both of Henrietta, for the State. R. E. Taylor, of Henrietta, and Capps, Cantey, Hanger & Short and David B. Trammell, all of Ft. Worth, for appellee.

BROWN, C. J. The honorable Court of Civil Appeals of the Second District certifies to this court the following statement and question:

"This suit was instituted in the name of the state of Texas and of Clay county by the county attorney of Clay county against the Texas Brewing Company, which was alleged to be incorporated under the laws of the state of Texas, with its principal office and place of business in Ft. Worth, Tarrant county, Tex., to recover $8,000 for the state and $4,000 for Clay county alleged to be due by the defendant as taxes for 'pursuing the business of selling and offering for sale intoxicating liquors by soliciting and taking orders therefor in said Clay county, Tex.,' for the years 1911 and 1912. It was further alleged that by election duly held the sale of intoxicating liquors in Clay county had been prohibited; all the facts necessary to show the adoption of local option in that county being duly set out and alleged in the petition, with the additional allegation that local option was in full force and effect in that county during the years 1911 and 1912. It was further alleged that the commissioners' court of Clay county had duly levied a tax of $2,000 a year for the years 1911 and 1912 upon 'all firms, persons, associations of persons, and corporations that pursue the business of selling or offering for sale any intoxicating liquors by soliciting orders therefor in said Clay county, Tex.'; the taxes claimed being those provided by chapter 20 at page 53, Acts of Legislature of 1909, article 7479, Revised Statutes 1911. In addition to special pleas,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes