United States District Court
Southern District of Texas
FILED

AUG 0 9 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CITY OF SAN BENITO, | § | |
| Plaintiff, | § | |
| V | § | C. A. NO. B03-080 |
| TEJAS GAS PIPELINE COMPANY, ET AL, | § | |
| Defendants | § | |

### CITY OF SAN BENITO'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the City of San Benito, Plaintiff in the above entitled and numbered cause, and files this response to Defendants' Motion for Summary Judgment, and in support thereof, would show the Court the following:

1. This is a suit involving Defendant's failure to pay for use of City property and/or rights of way. In 1941, the City of San Benito passed ordinance No. 478, which is described in detail and attached hereto as Exhibit "A", which is incorporated herein by reference as if stated in the verbatim. In summary, Ordinance No. 478 states that all persons and corporations using and maintaining pipelines for the sale of natural gas in any of the streets shall report the gross receipts from such sales to the City of San Benito. The Ordinance also states that "every person or corporation using the streets,... within the City of San Benito..., with main and/or auxiliary lines,... for the sale and distribution of natural gas to consumers shall pay 2% of the gross receipts received by such person or corporation from its sale of natural gas for heat, power, and for other purposes..." Defendants in this matter have failed to pay the two percent gross receipts street rental fee to the City of San Benito from their sale of natural gas to the power plant.

2. Initially, this cause of action was brought against multiple Defendants, including: (1)

Defendants TEJAS GAS PIPELINE COMPANY, TEJAS GAS PIPELINE, L.L.C., TEJAS GAS PIPELINE, L.P., TEJAS GAS, L.L.C., TEJAS GAS MARKETING, L.L.C., GULF ENERGY MARKETING COMPANY, GULF ENERGY MARKETING, L.L.C., CORAL ENERGY SERVICES, L.L.C., CORAL ENERGY RESOURCES, L.P., SHELL GAS TRADING COMPANY, and TRANSCO PETRO SOURCE COMPANY (n/k/a TRANSCO P-S CO); and (3)Defendants CONOCO INC., TEXACO NATURAL GAS, INC., TEXACO GAS MARKETING, INC., AMOCO ENERGY TRADING CORP. (n/k/a BP ENERGY CO), BP ENERGY COMPANY,, ANADARKO ENERGY SERVICES CO., NATURAL GAS CLEARINGHOUSE, INC.,, ARCO NATURAL GAS MARKETING, INC. (n/k/a VASTAR GAS MARKETING, INC.), VASTAR GAS MARKETING, INC., TEXACO EXPLORATION AND PRODUCTION, INC.,, CHEVRON U.S.A. INC., TOTAL E&P USA, INC (successor in interest to FINA), and UNION PACIFIC RESOURCES COMPANY (n/k/a ANADARKO E&P CO., LP). Ultimately, Plaintiff dismissed claims against all Defendants except the Tejas Defendants, now known as the Kinder Morgan Defendants.

3. Defendants filed a stipulation with the Court on or about April 8, 2005, Exhibits "B" and "C", stipulating that the Tejas Defendants were merged into Kinder Morgan Tejas Pipeline, L.P., and identifying the Tejas Defendants as what will be referred to as the Kinder Morgan Defendants. Defendants have now filed their motion for summary judgment.

4. **Objections to Summary Judgment Affidavits**: Movants offer an affidavit in support of their summary judgment motion, to which Plaintiff, as Respondent, objects on the following grounds:

   A. The affidavit of Stewart Lee Baskin lacks proper foundation. Mr. Baskin is not identified as officer, employee or authorized representative of Movants. Moreover, Baskin's statements regarding the alleged ownership and corporate history of

Movants constitute unsubstantiated hearsay to which no exception applies. Baskin admits at paragraph one that the affidavit is based on undisclosed witnesses and hearsay. Moreover, his statements regarding the pipeline segment and sales made, including statements regarding Movants' role as a local distribution company are conclusory and constitute unsubstantiated hearsay to which no exception applies. The reliance on hearsay and unidentified witnesses renders the affidavit both equivocal and not based on the personal knowledge of the affiant. As none of the alleged supporting records, information or individuals are identified or attached to the affidavit, the affidavit can not be "easily controverted" and is not competent summary judgment evidence. See Radio Station KSCS v. Jennings, 750 SW2d 760, 762 (Tex. 1988); Republic Nat. Leasing Corp. v. Schindler, 717 SW2d 606, 607 (Tex. 1986).. Plaintiff requests that the Basking affidavit be stricken.

