IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 1 8 2005

Michael N. Milby
Clerk of Court

| | |
|---|---|
| CITY OF SAN BENITO, § § Plaintiff, § § § V. § § KINDER MORGAN TEJAS PIPELINE, L.P., § § Defendant. § | C. A. NO. B03-080 |

### DEFENDANT KINDER MORGAN'S REPLY IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Defendant Kinder Morgan Tejas Pipeline, L.P. ("Kinder Morgan") submits this reply in support of Defendant Kinder Morgan's Motion For Summary Judgment ("Motion").

### Introduction

Plaintiff City of San Benito ("City")[1] confirms in City of San Benito's Response To Defendant's Motion For Summary Judgment ("Response") that this suit is predicated upon the City's Street Rental Ordinance, which applies to companies which "use" the streets within the City with pipelines "for the sale and distribution of natural gas to consumers . . . ." The charge under the Ordinance, if applicable, is 2% of the gross receipts received from sale of natural gas within the City. In its Motion, Kinder Morgan demonstrated that it has never made distribution of natural gas in San Benito; that the City lacks authority to charge street rent to an "interurban"

---

[1] Terms capitalized and defined in the Motion will be used with the same meaning in this Reply.

business; and that there is no evidence of distribution, tortious conduct, or damages. The City makes four arguments in response: (1) The City objects to the affidavit of Stewart Lee Baskin as lacking a proper foundation. (2) The City contends that Kinder Morgan has improperly refused to answer discovery requests. (3) The City contends that sale of gas to a single consumer constitutes "distribution" within the meaning of the Ordinance. (4) The City argues that Texas law permits a municipality to charge street rental to a statewide, or "interurban," business. Each of these arguments lacks merit and will be addressed *seriatim*.

### Argument and Authorities

I.  **THE AFFIDAVIT OF STEWART LEE BASKIN IS PROPER.**

The City contends that the Affidavit of Stewart Lee Baskin, which is included in the Appendix to Defendant Kinder Morgan's Motion For Summary Judgment,[2] "lacks proper foundation" and is "not based upon the personal knowledge of the affiant." Response at 2-3. Contrary to the City's contention, Mr. Baskin states in his affidavit that the facts to which he testifies are "true and correct to my personal knowledge." Baskin Affidavit at ¶ 1 (App. Exhibit B). His position with Kinder Morgan (Director-Regulatory for Kinder Morgan, Inc.) and his background and employment responsibilities, which demonstrate his basis from a personal knowledge, are described in detail in the affidavit. Baskin Affidavit at ¶¶ 3 & 4 (App. Exhibit B). Although not necessary in this case, personal knowledge may be inferred from Mr. Baskin's position with Kinder Morgan. *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal

---

[2] As was done in the Motion, the appendix will be cited as "Appendix" or "App.".

knowledge may be inferred from a declarant's position."). Plaintiff has failed to controvert any of the facts set out in Mr. Baskin's affidavit.

## II. KINDER MORGAN HAS RESPONDED APPROPRIATELY TO PLAINTIFF'S DISCOVERY REQUESTS.

The City complains of Kinder Morgan's responses to two document requests and to one set of interrogatories. Contrary to the City's contention, Kinder Morgan has responded timely and appropriately to the discovery requests.[3] The document requests were served on May 6, 2005. The responses, which are attached to the Response as Exhibit A, were timely served on June 8, 2005. In each instance, Kinder Morgan agreed, subject to its objections, to "produce responsive documents," and it has done so, with the sole exception of Kinder Morgan's gas sales contracts, as such contracts contain confidential and proprietary information.[4] The gas sales contracts being withheld by Kinder Morgan pending a protective order contain pricing and other confidential terms under which sales might occur but do not evidence actual sales of gas within the City of San Benito and therefore are not material to Kinder Morgan's motion for summary judgment. The City can identify no document or category of documents which has not been produced and which would be material to the summary judgment issues.

