NO. 03-6-59,833-C

FILED

| | | |
|---|---|---|
| THE CITY OF VICTORIA, | § | IN THE DISTRICT COURT |
| PLAINTIFF, | § | |
| V. | § | |
| HOUSTON PIPE LINE COMPANY | § | 267TH JUDICIAL DISTRICT |
| ET AL., | § | |
| DEFENDANTS | § | VICTORIA COUNTY, TEXAS |

05 SEP 30 PM 1:17

DISTRICT CLERK
VICTORIA COUNTY, TEXAS

## PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff, the City of Victoria, Texas, files this Response to the Motion for Summary Judgment filed by Defendant, Houston Pipe Line Company LP. Defendant is the successor in name and/or by merger and acquisition to a long line of similarly named entities, and all such entities will be collectively referred to herein as "Defendants" or "Movants," whether one or more. In support of its response, Plaintiff shows:

1. Plaintiff's claims:

A.  The City of Victoria has filed suit against Movants based in part on the allegation that defendants violated a 1941 city ordinance now codified in Sections 14-115 and 14-116 of the City Code, which requires the reporting and payment to the City of local natural gas sales. The City's pleadings also state a claim for violations of the City Charter and the local and state laws which govern the activities of gas transmission pipelines and the sales of gas through the use of city property, streets and rights of way. As Movants have not specially excepted to Plaintiff's Original Petition, the live pleading in this case, Plaintiff's pleadings are to be construed broadly and in favor of Plaintiff.

B. It is undisputed that Defendants do now and have for many years owned, operated and/or controlled a natural gas transmission pipeline that makes extensive use of City streets and rights of way to deliver and sell natural gas to its in-city customers. It is further undisputed that Defendants have no franchise, permit, or any other form of consent granted by City ordinance for any such pipeline presence or gas sales activities inside the City, save and except for those specifically identified permits and easements identified in and attached to the Affidavit of Kenneth E. Gill attached hereto at

EXHIBIT
2

1

Appendix "A."  Contrary to Movants' representations in their motion, and as controverted by Plaintiff's own Motion for Partial Summary Judgment previously filed herein and set for hearing at the same time as this motion, even if this Court were to rule in favor of Movant, it would not resolve all of the issues in dispute that are raised by Plaintiffs pleadings and the motion should therefore be considered, at best, only a partial motion for summary judgment.

C.  Further, as established by the Plaintiff's Motion for Partial Summary Judgment previously filed in this cause, and the attachments thereto, and as further established by the discovery responses and documents attached hereto at Appendices "B," "C" and "D," and by the deposition testimony of Movants' representative,  Melvin Siecko, taken on September 21, 2005, and separately filed in this cause, it is undisputed that Movants own and operate a natural gas pipeline and related facilities, including separators and methyl "injectors" that perform a "process" n the Defendants' gas, that Defendant has for many years sold gas to at lest two in-city customers, AEP/CP&L and CenterPoint Energy f/k/a Entex, and that throughout this time Defendant has paid nothing to the City , made no reports to the City, and has not obtained permits or other consent form the City for the placement and operation of the vast majority of its pipelines and related physical facilities that occupy and use City streets and rights of way.

2.  <u>Arguments and authorities supporting Plaintiff's Response</u>:

Movants case law does not support the relief sought herein or apply to facts and circumstances of this case for the following reasons:

A. The <u>Utilities Natural Gas</u> case

Defendants have provided citation to and base their arguments almost entirely upon <u>Utilities Natural  Gas Co. v. State</u>, 128 S. W. 2d 1153 (Tex. 1939). That reliance is misplaced, as this case involved a pipeline company's challenge to the State Comptroller's attempt to assess an occupation tax imposed under the pre-1941 version of Art. 7060. The pipeline company in that case owned a natural gas pipeline that delivered gas to the CP&L plant in Victoria. (This case does certainly confirm that the CP& L Plant was located within the City of Victoria even back in the 1930's).  However, as the court noted, although the CP&L plant was within the city limits, "Defendant's pipe line or appurtenances have never so crossed, used or

occupied any of such alleys, streets, or other public places, or any other private lands within the City of Victoria, Texas." Id. at 1154. Here, it is undisputed that the pipeline formerly known as Movants' pipeline does cross over and along city streets and rights of way, as shown by the map produced by Defendants at Bates stamped pages 00289 and 00695 (See Appendix "B").

It is clear that the court found the Defendant's pipeline to constitute part of a "gas works," id. at 1155, a phrase the Texas Supreme Court has since found to be substantially identical to the phrase "gas plant," and to include within its scope the system of pipelines used to deliver gas to in-city customers. Eddins-Wacher Butane Co. v. Calvert, 298 SW2d 93, 95 (Tex. 1957). In this case, CPL and Lo-Vaca Gas Gathering Co. were in-city customers to whom Defendants have delivered gas. (See Appendix "B"). In Utilities Natural Gas, the court's ruling actually turned on the determination that such "gas works" were not used in "distribution" within the City as required under the state tax statute. The court defined distribution as follows:

