Sec. 182.025. Charges by a City.

(a) An incorporated city or town may make a reasonable lawful charge for the use of a city street, alley, or public way by a public utility in the course of its business.

(b) The total charges, however designated or measured, may not exceed two percent of the gross receipts of the public utility for the sale of gas, electric energy, or water within the city.

* * * * *

**Sec. 182.026. Subchapter Not Applicable**

(a) This subchapter does not apply to a utility company owned and operated by a city, town, county, water improvement district, or conservation district.

**(b) This subchapter does not:**

(1) affect collection of ad valorem taxes; or

(2) impair or alter a provision of a contract, agreement, or franchise made between a city and a public utility company relating to a payment made to the city.

## Texas Utilities Code

### § 121.001. Definition of Gas Utility

(a) In this chapter, "gas utility" means a person who owns, manages, operates, leases, or controls in this state property or equipment or a pipeline, plant, facility, franchise, license, or permit for a business that:

(1) transports, conveys, distributes, or delivers natural gas:

(A) for public use or service for compensation;

(B) for sale to municipalities or persons engaged in distributing or selling natural gas to the public, in a situation described by Subdivision (3);

(C) for sale or delivery to a person operating under a franchise or contract with a political subdivision of this state; or

(D) for sale or delivery to the public for domestic or other use;

(2) owns, operates, or manages a pipeline:

(A) that is for transporting or carrying natural gas, whether for public hire or not; and

(B) for which the right-of-way has been or is hereafter acquired by exercising the right of eminent domain; or

(3) produces or purchases natural gas and transports or causes the transportation of natural gas by a pipeline to or near the limits of a municipality in which the gas is received and distributed or sold to the public by another gas utility or by the municipality in a situation in which the business is the only or practically the only agency of supply of natural gas to the gas utility or municipality.

(b) In this subchapter, "person" means an individual, company, or private corporation and includes a lessee, trustee, or receiver of an individual, company, or private corporation.

### § 181.004. Condemnation of Property

A gas or electric corporation has the right and power to enter on, condemn, and appropriate the land, right-of-way, easement, or other property of any person or corporation.

### § 181.005. Authority to Lay and Maintain Lines

A gas corporation has the right to lay and maintain lines over and across a public road, a railroad, railroad right-of-way, an interurban railroad, a street railroad, a canal or stream, or a municipal street or alley.

### § 181.006. Consent Required in Municipality

A gas corporation may exercise authority under Section 181.005 in relation to a municipal street or alley with the consent of and subject to the direction of the governing body of the municipality.

### § 181.021. Definitions

In this subchapter:

(1) "Gas facility" means a pipe, main, conductor, or other facility or fixture used to carry gas.

(2) "Gas utility" means a person, firm, corporation, or municipality engaged in the business of transporting or distributing gas for public consumption.

## § 181.022. Authority to Lay and Maintain Gas Facility

A gas utility has the right to lay and maintain a gas facility through, under, along, across, or over a public highway, a public road, a public street or alley, or public water.

## § 181.023. Consent Required in Municipality

A gas utility may exercise authority under Section 181.022 in a municipality with the consent of and subject to the direction of the governing body of the municipality.

## § 181.026. Effect of Municipal Incorporation on Gas Facility Previously Laid

A gas utility having a gas facility located in an area that becomes incorporated after the facility is in place may continue to exercise in that area the authority granted by this subchapter until the 10th anniversary of the date of the incorporation without the consent of but subject to the direction of the governing body of the municipality.

# APPENDIX E

# CHARTER

## ARTICLE I. INCORPORATION, GENERAL POWERS, AND BOUNDARIES

### Section 1. Incorporation and name.

All the inhabitants of the City of Victoria, Victoria County, Texas, as the boundaries and corporate limits of said city were established by the qualified voters of the City of Victoria at an election held on the 5th day of October, 1915, and as extended by ordinances of the City of Victoria enacted subsequent thereto, shall continue to be and are hereby constituted a body politic, incorporated under and to be known by the name and style of the "CITY OF VICTORIA," with full power of local self government. The City of Victoria, sometimes referred to in this Charter as the "City," shall have such powers, privileges, rights, duties, and immunities as are provided in this Charter.

### Section 2. General powers of municipality, separation of legislative and executive functions.

The City of Victoria shall have all the powers granted to cities by the Constitution and laws of the State of Texas, together with all the implied powers necessary to carry into execution such granted powers. All powers of the City of Victoria granted under the provisions of the Constitution and laws of the State of Texas and of this Charter, subject only to the limitations imposed by such Constitution, laws, and Charter, shall be vested in and exercised by an elective governing body, referred to in this Charter as the "City Council," which shall enact legislation, fix and determine policies, adopt budgets, and make such appointments to office as provided in this Charter. The executive functions of the City shall be administered by the Chief Executive Officer who shall be known as the City Manager and who shall execute the laws and administer the government of the City of Victoria.