5. **Motion to Strike and for Sanctions:** Movants offer purported summary judgment evidence in the form of the above identified affidavit and base their arguments to the court on the existence of certain alleged evidence which has been expressly made the subject of specific discovery requests by Plaintiff. However, as shown by the discovery responses attached as Appendix "A" (Responses to Request for Production), and Appendix "B" (Responses to Interrogatories). Movants have objected to Plaintiff's requests for the same information, e.g., documents showing the sales of gas within the city, and denied Plaintiff access to the same information they now want the court to accept and rely upon in ruling in Movants' favor; Such tactics constitute an abuse of the discovery process for which sanctions should be assessed in the form of an order striking Defendants' motion for summary judgment. For example, in the request for production, Plaintiff presented the following requests:

1. Produce documents concerning any revenues you received from the sale or transportation of natural gas to any consumer located within the City of San Benito.

2. Produce documents concerning any revenues you received from the sale or

        transportation of natural gas to any other person or entity for which the point of delivery, point of redelivery, or the point of interconnection with any natural gas pipeline owned by someone other than you, was located within the City of San Benito.

4.     Produce any agreements, correspondence or communications between you and CP&L that concern the sale, transportation or purchase of any natural gas consumed at or delivered to the San Benito electric power generating plant.

6.     Produce all reports of natural gas sold to CP&L or to any San Benito based consumer made to the Texas Railroad Commission, the Texas State Comptroller, the Texas Public Utilities Commission, the Federal Energy Regulatory Commission, or any other federal, state, or local governmental agency.

Defendants objected to each of the enumerated requests for production (see responses at Appendix Exhibit "A"). In addition to the objections, Defendants have failed to produce full and complete responsive documents to Plaintiff. Nevertheless, while using discovery as a shield, Defendants are now attempting to use their attachments and representations in the summary judgment as a sword. This should not be allowed.

In addition to the requests for production, Plaintiff propounded interrogatories on Defendants which included the following interrogatories:

INTERROGATORY NO. 2:     State the amount and nature of sale made by Defendant within the City of San Benito since 1941, setting out the amount and nature for each respective year, including the name of the purchaser(s), and the date and amount of natural gas sold.

INTERROGATORY NO. 6:     Plaintiff alleges that "most and/or all of the Defendants sold natural gas at the La Palma Power Plant once owned by Central Power and Light, which is located inside the city limits of San Benito . . . ." Please identify specifically all customers, other than Central Power and Light, to whom Defendant has sold natural gas within the city limits of San Benito. For each, state the time or times of the sales as well as the quantities and amounts paid and/or received.

INTERROGATORY NO. 7: Identify any and all natural gas sales made by Defendant at the La Palma Power Plant or to Central Power and Light since 1941. For each, state the time or times of the sales as well as the quantities and amounts paid and/or received.

INTERROGATORY NO. 8: Identify all gas sales have taken place at farm taps located along the pipelines within a 50 mile radius of the City of San Benito for gas sales at farm taps located along the pipelines? If so, please describe the precise location of each such farm tap at which you contend a sale was made, and for each name the person or entity to whom you contend the sale was made, as well as the time and the volume of the sale.

Again, Defendants objected to the enumerated requests for production (see responses at Appendix Exhibit "B"), and/or indicates that their responses may be incomplete. Defendants equivocally state that the responses only reflect responses as to "which records have been located" or for "which we have been able to locate a record." Plaintiff is entitled to full and complete responses prior to summary judgment and the opportunity to depose those with knowledge. Defendants have failed to produce full and complete responsive documents and/or responses to Plaintiff. Nevertheless, while using discovery as a shield, Defendants are now attempting to use their attachments and representations in the summary judgment as a sword. This should not be allowed. Defendants motion should be stricken until such time has they have fully complied with discovery. Alternatively, Defendants objections should be overruled and Defendants should be ordered to fully comply with discovery and provide depositions of persons with knowledge and then refile their motion for summary judgment.