The interrogatories in question were served on June 22, 2005. The responses, attached to the Response as Exhibit B, were timely served on July 25, 2005. Plaintiff complains of the

---

[3] Ironically, it is plaintiff who continues to fail to comply with its discovery obligations by not responding to Kinder Morgan's First Set of Interrogatories and First Request for Production of Documents which were served on June 1, 2005. Plaintiff's responses to these written discovery requests were due more than a month ago on July 5, 2005.

[4] Kinder Morgan has previously filed with the Court a Request for Entry of Protective and Confidentiality Order since plaintiff's counsel has refused, for unknown and unspecified reasons, to agree to a confidentiality order in this lawsuit.

answers to interrogatories Nos. 2, 6, 7, and 8. The first three of these ask about Kinder Morgan's sales within the City of San Benito. The answers furnish specific information, by referring to documents previously produced (KM 0007-09). For the convenience of the court, these pages are attached to this Reply as Exhibit A. The interrogatory answers also affirm that Kinder Morgan has "no record of any other sales in San Benito." Answers to Interrogatory Nos. 6 & 7. Interrogatory No. 8, asks about sales made <u>outside</u> the City of San Benito "within a fifty mile radius of the City. . . at farm taps . . . ." Such information can have no conceivable relevance to the issues involved in this lawsuit and the interrogatory was properly objected to. The City has been unable to describe any information, or type of information, which it contends should have been provided in response to the interrogatories, beyond that which was provided.

In sum, the City has no basis for complaint concerning discovery.

### III. THE STREET RENTAL ORDINANCE IS INAPPLICABLE BY ITS TERMS BECAUSE KINDER MORGAN HAS MADE NO DISTRIBUTION OF NATURAL GAS IN SAN BENITO.

The City does not and cannot deny that the Ordinance applies to a pipeline company's sales only if the pipeline is used for "distribution" within San Benito. Plaintiff contends, however, "that distribution does not require distribution to more than one party or entity." Response at 7. This contention is unsupported and is contrary to the authorities, ordinary usage, and the language of the Ordinance.

The Texas Supreme Court in *Utilities Natural Gas Co. v State*, 128 S.W. 2d 1153 (Tex. 1939) squarely held that "distribution" by a natural gas pipeline "does not mean the transfer of the possession of gas, by means of the pipe line, to a single purchaser where such purchaser is the only customer to whom the gas company sells gas in the city." *Id.* at 1155. On the contrary, the court held that distribution "means the transfer of possession of gas to various individuals or

concerns in the city." *Id.* The City attempts to distinguish this case on the basis that it was decided under the Cox Act, not the City's Street Rental Ordinance. While it is true that the case was decided under the statute, the court construed the term "distribution" specifically with reference to a gas pipeline, and the relevant language of the statute ("local sale and distribution") is almost identical to the Ordinance ("sale and distribution . . . within the corporate limits of the City of San Benito"). There is no reason to believe that the City, in adopting its Ordinance two years after the *United Natural Gas* decision, had a different meaning in mind. This is particularly true when the court's interpretation of "distribution" accords with ordinary usage and the dictionary definition of the term, and when the Ordinance itself imposes a charge only when there is distribution to "consumers," using the plural. *See* Street Rental Ordinance, section II (App. Exhibit C). Plaintiff has offered no authority to support its argument that sale to a single customer constitutes "distribution."

The term "distribution" should be construed, consistently with the *Utilities Natural Gas* case, common usage, the dictionary, and the Ordinance itself, to mean multiple sales, and not merely a single sale.

IV. **THE CITY LACKS POWER TO CHARGE STREET RENTAL TO AN INTERURBAN BUSINESS.**

The case of *Fleming v. Houston Lighting & Power Co.*, 138 S.W. 2d 520 (Tex. 1940), *rehearing overruled*, 143 S.W. 2d 923 (Tex. 1940), *cert. denied*, 313 U.S. 560 (1941) holds that a city may charge street rental only for businesses which are "exclusively local," but not for an "interurban," or statewide, business. *See id.* at 521-22 Kinder Morgan's pipeline segment in San Benito is undeniably a part of a statewide, or interurban, business, and is not exclusively local to the City. The City does not contend otherwise. Therefore, the City lacks the power to charge Kinder Morgan with a street rental. This same conclusion has been reached by other states. *See*