> It is claimed that the legislature used this term as meaning the same thing as the word "delivery" or as the word "disposal." If such be true then, of course, the sale of gas by the plaintiff in error to the purchaser, the Central Power and Light Company, which was concluded by delivering the gas to said purchaser, in the City of Victoria, by means of the portion of the pipe line in question, included a "distribution" within the meaning of that term as used in the statute. But considered in the light of the provisions of the statute, as a whole, we have no doubt that the simple fact that a delivery of gas is made in the city, by means of said pipe line, to a single customer, and to nobody else, was not intended by the legislature to be comprehended by the term "distribution" as used. This term as used does not mean the transfer of the possession of gas, by means of the pipe line, to a single purchaser where such purchaser is the only customer to whom the gas company sells gas in the city. It means the transfer of possession of gas to various individuals or concerns in the city. Any other construction of the term would, in our opinion, involve a departure from the legislative intent. Since, therefore, the use of "gas-works," in a city or town in this State, for the distribution of gas in said city or town is, by the statute, made an essential characteristic of the business taxed, it follows that the business in which the plaintiff in error is engaged, as disclosed by the undisputed facts, is not subject to the tax which this statute provides.

128 SW2d at 1155.  Here, although Defendants argue that there is no evidence of sales to more than one customer, the documents produced in discovery belie this claim.  As admitted by Movants' own Affiant, Melvin Siecko, and as further shown by the documents attached hereto at Appendix "B", the entity now known as Houston Pipe Line Company LP had at least 2 sales customers in the City of Victoria: CPL and Entex (a/k/a CenterPoint Energy), for which there were at least four separate delivery points: CPL's facility inside the city; and the three Entex "city gate meters" located in or adjacent to City rights of way inside the City limits.

The case law upon which Movants cite to the court and rely upon for the proposition that a single customer within a city is insufficient to establish "distribution" holds that while one may be insufficient, two or more is sufficient.  *See Bullock v. Pioneer Corp.*, 774 S.W.2d 302, 306 (Tex. App. — Austin, 1989, writ denied).  Therefore, by the very case law cited to this court as controlling authority, because Movants did have at least two in-city customers and at least four in-city delivery points.  Further, by virtue of the Movants' admitted deliveries to CPL and Entex, Defendants did in fact "distribute" gas within the City, bringing them within the auspices of the City's street rental ordinance even under the Movants' artificially restrictive reading of the ordinances and the case law.  A broader and more proper reading of both would show that outside the context of an interpretation of a state tax law levied and collected by the State Comptroller's Office, there is no statute or case that directly supports the Movants' contention in this case, i.e., that a Home Rule City cannot assess a street rental or other charge for the use of its streets and rights of way to deliver and sell gas to in-City customers without any express consent or permission form the City to do so and without paying any compensation of any type to the City for such use of its streets and rights of way.

## B. The Fleming case

It is noteworthy that in the Utilities Natural Gas case the Texas Supreme Court does not address use of city streets.  The following year, the Texas Supreme Court in Fleming answered in the negative the question of whether a street use fee is an occupation tax.

In *Fleming v. Houston Lighting & Power*, 138 S.W. 2d 520, opinion on rehearing, 143 S .W. 2d 943 (Tex. 1940), cert. denied, 313 U.S. 560 (1940), the Texas Supreme Court considered a home rule city's ordinance requiring all telephone, telegraph, electric and gas companies using the streets or public places of the city to pay, for the privilege of occupancy, a

4

rental of 4% of gross receipts from business conducted in the city. The court of appeals had invalidated the ordinance based on the interpretation of Article 1436b as a property right and grant from the State, and ruled that the city, without granting the right or possessing a proprietary interest in it, could not impose a charge in the nature of a rental for the use of such grant and rights. The supreme court reversed and held that cities do have "the right to fix charges in the nature of rentals for the use of their streets and other public places by telephone companies carrying on a local business." 138 SW2d at 522. The supreme court also stated that the "ordinance is not invalid merely because it provides for measuring the amount of the rental charge by a percentage of the gross receipts" of business transacted in the city the material inquiry is the reasonableness of the rental charge and not the method used to measure the charge. Id.

On rehearing the supreme court addressed whether the ordinance was in conflict with Article 7060 (construing the same version of the statute that was before the court in Utilities Natural Gas). Article 7060 imposed state occupation taxes on local gas, electric and water utilities in cities, and prohibited a city, "by virtue of its taxing power, police power or otherwise" from imposing an "occupation tax or charge of any sort for the privilege of doing business" by any company paying an occupation tax under Article 7060. The Fleming court stated:

> The ordinance did not impose a charge for the privilege of doing business. Evidence was offered upon the hearing that it would be possible for the Company to carry on its business within the City without the necessity of using its streets, alleys or other public ways.

> We sustained the ordinance upon the ground that same imposed a charge in the nature of a rental The authorities recognize a distinction between a rental charge and a tax or charge for the privilege of doing business. It is clearly pointed out in the leading case of *City of St. Louis vs. Western Union Telegraph Co.*, 148 U.S. 92, 13 S.Ct. 485, 37 L.Ed. 380.