### Section 3. Enumeration of powers in general.

The City of Victoria, in the exercise of the powers granted to cities by the Constitution and laws of the State of Texas, together with all such implied powers as may be necessary to exercise such granted powers, may sue and be sued; may adopt and use a corporate seal; may contract and be contracted with; may acquire property within or without its corporate limits by purchase, gift, devise, lease, or condemnation, and subject to provisions of this Charter, may sell, lease, mortgage, hold, manage, and control such property as may now or hereafter be owned by the City; may in cooperation with the government of the State of Texas, or any agency or political subdivision thereof, or in cooperation with the government of the United States of America or any agency thereof, accomplish any lawful purpose for advancement of the general welfare, health, morals, and safety of the City and its inhabitants; may enact and enforce all ordinances necessary to protect health, life and property, to prevent and summarily abate and remove all nuisances, and to preserve and enforce good government, order, and security of the City and its inhabitants, provided that no ordinance shall be enacted inconsistent with the Constitution and laws of this State, or inconsistent with the provisions of this Charter. In addition to the powers enumerated herein, and subject only to the limitations imposed by the Constitution and laws of this State and by this Charter, the City of Victoria shall have each and every power, without the necessity of its express enumeration in this Charter, which the people of the City are empowered in accordance with the Constitution of Texas or any amendment thereto by election to grant to or confer upon the City by expressly and specifically granting and enumerating such powers in this Charter.

### Section 4. Power to hold property, vesting of titles.

The City of Victoria shall have power to hold by gift, deed, devise or otherwise, any character of property, including any charitable or trust fund, plead and be impleaded in all courts, and to act in perpetual succession as a body politic. All real estate owned in fee simple, or held by lease, sufferance, easement, or

## LICENSES, TAXES AND REGULATIONS

### TELEPHONE COMPANIES

**Sec. 14-111. Inspection or street rental fee on telephone companies--Amount, payment date.**

The telephone company shall pay to the city an annual inspection fee and service charge in an amount equal to two (2) per cent of the gross receipts for the preceding year received by the telephone company from the rendition of local exchange telephone transmission service within the city. Amount of two (2) per cent of the gross receipts shall constitute compensation to the city for the expenses incurred and services rendered by the city in exercising its police power of regulation and supervision over the construction and location of the telephone company's poles, wires, conduits, equipment and other facilities in the streets, alleys, highways and public grounds of the city, and shall be due and payable on the first day of April of each year for the preceding calendar year.

(Code 1960, § 27-2)

**Sec. 14-112. Same--In lieu of taxes and charges.**

During the continuance of section 14-111 and so long as the telephone company shall pay to the city the percentage of its gross receipts aforesaid, the city agrees that such payment shall be received by it in lieu of any tax, license, charge, fee, street or alley rental, or other character of charge for use and occupancy of streets, alleys and public places of the city; in lieu of any pole tax or charge; in lieu of any easement or franchise tax, whether levied as an ad valorem, special, or other character of tax; and in lieu of any imposition other than the usual general or special ad valorem taxes now or hereafter levied. Should the city not have the legal power to agree that the payment of the percentage of gross receipts herein provided for shall be in lieu of the taxes, licenses, charges, fees, rentals, and easement or franchise taxes aforesaid, then the city agrees that it will apply so much of such payment of percentage of gross receipts as may be necessary to the satisfaction of the telephone company's obligations, if any, to pay any such taxes, licenses, charges, fees, rentals, and easement or franchise taxes.

(Code 1960, § 27-3)

**Sec. 14-113. Same--Change of location of poles.**

During the continuance of section 14-111, the city council shall have the right to direct the removal or change of location of any pole belonging to the telephone company and located on the city's alleys or public grounds within the city, and the telephone company hereby agrees within sixty (60) days from the date of the receipt of such notice to effect such removal or change at the company's own cost and expense.

(Code 1960, § 27-4)

**Sec. 14-114. Same--No effect on city's right to use facilities.**

Nothing contained in section 14-111 through 14-113 shall extinguish, abrogate, or modify any existing arrangement whereby the city is permitted to use pole, conduit or duct space on poles and in conduits of the telephone company for the city's fire-alarm, traffic-control and police-call systems.