6. **Arguments and authorities supporting Plaintiff's Response:**

Movants' arguments regarding case law do not support the relief sought herein or apply to facts and circumstances of this case for the following reasons:

**A. The Utilities Natural Gas case**

Defendants have provided citation to and base their arguments almost entirely upon <u>Utilities Natural Gas Co. v. State</u>, 128 S. W. 2d 1153 (Tex. 1939). Defendants' reliance is misplaced, as this case involved a pipeline company's challenge to the State Comptroller's attempt to assess an occupation tax imposed under the pre-1941 version of Art. 7060. The pipeline company in that case owned a natural gas pipeline that delivered gas to the CP&L plant in Victoria. However, as the court noted, although the CP&L plant was within the city limits, "Defendant's pipe line or appurtenances have never so crossed, used or occupied any of such alleys, streets, or other public places, or any other private lands within the City of

Victoria, Texas." Id. at 1154. Here, it is undisputed that Defendants' pipeline does cross over and along city streets and rights of way.

It is clear that the court found the Defendant's pipeline to constitute part of a "gas works," Id. at 1155, a phrase the Texas Supreme Court has since found to be substantially identical to the phrase "gas plant," and to include within its scope the system of pipelines used to deliver gas to in-city customers. Eddins-Wacher Butane Co. v. Calvert, 298 S.W.2d 93, 95 (Tex. 1957). In Utilities Natural Gas, the court's ruling actually turned on the determination that such "gas works" were not used in "distribution" within the City as required under the state tax statute. The court defined distribution as follows:

> It is claimed that the legislature used this term as meaning the same thing as the word "delivery" or as the word "disposal." If such be true then, of course, the sale of gas by the plaintiff in error to the purchaser, the Central Power and Light Company, which was concluded by delivering the gas to said purchaser, in the City of Victoria, by means of the portion of the pipe line in question, included a "distribution" within the meaning of that term as used in the statute. But considered in the light of the provisions of the statute, as a whole, we have no doubt that the simple fact that a delivery of gas is made in the city, by means of said pipe line, to a single customer, and to nobody else, was not intended by the legislature to be comprehended by the term "distribution" as used. This term as used does not mean the transfer of the possession of gas, by means of the pipe line, to a single purchaser where such purchaser is the only customer to whom the gas company sells gas in the city. It means the transfer of possession of gas to various individuals or concerns in the city. Any other construction of the term would, in our opinion, involve a departure from the legislative intent. Since, therefore, the use of "gas-works," in a city or town in this State, for the distribution of gas in said city or town is, by the statute, made an essential characteristic of the business taxed, it follows that the business in which the plaintiff in error is engaged, as disclosed by the undisputed facts, is not subject to the tax which this statute provides.

128 SW2d at 1155.

Here, Defendants' objections and failure to fully comply with discovery have prevented Plaintiff from properly determining whether there is evidence of sales to more than one customer. Nevertheless, the case relied on by defendants only offers a narrow interpretation of the use of "distribution" based on the tax issue and statute at hand. The present case does not necessarily narrow the use of the term and distribution can simply be

interpreted as simply dispensing, storing, selling or shipping. Webster's New World Dictionary of American English, 3rd College Edition (1988). What is clear from the various definitions of distribution is that distribution does not require distribution to more than one party or entity. Defendants did in fact "distribute" gas within the City, bringing them within the auspices of the City's street rental ordinance.