*Diginet, Inc. v. Western Union ATS, Inc.*, 845 F. Supp. 1234, 1236 (N.D. Ill. 1993) (holding that the City did not have a right to condition street access to fiber optic cables on the payment of franchise fees because of the "statewide and interstate character of the service"); *AT&T v. Village of Arlington Heights*, 620 N.E.2d 1040, 1046-47 (Ill. 1993) (holding that because a municipality has no proprietary interest in the streets, it cannot charge a telephone company installing a statewide fiber optic cable under public streets a rent, fee, or toll for crossing underneath such street); *City of Englewood v. Mountain States Tel. & Tel. Co.*, 431 P.2d 40, 43 (Col. 1967) (holding that the city did not have the power to require a telephone company with a statewide telephone system to obtain a city franchise in order to maintain its facilities within the city because the telephone company's "need for coordinated intra and interstate communications is also a matter of statewide concern heavily outweighing any possible municipal interest"); *Pacific Tel. & Tel. Co. v. City and County of San Francisco*, 336 P.2d 514, 519 (Cal. 1959) (holding that the city could not exclude from its streets the telephone company's lines that were used to furnish communication services to people statewide).

In *AT&T v. Village of Arlington Heights*, the Supreme Court of Illinois noted the crippling effect on commerce if governmental units had the right to charge fees for the use of public streets by a statewide business:

> Regardless of the name given to this particular method of revenue enhancement, whether it is called a franchise, a rental fee or a tax, it is, in its essence, a toll. Parenthetically, it is noted that there are 1,281 cities and villages in Illinois, 102 counties and 1,434 townships, each of which maintained travelled ways. If each of these governmental units had the right to charge tolls for conduits going under and over their streets, the effect would amount to legalized extortion and a crippling of communication and commerce as we know it.

620 N.E.2d at 1044.

Kinder Morgan respectfully submits that the City's discussion of the history of the Cox Act amendments and of the general powers of home-rule cities is not material to the issues before the Court. It is undisputed that Kinder Morgan is not a public utility or a business exclusively local to the City of San Benito. Therefore, street rental charges are not authorized.

V.  **THE CITY HAS FAILED TO OFFER ANY EVIDENCE TO SUPPORT ITS CLAIM OF DISTRIBUTION, TORTIOUS CONDUCT, OR TORT DAMAGES.**

Kinder Morgan's Motion is based upon the uncontroverted facts that it has not engaged in distribution in the City of San Benito, that it has not functioned as a local public utility in the City of San Benito, and that it is an interurban business. Additionally, Kinder Morgan's Motion asserts that there is "no evidence" of distribution, of tortious conduct, or of tort damages. In response, the City has offered no evidence. The affidavit of counsel attached to the Response as Exhibit C (concerning "apparent abuse of the discovery process,") is conclusory in the extreme and should be disregarded. Plainly, it does not constitute evidence concerning the operative facts of this case. Because the plaintiff has offered no summary judgment evidence to raise even a fact issue as to any of its claims, its suit should be dismissed with prejudice.

## Conclusion

Kinder Morgan asks the Court to render summary judgment dismissing plaintiff's suit with prejudice, and for such other and further relief to which it may be justly entitled.

                      Respectfully submitted,

*[signature]*

Osborne J. Dykes, III
State Bar No. 06325500
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Facsimile: 713-651-5246

Attorney-in-Charge for Kinder Morgan Tejas Pipeline, L.P.

**OF COUNSEL:**

FULBRIGHT & JAWORSKI L.L.P.
    William D. Wood
    State Bar No. 21916500
    Jeffrey D. Palmer
    State Bar No. 24027585

ROERIG, OLIVEIRA & FISHER, L.L.P.
    David G. Oliveira
    State Bar No. 15254675
855 West Price Road, Suite 9
Brownsville, Texas 78520
Telephone: 956-542-5666
Facsimile: 956-542-0016

## Certificate of Service

This pleading was served on August 17, 2005, by First Class U.S. Mail on the following counsel of record:

Mr. Adam Poncio
Cerda & Poncio
924 McCullough
San Antonio, Texas 78125

_____
Jeffrey D. Palmer

# Kinder Morgan Texas Intrastate Pipeline Group
## Monthly Sales Volumes for the La Palma Plant (PIN 350601)

| Production Month | Customer Name | Sales Volume in MMBtu |
|---|---|---:|
| Nov-94 | HOUSTON PIPE LINE COMPANY LP | 0 |
| Dec-94 | HOUSTON PIPE LINE COMPANY LP | 0 |
| Jan-95 | HOUSTON PIPE LINE COMPANY LP | 337,602 |
| Feb-95 | HOUSTON PIPE LINE COMPANY LP | 357,269 |
| Mar-95 | HOUSTON PIPE LINE COMPANY LP | 291,841 |
| Apr-95 | HOUSTON PIPE LINE COMPANY LP | 252,137 |
| May-95 | HOUSTON PIPE LINE COMPANY LP | 341,481 |
| Jun-95 | HOUSTON PIPE LINE COMPANY LP | 357,086 |
| Jul-95 | HOUSTON PIPE LINE COMPANY LP | 263,516 |
| Aug-95 | HOUSTON PIPE LINE COMPANY LP | 241,514 |
| Sep-95 | HOUSTON PIPE LINE COMPANY LP | 159,806 |
| Oct-95 | HOUSTON PIPE LINE COMPANY LP | 252,646 |
| Nov-95 | HOUSTON PIPE LINE COMPANY LP | 277,871 |
| Dec-95 | HOUSTON PIPE LINE COMPANY LP | 360,398 |
| Jan-96 | HOUSTON PIPE LINE COMPANY LP | 322,362 |
| Feb-96 | HOUSTON PIPE LINE COMPANY LP | 392,193 |
| Mar-96 | HOUSTON PIPE LINE COMPANY LP | 48,552 |
| Apr-96 | HOUSTON PIPE LINE COMPANY LP | 43,757 |
| May-96 | HOUSTON PIPE LINE COMPANY LP | 364,144 |
| Jun-96 | HOUSTON PIPE LINE COMPANY LP | 196,619 |
| Jul-96 | HOUSTON PIPE LINE COMPANY LP | 247,749 |
| Aug-96 | HOUSTON PIPE LINE COMPANY LP | 332,428 |
| Sep-96 | HOUSTON PIPE LINE COMPANY LP | 281,831 |
| Oct-96 | HOUSTON PIPE LINE COMPANY LP | 327,810 |
| Nov-96 | HOUSTON PIPE LINE COMPANY LP | 224,939 |
| Dec-96 | HOUSTON PIPE LINE COMPANY LP | 252,104 |
| Jan-97 | HOUSTON PIPE LINE COMPANY LP | 264,361 |
| Feb-97 | HOUSTON PIPE LINE COMPANY LP | 197,556 |
| Mar-97 | HOUSTON PIPE LINE COMPANY LP | 173,160 |
| Apr-97 | HOUSTON PIPE LINE COMPANY LP | 85,090 |
| May-97 | HOUSTON PIPE LINE COMPANY LP | 79,028 |
| Jun-97 | HOUSTON PIPE LINE COMPANY LP | 283,293 |
| Jul-97 | HOUSTON PIPE LINE COMPANY LP | 285,093 |
| Aug-97 | HOUSTON PIPE LINE COMPANY LP | 333,445 |
| Sep-97 | HOUSTON PIPE LINE COMPANY LP | 361,984 |
| Oct-97 | HOUSTON PIPE LINE COMPANY LP | 284,551 |
| Nov-97 | HOUSTON PIPE LINE COMPANY LP | 282,343 |
| Dec-97 | HOUSTON PIPE LINE COMPANY LP | 273,275 |
| Jan-98 | HOUSTON PIPE LINE COMPANY LP | 188,631 |
| Feb-98 | HOUSTON PIPE LINE COMPANY LP | 264,495 |
| Mar-98 | HOUSTON PIPE LINE COMPANY LP | 373,779 |
| Apr-98 | HOUSTON PIPE LINE COMPANY LP | 305,259 |
| May-98 | HOUSTON PIPE LINE COMPANY LP | 410,770 |
| Jun-98 | HOUSTON PIPE LINE COMPANY LP | 442,561 |
| Jul-98 | HOUSTON PIPE LINE COMPANY LP | 457,657 |
| Aug-98 | HOUSTON PIPE LINE COMPANY LP | 473,307 |
| Sep-98 | HOUSTON PIPE LINE COMPANY LP | 423,603 |