143 SW2d at 924. In the City of St Louis case, the United States Supreme Court considered a city ordinance that required all telegraph and telephone companies to pay, for the privilege of using the streets, alleys and public places of the city, "the sum of five dollars per annum for each pole erected or used by them in the streets, alleys, and public places in said city". Western Union, a telegraph company, challenged the ordinance on the basis, inter alia, that the sum was a privilege or license tax for the privilege of

carrying on business in the city, in part in violation of the United States Constitution. The U. S. Supreme Court stated:

> To determine this question whether the charge is a privilege or license tax], we must refer to the language of the ordinance itself, and by that we find that the charge is imposed. for the privilege of using the streets, alleys, and public places, and is graduated by the amount of such use. Clearly, this is no privilege or license tax. The amount to he paid is not graduated by the amount of the business, nor is it a sum fixed for the privilege of doing business. It is more in the nature of a charge for the use of property belonging to the city, that which may properly be called rental. 'A tax is a demand of sovereignty; a toll is a demand of proprietorship." [ citations omitted]. If the company purchased] ground in the various blocks from private individuals, and to such grounds removed its poles, the section of the ordinance] would no longer have any application to it.

148 U.S. at 97. The Supreme Court found that the subject city ordinance was a lawful rental and not a tax. The court further stated that the treatment of the monies received as revenue by the city:

> does not determine the character of the charge or make it a tax. The revenues of a municipality may come from rentals as legitimately and as properly as from taxes. The city has attempted to make the telegraph company pay for appropriating to its own and sole use a part of the streets and public places of the city. It is seeking to collect rent. So . . . while permission to a telegraph company to occupy the streets is not technically a lease, and does not in terms create the relation of landlord and tenant, yet it is the giving of the exclusive use of real estate, for which the giver has a right to exact compensation, which is in the nature of rental.

Id. It was in response to Fleming that the Legislature in 1941 amended Article 7060 (subsequently recodified in 1959 as Art. 11.03 and now codified at § 182.021 - .026 of the Tax Code) and legislatively authorized a city, at its option, to make a reasonable charge, "whether designated as rentals or otherwise," for use of its streets, capped at the equivalent of 2% of "gross receipts" from in-city sales.

C. History of Article 7060 (now § 182.02 l-.026, Texas Tax Code):

The predecessor of Article 7060 and current Tax Code §§ 182.02 l-.026 was passed in 1907. It imposed a state occupation tax on a variety of businesses and occupations, including local distribution companies and also on gas and

6

oil transmission pipelines. The section imposing an occupation tax on gas and oil transmission pipelines was deleted. in 1920 upon the passage of what was then called the Cox Act, which imposed the gross receipts tax now contained in Chapter 122 of the Texas Utility Code (formerly Articles 6050-6066, Tex. Rev. Civ Stat.). The tax imposed by Chapter 122 at § 122.051 is a state tax on a gas utility of "one-half of one percent of the gross income of the gas utility". This tax is viewed as an occupation tax. *RRC v. Channel Industries Gas Company*, 775 S.W. 2d 503 (Tex. App.—Austin, 1989, writ denied). "Gross income" is the same as "gross receipts" for purposes of this tax. Id. at 505.

The tax is imposed on a "gas utility," which term is defined in the Utility Code at § 122.001(1) by reference to § 121 .001(a)(2) which states, inter alia, that a "gas utility" means a person or company:

> (1) who owns , manages, operates, . . . in this state. . . . a pipeline, plant, facility, franchise, license, or permit for a business that:
>
> * * * * *
>
> (2) owns, operates or manages a pipeline: (A) that is for transporting or conveying natural gas, whether for public hire or not . .

Tax Code Section 182.024 states that no "city. . . may impose an occupation tax or charge of any sort on. a utility company taxed. under this subchapter," "Utility company" is defined at § 182.021(1) as a person "who owns or operates a gas, electric light, electric power or water works used for local sale and distribution located within an incorporated city or town in this state." Notwithstanding this prohibition against levying a tax, Section 182.025 preserves the rights of Texas cities to charge a fee for the use of its streets.

1936 amendments to Article 7060 added the language prohibiting cities from imposing occupation, taxes on utility companies paying occupation taxes to the State under Article 7060. It was this version of Article 7060 that was considered in Fleming. The 1941 amendments stated the prohibition and exception to read as follows:

> No city or other political subdivision of this State, by virtue of its taxing power, proprietary power, police power of otherwise, shall impose and occupation tax or charge of any sort upon any person, corporation or association required to pay an occupation tax under this Article, Nothing is this Article shall be construed as . .impairing or altering in any way the provisions of any contracts, agreements or

7

franchises now in existence or hereafter made between a city and a public utility, relating to payments of any sort to a city. Nothing in this Article shall be construed as prohibiting an incorporated city or town from making a reasonable charge, otherwise lawful, for the use of its streets, alleys, and public ways by a public utility in the conduct of its business, and each such city shall have the right and power; but any such charges, whether designated as rentals or otherwise, and whether measured by gross receipts, units of installation or in any other manner, shall not in the aggregate exceed the equivalent of two (2) percent of the gross receipts of such utility within such municipality derived from the sale of gas, electric energy or water.