(Code 1960, § 27-5)

**Sec. 14-115. Street rental on gas and electric companies--Semiannual reports.**

Each person owning, operating, managing, or controlling any gas, electric light, or electric power plant located within the city and used for local sale and distribution in the city, and charging for such gas, electric lights or electric power and using the streets, alleys or public ways of the city in the conduct of such business, shall, within thirty (30) days after the thirtieth day of September and the thirty-first day of March of

[text obscured by redaction] ...a report of... ...president, treasurer, or ...corporation or association... ...the gross amount received from such ...company in the payment of charges for... gas, electric lights or electric power for the six (6) months preceding each of such dates.

(Code 1960, § 27-6)

### Sec. 14-116. Same—Amount, payment.

Each person owning, operating, or controlling any gas, electric light, or electric power plant located within the city, and used for local sale and distribution in the city, and charging for such gas, electric lights or electric power and using the streets, alleys or public ways of the city in the conduct of such business at the time of filing of such report, as required under section 14-115, shall pay to the city a rental of two (2) per cent of the gross receipts received by such person from the sale of gas, electric lights or electric power derived from consumers of such gas, electric lights or electric power located within and used within the city for the six (6) months preceding the thirtieth day of September and the thirty-first day of March each year, excluding from the gross receipts all amounts paid to any person by the city or other governmental agency, which sum shall be paid to the city secretary who shall thereupon deliver to the person paying same a receipt for the amount so paid as rental.

(Code 1960, § 27-7)

### Sec. 14-117. Height of overhead wires.

It shall be the duty of every person owning or controlling a telegraph or telephone, or other overhead communication wires, within the city to have such wires placed at least eighteen (18) feet from the ground.

(Code 1960, § 27-8)

### Sec. 14-118. City use of poles, structures or conduits in city owned or controlled property.

(a) The city, for municipal public purposes, shall be authorized to attach and place wires, lines, and other facilities to and in any pole, structure, or conduit that is located in or on property within a right-of-way either the dominant or subservient estate of while it is owned or controlled by the city, regardless of the ownership of the pole or other structure.

(b) It shall be unlawful for any person, including but not limited to the owner of a pole, structure or conduit or an agent of such owner, to interfere with such city-installed wire, line or other facility. It shall be an affirmative defense to prosecution pursuant to this subsection that a legally licensed or franchised entity removed a city-owned line, wire or other facility in compliance with subsections (c) or (d).

(c) An entity with a license or franchise to use the property upon which its facilities are placed may remove any city-installed wire, line or facility that in fact interferes with said entity's provision of legally licensed or franchised services to its customers. Prior to the removal or interference with any such interfering city-owned wire, line or facility, the licensed or franchised entity must provide notice to the city of the reason for removal and give the city at least thirty (30) days to relocate the city's interfering facility.

(d) This section shall not apply to the extent it is limited by any provision of a legally executed and valid franchise agreement that specifically addresses the attachment of city-owned wires, lines or other facilities to the poles, structures or conduits of a franchisee.

(Ord. No. 2001-11, § 1, 7-24-01)

Secs. 14-119—14-129. Reserved.

### ARTICLE IX. SEXUALLY ORIENTED BUSINESSES*

CHAPTER 16 OIL AND GAS WELLS
ARTICLE VII. PERMANENT SITE IMPROVEMENTS
Sec. 16-71. Registration of pipelines.

### Sec. 16-71. Registration of pipelines.

All pipelines must be registered, and plans submitted to the engineering director. The engineering director must also be notified at least forty-eight (48) hours in advance of any proposed hydrostatic testing of pipelines.

(Ord. No. 88-28, § 1, 1-3-89)

### Sec. 16-72. Installation of new pipelines.

All pipeline plans must be prepared by a registered professional engineer and shall be submitted to the engineering director for his review. No pipelines shall be installed in public easements or rights-of-way unless a "joint use agreement" is submitted to, and approved by, city council.

(Ord. No. 88-28, § 1, 1-3-89)

### Secs. 16-73, 16-74. Reserved.

## ARTICLE VIII. OIL AND GAS BOARD

### Sec. 16-75. Board established; members.

There is hereby established an oil and gas board, which shall hear requests for variances from the requirements of this chapter. The board shall be composed of five (5) members appointed by city council as follows:

(1) The chairperson of the board shall be a member of the Victoria Planning Commission.

(2) Two (2) of the remaining members shall be members of the general public having no connection with the oil and gas industry.

(3) The two (2) remaining members shall be selected from a list of persons nominated by the local chapter of the American Petroleum Institute.