**B. The Fleming case**

In Fleming v. Houston Lighting & Power, 138 S.W. 2d 520, opinion on rehearing, 143 S.W. 2d 943 (Tex. 1940), cert. denied, 313 U.S. 560 (1940), the Texas Supreme Court considered a home rule city's ordinance requiring all telephone, telegraph, electric and gas companies using the streets or public places of the city to pay, for the privilege of occupancy, a rental of 4% of gross receipts from business conducted in the city. The court of appeals had invalidated the ordinance based on the interpretation of Article 1436b as a property right and grant from the State, and ruled that the city, without granting the right or possessing a proprietary interest in it, could not impose a charge in the nature of a rental for the use of such grant and rights. The supreme court reversed and held that cities do have "the right to fix charges in the nature of rentals for the use of their streets and other public places by telephone companies carrying on a local business." 138 SW2d at 522. The supreme court also stated that the "ordinance is not invalid merely because it provides for measuring the amount of the rental charge by a percentage of the gross receipts" of business transacted in the city the material inquiry is the reasonableness of the rental charge and not the method used to measure the charge. Id.

On rehearing the supreme court addressed whether the ordinance was in conflict with Article 7060 (construing the same version of the statute that was before the court in Utilities Natural Gas). Article 7060 imposed state occupation taxes on local gas, electric and water utilities in cities, and prohibited a city, "by virtue of its taxing power, police power or

otherwise" from imposing an "occupation tax or charge of any sort for the privilege of doing business" by any company paying an occupation tax under Article 7060. The Fleming court stated:

> The ordinance did not impose a charge for the privilege of doing business. Evidence was offered upon the hearing that it would be possible for the Company to carry on its business within the City without the necessity of using its streets, alleys or other public ways.
> We sustained the ordinance upon the ground that same imposed a charge in the nature of a rental The authorities recognize a distinction between a rental charge and a tax or charge for the privilege of doing business. It is clearly pointed out in the leading case of City of St. Louis vs. Western Union Telegraph Co., 148 U.S. 92, 13 S.Ct. 485, 37 L.Ed. 380.

143 SW2d at 924.

In the City of St Louis case, the United States Supreme Court considered a city ordinance that required all telegraph and telephone companies to pay, for the privilege of using the streets, alleys and public places of the city, "the sum of five dollars per annum for each pole erected or used by them in the streets, alleys, and public places in said city". Western Union, a telegraph company, challenged the ordinance on the basis, inter alia, that the sum was a privilege or license tax for the privilege of carrying on business in the city, in part in violation of the United States Constitution. The U. S. Supreme Court stated:

> To determine this question whether the charge is a privilege or license tax], we must refer to the language of the ordinance itself, and by that we find that the charge is imposed. for the privilege of using the streets, alleys, and public places, and is graduated by the amount of such use. Clearly, this is no privilege or license tax. The amount to he paid is not graduated by the amount of the business, nor is it a sum fixed for the privilege of doing business. It is more in the nature of a charge for the use of property belonging to the city, that which may properly be called rental. 'A tax is a demand of sovereignty; a toll is a demand of proprietorship." [ citations omitted]. If the company purchased] ground in the various blocks from private individuals, and to such grounds removed its poles, the section of the ordinance] would no longer have any application to it.

148 U.S. at 97. The Supreme Court found that the subject city ordinance was a lawful rental and not a tax. The court further stated that the treatment of the monies received as revenue by the city:

> does not determine the character of the charge or make it a tax. The revenues

> of a municipality may come from rentals as legitimately and as properly as from taxes. The city has attempted to make the telegraph company pay for appropriating to its own and sole use a part of the streets and public places of the city. It is seeking to collect rent. So . . . while permission to a telegraph company to occupy the streets is not technically a lease, and does not in terms create the relation of landlord and tenant, yet it is the giving of the exclusive use of real estate, for which the giver has a right to exact compensation, which is in the nature of rental.

Id. It was in response to Fleming that the Legislature in 1941 amended Article 7060 (subsequently recodified in 1959 as Art. 11.03 and now codified at § 182.021 - .026 of the Tax Code) and legislatively authorized a city, at its option, to make a reasonable charge, "whether designated as rentals or otherwise," for use of its streets, capped at the equivalent of 2% of "gross receipts" from in-city sales.