EXHIBIT A

KM 0007

# Kinder Morgan Texas Intrastate Pipeline Group
## Monthly Sales Volumes for the La Palma Plant (PIN 350601)

| Production Month | Customer Name | Sales Volume in MMBtu |
|---|---|---:|
| Oct-98 | HOUSTON PIPE LINE COMPANY LP | 222,509 |
| Nov-98 | HOUSTON PIPE LINE COMPANY LP | 0 |
| Dec-98 | HOUSTON PIPE LINE COMPANY LP | 308,981 |
| Jan-99 | HOUSTON PIPE LINE COMPANY LP | 327,832 |
| Feb-99 | HOUSTON PIPE LINE COMPANY LP | 242,951 |
| Mar-99 | HOUSTON PIPE LINE COMPANY LP | 362,083 |
| Apr-99 | HOUSTON PIPE LINE COMPANY LP | 382,357 |
| May-99 | HOUSTON PIPE LINE COMPANY LP | 439,371 |
| Jun-99 | HOUSTON PIPE LINE COMPANY LP | 426,657 |
| Jul-99 | HOUSTON PIPE LINE COMPANY LP | 454,367 |
| Aug-99 | HOUSTON PIPE LINE COMPANY LP | 419,910 |
| Sep-99 | HOUSTON PIPE LINE COMPANY LP | 219,236 |
| Oct-99 | HOUSTON PIPE LINE COMPANY LP | 260,330 |
| Nov-99 | HOUSTON PIPE LINE COMPANY LP | 228,238 |
| Dec-99 | HOUSTON PIPE LINE COMPANY LP | 181,410 |
| Jan-00 | HOUSTON PIPE LINE COMPANY LP | 307,490 |
| Feb-00 | HOUSTON PIPE LINE COMPANY LP | 95,672 |
| Mar-00 | HOUSTON PIPE LINE COMPANY LP | 0 |
| Apr-00 | HOUSTON PIPE LINE COMPANY LP | 0 |
| May-00 | HOUSTON PIPE LINE COMPANY LP | 247,091 |
| Jun-00 | HOUSTON PIPE LINE COMPANY LP | 281,542 |
| Jul-00 | HOUSTON PIPE LINE COMPANY LP | 382,225 |
| Aug-00 | HOUSTON PIPE LINE COMPANY LP | 378,953 |
| Sep-00 | HOUSTON PIPE LINE COMPANY LP | 383,876 |
| Oct-00 | HOUSTON PIPE LINE COMPANY LP | 251,166 |
| Nov-00 | HOUSTON PIPE LINE COMPANY LP | 371,435 |
| Dec-00 | HOUSTON PIPE LINE COMPANY LP | 177,843 |
| Jan-01 | HOUSTON PIPE LINE COMPANY LP | 18,032 |
| Feb-01 | HOUSTON PIPE LINE COMPANY LP | 228,091 |
| Mar-01 | HOUSTON PIPE LINE COMPANY LP | 336,077 |
| Apr-01 | HOUSTON PIPE LINE COMPANY LP | 362,035 |
| May-01 | HOUSTON PIPE LINE COMPANY LP | 394,359 |
| Jun-01 | HOUSTON PIPE LINE COMPANY LP | 329,621 |
| Jul-01 | HOUSTON PIPE LINE COMPANY LP | 356,090 |
| Aug-01 | HOUSTON PIPE LINE COMPANY LP | 330,534 |
| Sep-01 | HOUSTON PIPE LINE COMPANY LP | 322,131 |
| Oct-01 | HOUSTON PIPE LINE COMPANY LP | 309,358 |
| Nov-01 | HOUSTON PIPE LINE COMPANY LP | 80,911 |
| Dec-01 | HOUSTON PIPE LINE COMPANY LP | 51,030 |
| Jan-02 | HOUSTON PIPE LINE COMPANY LP | 158,082 |
| Feb-02 | HOUSTON PIPE LINE COMPANY LP | 32,590 |
| Mar-02 | HOUSTON PIPE LINE COMPANY LP | 10,670 |
| Apr-02 | HOUSTON PIPE LINE COMPANY LP | 35,207 |
| May-02 | HOUSTON PIPE LINE COMPANY LP | 136,762 |
| Jun-02 | HOUSTON PIPE LINE COMPANY LP | 415,104 |
| Jul-02 | HOUSTON PIPE LINE COMPANY LP | 418,972 |
| Aug-02 | HOUSTON PIPE LINE COMPANY LP | 379,139 |
| Sep-02 | HOUSTON PIPE LINE COMPANY LP | 370,052 |