In 1981 this statute became Tax Code §§ 182.021-026. The above quoted language from the 1941 amendments was modified and shortened in the codification to read: "The total charges, however designated or measured, may not exceed percent of the gross receipts of the public utility for the sale of gas, electric energy, or water within the city."

A constitutional challenge by a city to the 1941 amendments was defeated in *City of Beaumont v. Gulf States Utilities Co.*, 163 S 426 (Tex. App. — Beaumont 1942, writ ref'd w.o.m.). In that case, the City of Beaumont had enacted a 4% of gross receipts ordinance applying to telegraph, telephone, electric and gas companies for the privilege of using the streets, easements, alleys and other public ways within the city with poles, wires, pipes, and fixtures. The city sued to collect the additional 2% charged by the ordinance, over and above the 2% cap imposed by Article 7060. The city raised various constitutional challenges to the 1941 Omnibus Tax Law (which contained, inter alia in its Article 5, the 1941 amendments), including that it violated the constitutional Home Rule Amendment The court found that no constitutional right of the city was violated by the Omnibus Tax Law, which by its Article 5 limited "its rental charges against appellee to two percent of appellee's gross receipts."

In *City of Corpus Christi v. Southern Community Gas Co.*, 368 S.W.2nd 144 ( Tex. Civ. App. — San Antonio 1963, writ ref'd, n.r.e.), the city sued to recover a street rental fee against a gas company that was operating in an area recently annexed by the city. The court stated that "Art 11.03, Title 122A,. . . recognizes the City's right to levy a street rental fee against public utilities of not to exceed two percent of gross revenues for the utilities' use of the public streets and ways. In the case before this court, it is undisputed that the portion of the City of Victoria where the Movants' pipeline is located has been within the city boundaries for well over 10

8

years. The above cited cases and numerous other Texas cases illustrate the recognition by the courts that cities have the authority to impose charges for the use of their streets. *See, e.g., West Texas Utilities Co. v. City of Baird*, 285 S.W.2nd 185 (Tex. Civ. App — Eastland 1956, writ ref'd, n.r.e.).

D. <u>Home Rule Cities' Powers:</u> Article 1175(2), Tex. Rev. Civ. Stat, the "Home-Rule" statute, states that "A home-rule municipality has the following powers:

\* \* \* \* \*

2.     To prohibit the use of any street, alley, highway or grounds of the city by any . . gas company, or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and upon pa such compensation as may be prescribed and upon such condition as may be provided by such ordinance. . .

       . . .

3.     To have exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city...

       . . .

4.     To control, regulate and remove all obstructions or other encroachments or encumbrances on any public street, alley or ground...

Texas home-rule cities such as Victoria have the full power of self government. This form of government-- unlike counties and unincorporated areas--does not look to state law or other laws for authorization to enact laws or to determine the scope of its authority. Rather, home-rule cities are empowered to enact any law that the state legislature could adopt. The Texas Supreme Court and other Texas courts have consistently observed that a home-rule city "has the power of self-government, that is, full authority to do anything the legislature could theretofore have authorized them to do." *Lower Colorado River Authority v. City of San* Marcos, 523 S.W.2d 641, 643 (Tex. 1975); *see also, Foxwood v. City of Taylor*, 214 SW.2d 282, 286 (Tex. 1948); *State ex rel Rose v. City of La Porte*, 386 S.W,2d 782 (Tex. 1965); *City of Corpus Christi v. Continental Bus Systems, Inc.*, 445 S.W.2d 12 (Tex. Civ. App. – Austin 1969, writ ref'd); *Dallas Merchants & Concessionaires Ass'n v. City of Dallas*, 852 S.W.2d 489 (Tex. 1993); Tex. Const. art. art XI, section 5. Home rule cities such as Victoria do not look to

9

state law for authorization to pass laws, but rather need only determine if state law in some clear and unambiguous manner restricts their inherent power of self governance.

The above state law provisions are consistent with Victoria City Charter provisions (See Appendix "E") in vesting exclusive control over public streets in Victoria under the control of its City Council. Indeed, state law and the city charter provisions are essentially identical. Other state statutes similarly recognize a home-rule city's exclusive control over its public places. For instance, Tex Rev Civ. Stat. art. 1181 provides in pertinent part:

> No charter or any amendment thereof framed or adopted under this charter, shall ever grant to any person, firm or corporation any right or franchise to use or occupy the public streets, avenues, alleys or grounds of any such city, but the governing authority of any such city shall have the exclusive power and authority to make any such grant of any such franchise or right to use and occupy the - public streets, avenues, alleys, and grounds of the city....

This statute makes it patently clear that only the "governing body" of a city is authorized to grant permission for any 'person, firm or corporation to use or occupy a public street, avenue, alley or ground of the city' Thus, unless the "governing authority" grants rights or privileges, no rights or privileges are conveyed.