(Ord. No. 88-28, § 1, 1-3-89)

### Sec. 16-76. Terms of office.

Members of the board shall be appointed for terms of three (3) years, and may succeed themselves. Vacancies on the board, however, brought about, shall be filled for the remainder of the respective term by appointment by the city council.

(Ord. No. 88-28, § 1, 1-3-89)

### Sec. 16-77. Officers.

The board shall annually elect a vice chairman and secretary. In the absence of the chairman, the vice chairman shall act in place of the chairman on any matter on which action of the chairman is required.

ARTICLE V. REVENUES AND EXPENDITURES

Section 9. Revenue bonds.

### Section 9. Revenue bonds.

The City of Victoria shall have power to borrow money for the purpose of constructing, purchasing, improving, extending, or repairing of public utilities, recreational facilities, or facilities for any other self-liquidating municipal function not now or hereafter prohibited by any general law of the State of Texas, and to issue revenue bonds to evidence the obligation thereby created. Such bonds when issued shall be a charge upon and payable solely from the properties acquired, or interest therein, and the income therefrom, and shall never be a debt of the City of Victoria. All revenue bonds issued by the City shall be authorized first by a majority of the qualified electors voting at an election held for such purpose. The City Council shall have authority to provide for the terms and form of any purchase agreement, contract, mortgage, bond or document desired or necessary for the issuance of revenue bonds and the acquisition and operation of any such property or interest.

### Section 10. Interest and sinking fund.

The City Council shall levy an annual tax sufficient to pay the interest and provide the necessary sinking fund required by law on all outstanding general obligation bonds of the City of Victoria. The interest and sinking fund shall be deposited in a separate account and shall not be diverted to or used for any other purpose than to pay the interest and principal on such bonds. The sinking fund maintained for the redemption of any debt may be invested in any interest bearing bond of the United States of America, the State of Texas, the City of Victoria, or in any other investment authorized by law.

### Section 11. Sale of bonds by City Council.

No bonds issued by the City of Victoria shall be sold for less than par value and accrued interest, and such bonds shall be sold only upon bids received and considered by the City Council, submitted in response to public advertisement therefor, but the City Council shall have the right to reject any or all bids submitted.

## ARTICLE VI. PUBLIC UTILITIES AND FRANCHISES

### Section 1. Grant of franchise must be express, by City Council.

The provision of this Charter shall never grant to any person, firm, or corporation any right or franchise to use or occupy the public streets, avenues, highways, sidewalks, alleys, parks, public squares, or public grounds of the City of Victoria, but the City Council shall have the exclusive power and authority to make such grants of any franchise or right to use and occupy the public streets, avenues, highways, sidewalks, alleys, parks, public squares, and grounds of the City. The right of control and use of the public streets, avenues, highways, sidewalks, alleys, parks, public squares, and grounds of the City is hereby declared to be inalienable by the City of Victoria, except by ordinances duly adopted by the City Council not in conflict with provisions of this Charter; and no act or omission by the City Council, or by any officer or agent of the City, shall be construed to grant, renew, extend, or amend by estoppel or indirection any right, franchise, or easement affecting the public streets, avenues, highways, sidewalks, alleys, parks, public squares, public places and other real property of the City of Victoria.

### Section 2. No right to franchise without grant, rates and regulations by City Council.

The City of Victoria shall have the power to prohibit the use of any street, avenue, highway, sidewalk, alley, park, public square, or grounds of the City by any telegraph, telephone, electric light, electric power, street railway, interurban railway, gas company, or any other character of public utility, without there first being obtained the consent of the City Council expressed by ordinance, and upon paying such compensation as

may be prescribed and upon such conditions as may be provided by any such ordinance. The City shall have power to determine, fix, and regulate charges, fares, or rates of any person, firm, or corporation enjoying, or that may enjoy, the franchise, or exercising any other public privilege in the City of Victoria; and to prescribe the kind of service to be furnished by such person, firm, or corporation, and the manner in which it shall be rendered; and from time to time to alter or change such rules, regulations, and compensations.

**Section 3. How franchise ordinances are passed, term limited to fifteen years.**

The City Council shall have power by ordinance to grant, renew, and extend all franchises of all public utilities of every character operating within the City of Victoria, and may amend such franchise with consent of the holder. The City Council shall have no power to grant, renew or extend any franchise for an indeterminate period or term, and no franchise shall be granted for a term of more than fifteen years. Every ordinance granting, renewing, extending, or amending a public utility franchise shall be read at three regular meetings of the City Council, and shall not be finally passed until thirty days after the first reading. Within seven days following each of the three readings of the ordinance, the full text thereof shall be published one time in some newspaper of general circulation in the City of Victoria, and the expense of such publication shall be borne by the utility seeking the franchise. No ordinance granting, renewing, extending, or amending a public utility franchise shall become effective until the expiration of sixty days following the date of its final adoption by the City Council. No public utility franchise, after being granted by the City Council, shall be transferred by the holder, except upon the approval of the City Council expressed by ordinance.