**C. History of Article 7060 (now § 182.021-.026, Texas Tax Code).**

The predecessor of Article 7060 and current Tax Code §§ 182.021-.026 was passed in 1907. It imposed a state occupation tax on a variety of businesses and occupations, including local distribution companies and also on gas and oil transmission pipelines. The section imposing an occupation tax on gas and oil transmission pipelines was deleted in 1920 upon the passage of what was then called the Cox Act, which imposed the gross receipts tax now contained in Chapter 122 of the Texas Utility Code (formerly Articles 6050-6066, Tex. Rev. Civ Stat.). The tax imposed by Chapter 122 at § 122.051 is a state tax on a gas utility of "one-half of one percent of the gross income of the gas utility". This tax is viewed as an occupation tax. RRC v. Channel Industries Gas Company, 775 S.W. 2d 503 (Tex. App. -- Austin, 1989, writ denied). "Gross income" is the same as "gross receipts" for purposes of this tax. Id. at 505.

The tax is imposed on a "gas utility," which term is defined in the Utility Code at § 122.001(1) by reference to § 121.001(a)(2) which states, inter alia, that a "gas utility" means a person or company:

> (1) who owns , manages, operates, . . . in this state. . . . a pipeline, plant,

facility, franchise, license, or permit for a business that:

\* \* \* \* \*

(2) owns, operates or manages a pipeline: (A) that is for transporting or conveying natural gas, whether for public hire or not . .

Tax Code Section 182.024 states that no "city. . . may impose an occupation tax or charge of any sort on. a utility company taxed. under this subchapter," "Utility company" is defined at § 182.021(1) as a person "who owns or operates a gas, electric light, electric power or water works used for local sale and distribution located within an incorporated city or town in this state." Notwithstanding this prohibition against levying a tax, Section 182.025 preserves the rights of Texas cities to charge a fee for the use of its streets.

1936 amendments to Article 7060 added the language prohibiting cities from imposing occupation, taxes on utility companies paying occupation taxes to the State under Article 7060. It was this version of Article 7060 that was considered in <u>Fleming</u>. The 1941 amendments stated the prohibition and exception to read as follows:

> No city or other political subdivision of this State, by virtue of its taxing power, proprietary power, police power of otherwise, shall impose and occupation tax or charge of any sort upon any person, corporation or association required to pay an occupation tax under this Article, Nothing in this Article shall be construed as . .impairing or altering in any way the provisions of any contracts, agreements or franchises now in existence or hereafter made between a city and a public utility, relating to payments of any sort to a city. Nothing in this Article shall be construed as prohibiting an incorporated city or town from making a reasonable charge, otherwise lawful, for the use of its streets, alleys, and public ways by a public utility in the conduct of its business, and each such city shall have the right and power; but any such charges, whether designated as rentals or otherwise, and whether measured by gross receipts, units of installation or in any other manner, shall not in the aggregate exceed the equivalent of two (2) percent of the gross receipts of such utility within such municipality derived from the sale of gas, electric energy or water.

In 1981 this statute became Tax Code §§ 182.021-026. The above quoted language from the 1941 amendments was modified and shortened in the codification to read: "The total charges, however designated or measured, may not exceed percent of the gross receipts of the public utility for the sale of gas, electric energy, or water within the city."

A constitutional challenge by a city to the 1941 amendments was defeated in <u>City of Beaumont v. Gulf States Utilities Co.</u>, 163 S.W. 426 (Tex. App. -- Beaumont 1942, writ ref'd w.o.m.). In that case, the City of Beaumont had enacted a 4% of gross receipts ordinance applying to telegraph, telephone, electric and gas companies for the privilege of using the streets, easements, alleys and other public ways within the city with poles, wires, pipes, and fixtures. The city sued to collect the additional 2% charged by the ordinance, over and above the 2% cap imposed by Article 7060. The city raised various constitutional challenges to the 1941 Omnibus Tax Law (which contained, inter alia in its Article 5, the 1941 amendments), including that it violated the constitutional Home Rule Amendment. The court found that no constitutional right of the city was violated by the Omnibus Tax Law, which by its Article 5 limited "its rental charges against appellee to two percent of appellee's gross receipts."