KM 0008

# Kinder Morgan Texas Intrastate Pipeline Group
# Monthly Sales Volumes for the La Palma Plant (PIN 350601)

| Production Month | Customer Name | Sales Volume in MMBtu |
|---|---|---:|
| Oct-02 | HOUSTON PIPE LINE COMPANY LP | 345,062 |
| Nov-02 | HOUSTON PIPE LINE COMPANY LP | 35,631 |
| Dec-02 | HOUSTON PIPE LINE COMPANY LP | 128,512 |
| Jan-03 | HOUSTON PIPE LINE COMPANY LP | 211,152 |
| Feb-03 | HOUSTON PIPE LINE COMPANY LP | 314,726 |
| Mar-03 | HOUSTON PIPE LINE COMPANY LP | 138,463 |
| Apr-03 | HOUSTON PIPE LINE COMPANY LP | 348,711 |
| May-03 | HOUSTON PIPE LINE COMPANY LP | 380,786 |
| Jun-03 | HOUSTON PIPE LINE COMPANY LP | 154,127 |
| Jul-03 | HOUSTON PIPE LINE COMPANY LP | 96,578 |
| Aug-03 | HOUSTON PIPE LINE COMPANY LP | 295,294 |
| Sep-03 | HOUSTON PIPE LINE COMPANY LP | 423,200 |
| Oct-03 | HOUSTON PIPE LINE COMPANY LP | 391,131 |
| Nov-03 | HOUSTON PIPE LINE COMPANY LP | 342,462 |
| Dec-03 | HOUSTON PIPE LINE COMPANY LP | 372,439 |
| Jan-04 | HOUSTON PIPE LINE COMPANY LP | 385,367 |
| Feb-04 | HOUSTON PIPE LINE COMPANY LP | 413,774 |
| Mar-04 | HOUSTON PIPE LINE COMPANY LP | 287,708 |
| Apr-04 | HOUSTON PIPE LINE COMPANY LP | 356,813 |
| May-04 | AMERICAN ELECTRIC POWER SERVICE CORPORATION | 332,190 |
| Jun-04 | AMERICAN ELECTRIC POWER SERVICE CORPORATION | 483,970 |
| Jul-04 | AMERICAN ELECTRIC POWER SERVICE CORPORATION | 471,866 |
| Aug-04 | SEMPRA ENERGY TRADING CORP. | 465,007 |
| Sep-04 | SEMPRA ENERGY TRADING CORP. | 351,749 |
| Oct-04 | SEMPRA ENERGY TRADING CORP. | 350,971 |
| Nov-04 | SEMPRA ENERGY TRADING CORP. | 272,258 |
| Dec-04 | SEMPRA ENERGY TRADING CORP. | 341,841 |
| Jan-05 | SEMPRA ENERGY TRADING CORP. | 6,176 |
| Feb-05 | SEMPRA ENERGY TRADING CORP. | 65,877 |
| Mar-05 | SEMPRA ENERGY TRADING CORP. | 256,166 |
| Apr-05 | SEMPRA ENERGY TRADING CORP. | 291,127 |
| May-05 | SEMPRA ENERGY TRADING CORP. | 344,210 |
| Jun-05 | SEMPRA ENERGY TRADING CORP. | 237,728 |

KM 0009