E. **Judicial Recognition of a Home Rule Cities' Control over Streets:**

The undeniable exclusive control that home rule cities enjoy over their public property and rights of way has been clearly recognized by Texas courts. *See, e.g., City of San Antonio v. United Gas Pipeline Co.*, 388 S.W.2d 231, 234 (Tex. Civ. App.—San Antonio 1965, writ ref'd n.r.e.) (enjoining use of streets by a pipeline transmission company and stating it would be required to obtain a franchise to use city streets to serve a single industrial gas customer). Texas courts have also recognized that while cities have the authority to grant consent to gas companies to lay pipes under public rights of way, they also have right to prohibit or condition such use. Id. Accordingly, unless a person or entity has the permission or consent of a city to place pipes or other structures in, under, above or through public streets, avenues or alleys,, such structures are encroachments or purprestures upon public rights. Texas courts have continually held that a city has the authority to grant permission to prohibit the use by gas pipeline companies

of property located under its streets, alleys and avenues. *See, e.g., Grimes v. Corpus Christi Transmission Co.*, 829 SW.2d 335 (Tex. App.—Corpus Christi 1992, writ denied)

### F.  A pipeline under a street is using the street:

Further, where a company or entity desires to install a pipeline under a street, even if such is achieved by tunneling under the street, this constitutes a "use" of the street that requires a franchise or other express consent of the City.  This point has been made by many Texas courts: *see, e.g., Davis v. State ex rel. Town of Anthony*, 298 S.W2d 219, 221 (Tex. Civ. App—El Paso 1957, writ ref'd, n.r.e.); *United Gas Pipeline Company*, 338 SW2d at 231; *Alamo Carriage Services, Inc. v. City of San Antonio*, 768 S.W.2d 937 941 ( Tex. App.—San Antonio 1989, no writ); *Grimes*, 829 S.W.2d at336-37.

### 3.  Supporting Evidence:

This response is supported by the following summary judgment evidence which is attached hereto and incorporated herein by reference for all purposes:

> Appendix "A," the Affidavit of  Kenneth E. Gill, City Engineer for the City of Victoria, Texas, and the attached and verified exhibits thereto;
>
> Appendix "B," containing Bates stamped documents nos. "City 00783-793" and "City 00602-604," as produced by Plaintiff to Defendants in response to discovery in this case;
>
> Appendix "C," "Defendant Houston Pipe Line Company LP's Objections and Responses to Plaintiff's First Requests for Admissions," containing the excerpted portion thereof that reflects Defendant's responses to Request Nos. 1 through 12;
>
> Appendix "D," containing excerpted portion of Texas Constitutional and statutory laws applicable to this case;
>
> Appendix "E," excerpted portions of the Victoria City Charter and Code of Ordinances;
>
> The complete, condensed deposition transcript of Defendant's representative, Melvin Siecko, separately and contemporaneously filed in this case with  Plaintiff's "Notice of Filing of Summary

11

Judgment Evidence," including copies of all the depositions exhibits thereto; and

Plaintiff's Motion for Partial Summary Judgment filed in this case on September 16, 2005.

4. Conclusion:

The supreme court and the legislature have validated specifically the right of a city to impose a reasonable charge, capped by statute at a maximum of 2%. The Texas Supreme Court held in Fleming that cities could impose charges in the nature of rentals for the use of streets in carrying on a local business, that such charges would not be invalid because they were measured by gross receipts, and declared that the charge was a rental and not a tax in the nature of an occupation tax or tax on the privilege of doing business. Subsequent cases addressing rental charges have cited Fleming as well-settled law that cities can impose reasonable charges for the use of streets. Plaintiff's reliance upon a pre-Fleming case addressing only the applicability of a state tax law, not a local street rental ordinance and not addressing the right of a municipality to require and receive compensation for the use of city streets by a gas pipeline company and its related entities, is not dispositive of this issue. Further, Movants have not and cannot dispute the fact that by their own admission they actively use the City's street to transport, sell and deliver natural gas via a pipeline system without the consent of or payment of any compensation to the City.

WHEREFORE, Plaintiff, The City of Victoria, Texas, requests that Defendants' Motion for Summary Judgment be in all things denied, that Plaintiff's Motion for Partial Summary Judgment be granted, and that the Court grant Plaintiff such other and further relief to which it is justly entitled, at law or in equity.

Respectfully submitted,

Emmett Cole, Jr.
State Bar No. 00795885
Cole, Cole & Easley, P.C.
302 W. Forrest
P.O. Box 510
Victoria, TX 77902-0510

12

Tel: (361) 575-0551
Fax: (361) 575-0986
and


**Paul D. Andrews, P.C.**
5959 South Staples Ste. 228A
Corpus Christi, TX 78413
Tel: (361) 658-6296
Fax: (361) 994-9801

By: _____
      Paul D. Andrews
      State Bar No. 01248600

      Attorneys for
      Plaintiff/Respondent,
      The City of Victoria


## Certificate of Service

I certify that a true copy of the above and foregoing and the attached Appendices "A" through "E" hereto were served on each attorney of record for each party  by hand delivery, fax transmission, and/or via certified mail, return receipt requested, in accordance with the Texas Rules of Civil Procedure, on or before the 30th day of September, 2005.