**Section 4. Safeguards for public with respect to franchise holders and other public utilities.**

Regardless of whether so provided in the franchise ordinance, every grant, renewal, extension, or amendment of a public utility franchise shall be subject to, and every holder of such franchise accepts such grant, renewal, extension, or amendment subject to, the right of the City Council in the respects hereinafter mentioned, and every other public utility operating in the City shall be subject to the right of the City Council to do the following:

    (1) To forfeit any such franchise by ordinance at any time for failure of the holder to comply with the terms of the franchise, such power to be exercised by the City Council only after due notice and hearing.

    (2) To impose reasonable regulations to insure safe, efficient, and continuous service to the public.

    (3) To require such expansion and extension of plants, lines, distribution, and utility facilities as are necessary to provide adequate service to the public.

    (4) To require every franchise holder and every other public utility to furnish to the City, without cost to the City, full information regarding the location, character, extent, and condition of all facilities of such franchise holder or public utility in, over, and under the streets, alleys, and other public places and property of the City; and to impose reasonable regulations designating and controlling the location, relocation and removal of such facilities.

    (5) To collect from every public utility operating in the City its fair and just proportion of the expense of excavating, grading, repairing, and maintaining such portions of the alleys, bridges, culverts, viaducts, and other public places and ways of the City as may be occupied or used in whole or in part by such utilities; or to compel such public utility to perform without expense to the City its just share of such excavating, grading, paving, repaving, constructing, repairing, and maintaining.

    (6) To require every public utility or franchise holder to allow other public utilities to use the tracks, poles, wires, pipes, bridges, and viaducts, wherever, in the judgment of the City Council such use shall be in the public interest; provided, that the use does not materially interfere with the use thereof by the owner for its purposes nor materially impair the safety of said facilities, and that in such event, said owner of said facilities may fix and collect reasonable rental, to be approved by the City Council, to be paid to the owner of the facility for such use.

(7) To prescribe a form of accounts to be kept by any public utility or franchise holder, provided that, if the public utility or franchise holder shall keep its accounts in accordance with the uniform system of accounts for said utility prescribed by or acceptable to the National Association of Railroad and Public Utility Commissioners, the Federal Power Commission, the Federal Communications Commission, or the Railroad Commission of Texas, their successor or successors, this shall be deemed sufficient compliance with the provisions of this Section.

(8) To examine and audit at any time during business hours the accounts and other records of any franchise holder or public utility, and to require annual and other reports, without cost to the City, including, without limitation, reports on the local operations of the public utility or franchise holder, which shall be in such form and contain such information taken from the books and records of such utility or franchise holder as the City Council shall prescribe.

(9) To require and collect any compensation and rental not now or hereafter prohibited by the laws of the State of Texas.

### Section 5. Rate-making power of City Council.

The City Council shall have full power after notice and hearing to regulate by ordinance the rates, charges, and fares of every public utility or holder of a public utility franchise operating in the City of Victoria, but no such ordinance shall be passed by the City Council as an emergency measure. Any public utility or holder of a utility franchise making application to the City Council for an increase in its rates, charges, or fares shall have the burden at the hearing on such request of establishing the value of its property and the amount and character of its revenues and expenses. No legal action to contest any rate, charge or fare fixed by the City Council shall be instituted by the public utility or holder of a utility franchise until such holder or utility has filed a motion for rehearing with the City Council setting out specifically each ground of its complaint against the rate, charge, or fare fixed by the City Council, and until after the City Council shall have acted upon such motion or had a period of sixty days within which to act upon motion for rehearing.

## ARTICLE VII. ELECTIONS, GENERAL AND SPECIAL

### Section 1. Elections under state law and ordinance.

All elections in the City of Victoria shall be conducted and results canvassed and announced by the authorities as prescribed by and in accordance with the laws of the State of Texas regulating the holding of municipal elections and in accordance with ordinances adopted by the City Council for the conduct of elections. All provisions of the Texas Election Code and any amendments to it which result in conflicts with any of the provisions of this Charter shall supersede this Charter to the extent of any conflict, even if the provision or amendment does not expressly provide for it to supersede any such charter provision.

### Section 2. General elections, run-off elections.