In <u>City of Corpus Christi v. Southern Community Gas Co.</u>, 368 S.W.2d 144 (Tex. Civ. App. -- San Antonio, 1963, writ ref'd, n.r.e.), the city sued to recover a street rental fee against a gas company that was operating in an area recently annexed by the city. The court stated that "Art 11.03, Title 122A,. . . recognizes the City's right to levy a street rental fee against public utilities of not to exceed two percent of gross revenues for the utilities' use of the public streets and ways. In the case before this court, it is undisputed that the portion of the City of San Benito where the former Kinder Morgan pipeline is located has been within the city boundaries for well over 50 years. The above cited cases and numerous other Texas cases illustrate the recognition by the courts that cities have the authority to impose charges for the use of their streets. See, e.g., <u>West Texas Utilities Co. v. City of Baird</u>, 285 S.W.2d 185 (Tex. Civ. App. -- Eastland 1956, writ ref'd, n.r.e.).

**D. Home Rule Cities' Powers.**

Article 1175(2), Tex. Rev. Civ. Stat, the "Home-Rule" statute, states that "A home-rule municipality has the following powers:

* * * * *

2. To prohibit the use of any street, alley, highway or grounds of the city by any . . gas company, or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and upon pa such compensation as may be prescribed and upon such condition as may be provided by such ordinance. . .

* * *

3. To have exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city... ...

4. To control, regulate and remove all obstructions or other encroachments or encumbrances on any public street, alley or ground...

Texas home-rule cities such as San Benito have the full power of self government. This form of government-- unlike counties and unincorporated areas--does not look to state law or other laws for authorization to enact laws or to determine the scope of its authority. Rather, home-rule cities are empowered to enact any law that the state legislature could adopt. The Texas Supreme Court and other Texas courts have consistently observed that a home-rule city "has the power of self-government, that is, full authority to do anything the legislature could theretofore have authorized thin to do." Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641, 643 (Tex. 1975); see also Foxwood v. City of Taylor, 214 SW.2d 282, 286 (Tex. 1948); State ex rel Rose v. City of La Porte, 386 S.W,2d 782 (Tex. 1965); City of Corpus Christi v. Continental Bus Systems, Inc., 445 S.W.2d 12 (Tex. Civ. App. -- Austin 1969, writ ref'd); Dallas Merchants & Concessionaires Ass'n v. City of Dallas, 852 S.W.2d 489 (Tex. 1993); Tex. Const. art. art XI, section 5.

Home rule cities such as San Benito do not look to state law for authorization to pass laws, but rather need only determine if state law in some clear and unambiguous manner restricts their inherent power of self governance. The above state law provisions arc consistent with San Benito provisions in vesting exclusive control over public streets in San Benito under the control of its City Council. Other state statutes similarly recognize a home-

rule city's exclusive control over its public places. For instance, Tex Rev Civ. Stat. art. 1181 provides in pertinent part:

> No charter or any amendment thereof framed or adopted under this charter, shall ever grant to any person, firm or corporation any right or franchise to use or occupy the public streets, avenues, alleys or grounds of any such city, but the governing authority of any such city shall have the exclusive power and authority to make any such grant of any such franchise or right to use and occupy the - public streets, avenues, alleys, and grounds of the city....

This statute makes it patently clear that only the "governing body' of a city is authorized to grant permission for any 'person, firm or corporation to use or occupy a public street, avenue, alley or ground of the city' Thus, unless the "governing authority" grants tights or privileges, no rights or privileges are conveyed.

**E. Judicial Recognition of a Home Rule Cities' Control over Streets.**

The undeniable exclusive control that home rule cities enjoy over their public property and rights of way has been clearly recognized by Texas courts. See City of San Antonio v. United Gas Pipeline Co., 388 S.W.2d 231, 234 (Tex. Civ. App. -- San Antonio 1965, writ ref'd n.r.e.)(enjoining use of streets by a pipeline transmission company and stating it would be required to obtain a franchise to use city streets to serve a single industrial gas customer). Texas courts have also recognized that while cities have the authority to grant consent to gas companies to lay pipes under public rights of way, they also have right to prohibit or condition such use. Id. Accordingly, unless a person or entity has the permission or consent of a city to place pipes or other structures in, under, above or through public streets, avenues or alleys, such structures are encroachments or purprestures upon public rights. Texas courts have continually held that a city has the authority to grant permission to prohibit the use by gas pipeline companies of property located under its streets, alleys and avenues. Grimes v. Corpus Christi Transmission Co., 829 SW.2d 335 (Tex. App. -- Corpus Christi 1992, writ denied)