_____
Paul D. Andrews

# APPENDIX
# A

NO. 03-6-59,833-C

| | | |
|---|---|---|
| CITY OF VICTORIA | § | IN THE DISTRICT COURT OF |
|     Plaintiff, | § | |
| vs. | § | VICTORIA COUNTY, TEXAS |
| HOUSTON PIPELINE COMPANY, et al | § | |
|     Defendants. | § | 267th JUDICIAL DISTRICT |

### AFFIDAVIT OF KENNETH E. GILL

Kenneth E. Gill, "Affiant," appeared in person before me today and stated under oath:

"My name is Kenneth E. Gill.. I am over the age of 21 and am legally competent in all ways to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

I am a professional engineer registered by the State of Texas. I am employed by the City of Victoria, Texas (the "City.") I work in the Public Works Department of the City and my job title is City Engineer. In my capacity as a City Engineer in the Public Works Department, I have become personally familiar with the city boundaries, the city owned property both inside and outside of the city limits, and the location of City streets, alleys, drainage ditches, water and sewer lines and other City owned or controlled rights of way and pubic property. ram familiar with the original four league grant property owned by the City, including those portions outside of the current City limits,

I have reviewed and am familiar with the map provided to the City by the Houston Pipeline company through its attorneys during the discovery process in this lawsuit, a true and correct copy of which is attached hereto as Exhibit "A." I was personally involved in the eff0lls of the City to apply the information from such map to create a new and current map that depicts such pipeline in relationship to the City boundaries and City rights of way. In the process of doing this, I have reviewed City records which included maps showing the property covered by the original four league grant to the City during the nineteenth century, the location and date of annexations ¨into the city during the past decades, maps showing the currentl1ames and locations of city streets and rights or way, maps of the City created by aerial photography, and maps of gas

and petrochemical pipelines in and near the City obtained from the computer files and records of the Texas Railroad Commission, which is the Texas state agency that has maintains maps, records and reports of, among other things, intrastate natural gas pipelines such as the HPL facilities.

I have also earlier this year personally participated in a "walk through" by which the actual physical locations of HPL's above ground pipeline facilities, such as meters, signs, sheds, and related facilities, were observed and photographed. I am familiar with and can verify that the photographs which have been copied and attached as Exhibit "B" are accurate depictions of certain HPL above ground pipelines, signs, meters, sheds and related facilities inside the city.

I have participated in the creation of a map utilizing and combining the information obtained from these sources, a true and correct copy of which map is attached hereto as Exhibit "C." This map (Exhibit "C") accurately depicts to the best of the City's ability, absent global positioning data, which has not been received from HPL, the present location of the HPL pipeline facilities, both those that are located underground and with regard to the related above ground facilities such as meters, signs and buildings that are located in, along, under and/or across the city streets and other City rights of way which are listed and identified in a chart verified by me to be a true and correct, a copy of which is attached hereto as Exhibit "D."

I am also familiar with and have reviewed certain City ordinances, easements and permits granted at various times over the last several years that address certain limited portions of the HPL pipelines and related facilities located in or near City rights of way that are or were at the time owned by Houston Pipeline Company or its predecessors in interest ("HPL"), true and correct copies of which are attached hereto as Exhibit "E." The four documents attached as Exhibit "E" are the only agreements with or consent by the City known to exist which address any portion of HPL's pipeline system that is located within the City limits.

I hereby attest and aver that HPL has an underground series of natural gas pipelines and related above

ground facilities including meters, sheds, signs and other physical facilities which are located within the City rights of way listed in Exhibit "D" and for which no official City consent, easement or permit has ever been issued or enacted, save and except for the specific portions of the current HPL facilities that are expressly identified and made the subject of the documents contained in the attached Exhibit "E." Specifically, the only City streets or rights of way made subject of the Exhibit "E" agreements are those specific street highlighted in bold face type on Exhibit "D." No City permit, consent or agreement exists as to any of the other streets listed on Exhibit "D."

As an employee of the City Public Works Department and a Professional Engineer, I am also familiar with the nature and attributes of natural gas and natural gas pipelines, including the fact that natural gas transport via an underground pipeline can pose a public safety and security risk and can create a fire or explosion hazard, particularly if any digging or other construction activity occurs in the vicinity of such pipeline. Consequently, it is important that the City, for reasons of public health, safety and security, have up to date and complete and accurate knowledge of the exact location of any natural gas pipeline facilities located in or near the City. However, at the time this lawsuit was initiated in 2003, the City had received nothing from HPL or its predecessors that identified the specific location of all of HPL's pipelines and related facilities within the City. In fact, it was not until the map of such facilities that is attached as Exhibit "C" was created that the specific City rights-of-way occupied without consent by HPL's facilities could be determined and specifically identified and listed."

Further affiant sayeth naught.

Signed on the 16 day of September, 2005, by:

Kenneth E. Gill

Kenneth E. Gill, Affiant

State of Texas                              §
County of Victoria                          §

    SIGNED under oath before the me, undersigned notary public, by Affiant, Kenneth E. Gill, on this 16th day of September, 2005.