### F. A pipeline under a street is using the street.

Further, where a company or entity desires to install a pipeline under a street, even if such is achieved by tunneling under the street, this constitutes a "use" of the street that requires a franchise or other express consent of the City. This point has been made by many Texas courts: see, e.g., Davis v. State ex rel. Town of Anthony, 298 S.W2d 219, 221 (Tex. Civ. App. -- El Paso 1957, writ ref'd, n.r.e.); United Gas Pipeline Company, 338 SW2d at 231; Alamo Carriage Services, Inc. v. City of San Antonio, 768 S.W.2d 937 941 (Tex. App. -- San Antonio 1989, no writ); Grimes, 829 S.W.2d at 336-37.

### 6. Conclusion

The supreme court and the legislature have validated specifically the right of a city to impose a reasonable charge, capped by statute at a maximum of 2%. The Texas Supreme Court held in Fleming that cities could impose charges in the nature of rentals for the use of streets in carrying on a local business, that such charges would not be invalid because they were measured by gross receipts, and declared that the charge was a rental and not a tax in the nature of an occupation tax or tax on the privilege of doing business. Subsequent cases addressing rental charges have cited Fleming as well-settled law that cities can impose reasonable charges for the use of streets. Movants' reliance upon a pre-Fleming case addressing only the applicability of a state tax law, not a local street rental ordinance and not addressing the right of a municipality to require and receive compensation for the use of city streets by a gas pipeline company and its related entities, is not dispositive of this issue. Moreover, multiple distribution is not required for the ordinance to apply. Plaintiff has sustained damages as a result of the failure of Defendants to abide by the ordinance. Alternatively, if the contract does not apply, it is clear that Defendants are using city streets and rights of way without paying for usage of same, as evidenced by Defendants responses to Interrogatories attached hereto as Exhibit "B". Plaintiff has sustained damages as a result

of Defendants' tortious and/or contractual actions and/or omissions.

7.  **Summary Judgment Evidence Supporting Plaintiff's Response.**

This response is supported by the following summary judgment evidence which is attached hereto and incorporated herein by reference for all purposes:

Appendix "A," containing Defendants' written responses to Plaintiff's First and Second Requests for Production propounded in this case;

Appendix "B," containing Defendants' written responses to Plaintiff's Interrogatories propounded in this case indexed Bates stamped documents produced by Defendants in this case; and

Appendix "C," the Affidavit of Plaintiff's counsel, Adam Poncio; and

WHEREFORE, Plaintiff, The City of San Benito, Texas, requests that Defendants' Motion for Summary Judgment be in all things denied and/or stricken, that Plaintiff's objections to the affidavits be sustained and the Movants' affidavits be stricken, that this Court enter an order of continuance and/or sanctions for abuse of the discovery process and/or overrule Defendants' objections and order Defendants to fully comply with discovery, and that the Court grant Plaintiff such other and further relief to which it is justly entitled, at law or in equity.

Respectfully submitted,

*(signature)*

**ADAM PONCIO**
State Bar No. 16109800
**LAW OFFICES OF CERDA & PONCIO**
A Professional Corporation
924 McCullough Ave.
San Antonio, Texas 78215-1642
Telephone (210) 212-7979
Facsimile  (210) 212-5880

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I do hereby certify that on this 8th day of August, 2005, forwarded a true and correct copy of the above document to all counsel of record:

Ramon Garcia
Oscar Alvarez
LAW OFFICES OF RAMON GARCIA, P.C.
222 West University Drive
Edinburg, Texas 78539

Osborne J. Dykes, III
Jeffrey D. Palmer
FULBRIGHT & JAWORSKI, LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

_____
**ADAM PONCIO**