Deborah Rains

Notary Public, State of Texas

original color
map product
NCRI HPL



Exhibit "A"
to Kenneth E. Gill
Affidavit

Exhibit "A"

Exhibit "B"
to Kenneth C. Gill Affidavit





















Exhibit "C"

Edw. my title "N..." "Phalie"

## Exhibit "D" to

## Affidavit of Kenneth E. Gill

STATE OF TEXAS
COUNTY OF VICTORIA:

I, Kenneth E. Gill, City Engineer, on oath swear that the following statements are true and are within my personal knowledge:

"The AEP/HPL Gas Pipeline appears to lie within the limits of street right-of-way or drainage easement owned by the City of Victoria, a Texas municipal corporation, at the approximate locations and distances described as follows:

"

| Direction | Street | Crossing distance in feet | Following distance in feet |
|---|---|---|---|
| Crosses | Wharf | 55 | |
| Crosses | Charles | 51 | |
| Crosses | Senecio | 55 | |
| Crosses | Elder | 52 | |
| Crosses | Willow | 55 | |
| Crosses | Peachtree | 55 | |
| Crosses | Bottom | 70 | |
| Follows | Grant | | 280 |
| Crosses | Lincoln | 50 | |
| Follows | Grant | | 280 |
| Crosses | Garfield | 45 | |
| Crosses | Hand Rd. | 45 | |
| Crosses | South Outfall ((labeled on map as "Jim Branch Outfall") | 85 | |
| Crosses | Laurent St. | 90 | |
| Crosses | E. Juan Linn | 73 | |
| Crosses | Port Lavaca Hwy | 100 | |
| Crosses | S. Ben Jordan | 105 | |
| Crosses | E. North | 105 | |
| Crosses | Raab | 55 | |
| Follows | North | | 2,620 |
| Crosses | S. Ben Wilson | 150 | |
| Follows | North | | 1,130 |
| Crosses | Lova | 65 | |
| Follows | Hanselman Rd. | | 1,580 |
| Follows | Delmar | | 150 |
| Crosses | Delmar | 75 | |
| Follows | Delmar | | 2,318 |
| Crosses | Lone Tree | 75 | |
| Follows | Delmar | | 1,183 |
| Crosses | Allendale | 52 | |
| Follows | Delmar | | 1,414 |
| Crosses | E. Rio Grande | 52 | |

L:\LITIGATE\GAS PIPELINES\AEP Gas Pipeline - Four League Grant Affidavit I (4).doc

| Crosses | Delmar | 85 | |
| Follows | Delmar | | 935 |
| Crosses | Sonoco | 66 | |
| Follows | Delmar | | 565 |
| Crosses | John Stockbauer | 120 | |
| Crosses | Zac Lentz Parkway | 540 | |
| Crosses | Burroughsville | 45 | |
| Crosses | Houston Hwy | 142 | |
| (Crosses - Second Side) | (Houston Hwy) | 142 | |
| Crosses | Lone Tree Road | 60 | |
| Crosses | Houston Hwy | 375 | |
| Total | | 3,190 | 12,455 |
| Total Distance of Pipeline in City Right-of-Way (feet) | 15,645 | | |

_Kenneth E. Gill_
Kenneth E. Gill, Affiant

STATE OF TEXAS
COUNTY OF VICTORIA:

SIGNED under oath before me on the 16th day of September, 2005.

_Deborah Rains_
Notary Public

DEBORAH RAINS
Notary Public, State of Texas
My Commission Expires
August 12, 2008

**Exhibit "D" Page 2 of 2**



**EASEMENT AGREEMENT**

THE STATE OF TEXAS      §

COUNTY OF VICTORIA      §

KNOW ALL MEN BY THESE PRESENTS

THIS AGREEMENT, made and entered into as of this ___6th___ day of November, 1987, by and between HOUSTON PIPE LINE COMPANY, a Texas corporation, hereinafter referred to as "Houston", and CITY OF VICTORIA, TEXAS, a municipal corporation, hereinafter referred to as "City".

WITNESSETH:

WHEREAS, Houston acquired a pipeline easement from Nazareth Academy by an instrument dated May 26, 1925, filed of record in Volume 108, Page 629 of the Deed Records of Victoria County, Texas; and

WHEREAS, City desires to construct and extend a roadway known as John Stockbauer Drive, hereinafter referred to as "Roadway" across a portion of Houston's easement and pipeline located therein and desires to obtain the authority and right from Houston to use a part of the easement surface area to construct such Roadway over and across said above-mentioned easement; and

WHEREAS, Houston is willing to grant to City the right and authority to make use of such part of the surface of the easement area for the purposes and uses herein expressly stated, subject to certain conditions and agreements.

NOW THEREFORE, for and in consideration of the premises and of the mutual agreements by and between the parties hereto, as well as the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration paid by City to Houston, the receipt and sufficiency of which are hereby acknowledged and confessed, Houston hereby grants and conveys, insofar as Houston has a right to do so, to City the right to construct a roadway across Houston's said easement in Victoria County, Texas; this grant however, being subject to the following conditions and agreements between the parties, to-wit:

1. Houston shall, at the sole cost and expense of City, install or cause to be installed, approximately one hundred (100) feet of 24-inch O.D. split casing on Houston's Swinney Switch-Edna 18-inch pipeline that will be crossed by Roadway, all such work to be in accordance with standard specifications and at the expense of City. Houston estimates that the total cost for said installation shall be approximately Twenty Eight Thousand Dollars ($28,000.00), which amount has been this day delivered to Houston by City; however, it is agreed by Houston and City that City shall pay the actual cost of such installation whether more or less than Twenty Eight Thousand Dollars ($28,000.00) and

additional payments, or returns of a refund to City, as appropriate, shall be made within ninety (90) days of completion of such work.

2. Houston agrees to perform inspection and maintenance work in connection with its pipeline in a manner that minimizes, to the extent reasonably possible, damage to and interference with the use of the Roadway. In the event excavation of the Roadway is necessary, Houston agrees to backfill the excavated area at its expense upon completion of its operation, and City agrees to perform such other work as it deems necessary to restore the condition of the Roadway.

3. City agrees to indemnify and hold Houston harmless from and against all claims, losses, expenses or causes of action arising out of the negligence of City, its agents, servants, employees or contractors with relation to Houston's pipeline. Houston agrees to indemnify and hold City harmless from and against any and all claims, losses, expenses or causes of action arising out of the negligence of Houston, its agents, servants, employees or contractors with relation to Houston's pipeline.

4. The terms, conditions and agreements hereof shall bind each of the parties hereto and their successors and assigns.

5. This agreement shall only amend the above referenced pipeline easement of Houston in the particulars herein provided and shall not be deemed to have replaced or cancelled such pipeline easement.

IN WITNESS WHEREOF, the parties hereto through their authorized officers have executed this instrument on the day first above written.

HOUSTON PIPE LINE COMPANY

By: _____
    Agent and Attorney in Fact

CITY OF VICTORIA, TEXAS

By _____
   James J. Miller, City Manager

THE STATE OF TEXAS        §

COUNTY OF HARRIS        §

BEFORE ME, the undersigned authority, on this day personally appeared _____, Agent and Attorney-in-Fact of the HOUSTON PIPE LINE COMPANY, a corporation, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein set forth and as the act and deed of said corporation.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 6th day of November, 1987.

Carolyn S. Miller
Notary Public in and for the
State of Texas

CAROLYN S. MILLER
NOTARY PUBLIC IN AND FOR HARRIS COUNTY, TEXAS
MY COMMISSION EXPIRES 3-31-90

THE STATE OF TEXAS        §

COUNTY OF VICTORIA        §

BEFORE ME, the undersigned authority, on this day personally appeared James J. Miller, City Manager of the CITY OF VICTORIA, TEXAS, a municipal corporation, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein set forth and as the act and deed of said corporation.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 3rd day of November, 1987.

Notary Public in and for the
State of Texas

BEVERLY J. HORADAM
My Commission Expires 10-31-88



ORDINANCE NO. 62-25

AN ORDINANCE GRANTING THE HOUSTON PIPE LINE COMPANY
THE RIGHT AND PRIVILEGE TO CONSTRUCT AND PLACE A
NATURAL GAS PIPE LINE UNDER AND ALONG STREETS AND
ALLEYS AS SHOWN ON ATTACHED MAP MARKED EXHIBIT "A"

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF VICTORIA:

Section 1:  The City of Victoria does hereby grant unto the

Houston Pipe Line Company, its successors and assigns, the right and

privilege to construct and put in place the following:

A natural gas pipe line under streets and alleys as follows:

See map attached marked Exhibit "A".

Section 2:  In consideration of the installation and construction

of the gas pipe line by the Houston Pipe Line Company, the conditions

and terms of this privilege are as follows:

a.  Said streets and other properties of the City of Victoria

affected by said construction are to be promptly restored by the Houston

Pipe Line Company to as good condition as before working thereon and to

the reasonable satisfaction of the Chief of Engineering.

b.  The Houston Pipe Line Company shall construct said pipe line

in such a manner as not to interfere with the use of said streets by the

traveling public.

c.  The Houston Pipe Line Company shall indemnify and hold harm-

less the City of Victoria from any and all claims for injuries and damages

to persons or property occasioned by or arising out of the construction,

maintenance, operation, or repair of said pipe line; and all expenses

incidental to the defense of any such claims or actions based upon or

arising out of damage or injury (including death) to persons or property

caused or sustained in connection with the performance of the privilege

or by conditions created thereby, and among other things, if requested

by the City, to assume, without expense to the City, the defense of any

such claims or actions.

d.  If the City, in constructing, maintaining or repairing its

streets, avenues, thoroughfares, etcetera, or its sewers or other public

works, should require any pipe or pipes of Grantee to be shifted, removed

or relocated, such pipe or pipes, after written notice of such requirements,

shall be promptly shifted, removed and relocated by Grantee at its own

expense when so required by the City.

e.  This privilege may be repealed at the discretion of the City Council for non-compliance of the Houston Pipe Line Company with any provision, condition, or stipulation contained herein.

Section 3:  This ordinance shall be effective only after final adoption by the City Council and its approval by the Mayor of the City of Victoria, Texas.

PASSED FIRST READING, this the 17 day of September, 1962.

PASSED SECOND READING, this the 1st day of October, 1962.

APPROVED AND ADOPTED, this the 15th day of October, 1962.

Joe E. Kelly, Mayor of the
City of Victoria, Texas

ATTEST:

T. L. Davis, City Secretary

APPROVED AS TO FORM:

Robert J. Seerden, City Attorney

2