NO. 03-6-59,833-C

| | | |
|---|---|---|
| THE CITY OF VICTORIA, | § | IN THE DISTRICT COURT |
| PLAINTIFF, | § | |
| V. | § | |
| HOUSTON PIPE LINE CO. LP, | § | 267TH JUDICIAL DISTRICT |
| | § | |
| DEFENDANT | § | VICTORIA COUNTY, TEXAS |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND NOTICE OF HEARING

TO THE HONORABLE COURT:

Plaintiff, the City of Victoria, Texas, files this Motion for Summary Judgment and Notice of Hearing directed to Defendant, Houston Pipe Line Company LP, and moves for entry of a partial summary judgment in accordance with the provisions of Texas Rules of Civil Procedure 166a(b), (c), (d) and (i), and in support shows:

1. **Movants:**

    The party seeking a partial summary judgment is Plaintiff, the City of Victoria, Texas. The party against whom such partial summary judgment is sought is the Defendant, Houston Pipe Line Company LP, formerly known as Houston Pipe Line Company and AEP Houston Pipe Line Company, LLC ("HLP").

2. **Plaintiff's claims:**

    Plaintiff's pleadings include a claim against HLP asserted under the City Charter and City provisions and Texas Constitutional and statutory provisions, as discussed herein and excerpted and attached hereto, which govern the activities of gas transmission pipelines and the need for specific consent to the use by a natural gas pipeline of city property, streets and rights of way ("ROW"). As Movants have not specially excepted to Plaintiff's Original Petition, the live pleading in this case, Plaintiff's pleadings are to be construed broadly and in favor of Plaintiff. Plaintiff specifically moves for partial summary judgment on the claim of HPL's use, without consent, of the City streets and ROW

3. **Undisputed Facts:**



1

The following facts are undisputed and/or conclusively established as a matter of law by the attached Affidavit of City Engineer Kenneth E. Gill and the maps and other exhibits attached thereto:

A. That the City of Victoria, Texas is a municipal corporation and a "home rule" city under Texas law.

B. That HPL or its predecessors in interest have for more than 10 years owned, operated and/or controlled a natural gas transmission pipeline that is located under, along or across the City streets and ROW described by the attached Affidavit of City Engineer Kenneth E. Gill and the maps and other exhibits attached thereto.

C. That during this time period neither HPL nor its predecessors in interest have ever held or acquired any franchise, permit, or any other form of consent granted by city ordinance for any such pipeline presence inside the City, save and except for those specific areas described in the attached Affidavit of Kenneth E. Gill and attached at Exhibit "E" thereto.

D. There is no evidence that HPL is the owner in fee simple of any of the real property within the City that is adjacent to the specific City streets and ROW along and under which HPL's pipelines are located.

4. Arguments and authorities supporting Plaintiff's Motion:

   A. The Utilities Natural Gas case

   Defendants have provided citation to Utilities Natural Gas Co. v. State, 128 S. W. 2d 1153 (Tex. 1939). That case involved a pipeline company's challenge to the State Comptroller's attempt to assess an occupation tax imposed under the pre-1941 version of Art. 7060. The pipeline company in that case owned a natural gas pipeline that delivered gas to the CP&L plant in Victoria. (and on that point this case confirms as a matter of law that the CP& L Plant, through which HPL's pipeline passes, was located within the City of Victoria as far back as the late 1930's). However, as the court noted, although the CP&L plant was within the city limits, "Defendant's [Utilities Natural Gas Company's] pipe line or appurtenances have never so crossed, used or occupied any of such alleys, streets, or other public places, or any other private lands within the City of Victoria, Texas." Id. at 1154. Here, it is undisputed that the HPL pipeline

2

does cross under and along city streets and rights of way, as shown by the maps produced by Defendants (See Affidavit of Kenneth E. Gill).

It is clear that the Utilities Natural Gas court found the Defendant's pipeline to constitute part of a "gas works," id. at 1155, a phrase the Texas Supreme Court has since found to be substantially identical to the phrase "gas plant," and to include within its scope the system of pipelines used to deliver gas to in-city customers. Eddins-Wacher Butane Co. v. Calvert, 298 SW2d 93, 95 (Tex. 1957). It is noteworthy that in Utilities Natural Gas the Texas Supreme Court does not address use of city streets. The following year, the Texas Supreme Court answered in the negative the question of whether a street use fee is an occupation tax.

B. The Fleming case

In Fleming v. Houston Lighting & Power, 138 S.W. 2d 520, opinion on rehearing, 143 S.W. 2d 943 (Tex. 1940), cert. denied, 313 U.S. 560 (1940), the Texas Supreme Court considered a home rule city's ordinance requiring all telephone, telegraph, electric and gas companies using the streets or public places of the city to pay, for the privilege of occupancy, a rental of 4% of gross receipts from business conducted in the city. The court of appeals had invalidated the ordinance based on the interpretation of Article 1436b as a property right and grant from the State, and ruled that the city, without granting the right or possessing a proprietary interest in it, could not impose a charge in the nature of a rental for the use of such grant and rights. The supreme court reversed and held that cities do have "the right to fix charges in the nature of rentals for the use of their streets and other public places by telephone companies carrying on a local business." 138 SW2d at 522. The supreme court also stated that the "ordinance is not invalid merely because it provides for measuring the amount of the rental charge by a percentage of the gross receipts" of business transacted in the city the material inquiry is the reasonableness of the rental charge and not the method used to measure the charge. Id.

On rehearing the supreme court addressed whether the ordinance was in conflict with Article 7060 (construing the same version of the statute that was before the court in Utilities Natural Gas). Article 7060 imposed state occupation taxes on local gas, electric and water utilities in cities, and prohibited a city, "by virtue of its taxing power, police power or otherwise" from imposing an "occupation tax or charge of any sort for the privilege of doing business" by any company paying an occupation tax under Article 7060. The Fleming court stated:

3

> The ordinance did not impose a charge for the privilege of doing business. Evidence was offered upon the hearing that it would be possible for the Company to carry on its business within the City without the necessity of using its streets, alleys or other public ways.
>
> We sustained the ordinance upon the ground that same imposed a charge in the nature of a rental The authorities recognize a distinction between a rental charge and a tax or charge for the privilege of doing business. It is clearly pointed out in the leading case of City of St. Louis vs. Western Union Telegraph Co.

143 SW2d at 924 (citations omitted).

C. The City of St. Louis case.

In the City of St Louis City of St. Louis vs. Western Union Telegraph Co., 148 U.S. 92 (1892), the United States Supreme Court considered a city ordinance that required all telegraph and telephone companies to pay, for the privilege of using the streets, alleys and public places of the city, "the sum of five dollars per annum for each pole erected or used by them in the streets, alleys, and public places in said city". Western Union, a telegraph company, challenged the ordinance on the basis, inter alia, that the sum was a privilege or license tax for the privilege of carrying on business in the city, in part in violation of the United States Constitution. The U. S. Supreme Court stated:

> To determine this question whether the charge is a privilege or license tax], we must refer to the language of the ordinance itself, and by that we find that the charge is imposed. for the privilege of using the streets, alleys, and public places, and is graduated by the amount of such use. Clearly, this is no privilege or license tax. The amount to he paid is not graduated by the amount of the business, nor is it a sum fixed for the privilege of doing business. It is more in the nature of a charge for the use of property belonging to the city, that which may properly be called rental. 'A tax is a demand of sovereignty; a toll is a demand of proprietorship." [ citations omitted]. If the company purchased] ground in the various blocks from private individuals, and to such grounds removed its poles, the section of the ordinance] would no longer have any application to it.

148 U.S. at 97.

D. Home Rule Cities' Powers.

4

Article 1175(2), Tex. Rev. Civ. Stat, the "Home-Rule" statute, states that "A home-rule municipality has the following powers:

\* \* \* \* \*

2. To prohibit the use of any street, alley, highway or grounds of the city by any .. gas company, or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and upon pa such compensation as may be prescribed and upon such condition as may be provided by such ordinance...

. . .

3. To have exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city...

. . .

4. To control, regulate and remove all obstructions or other encroachments or encumbrances on any public street, alley or ground...

Texas home-rule cities such as Victoria have the full power of self government. This form of government-- unlike counties and unincorporated areas--does not look to state law or other laws for authorization to enact laws or to determine the scope of its authority. Rather, home-rule cities are empowered to enact any law that the state legislature could adopt. The Texas Supreme Court and other Texas courts have consistently observed that a home-rule city "has the power of self-government, that is, full authority to do anything the legislature could theretofore have authorized thin to do." Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641, 643 (Tex. 1975); see also, Foxwood v. City of Taylor, 214 SW.2d 282, 286 (Tex. 1948); State ex rel Rose v. City of La Porte, 386 S.W,2d 782 (Tex. 1965); City of Corpus Christi v. Continental Bus Systems, Inc., 445 S.W.2d 12 (Tex. Civ. App. -- Austin 1969, writ ref'd); Dallas Merchants & Concessionaires Ass'n v. City of Dallas, 852 S.W.2d 489 (Tex. 1993); Tex. Const. art. art XI, section 5. Home rule cities such as Victoria do not look to state law for authorization to pass laws, but rather need only determine if state law in some clear and unambiguous manner restricts their inherent power of self governance.

The above state law provisions are consistent with the Victoria City Charter provisions in vesting exclusive control over public streets in Victoria

5

under the control of its City Council. Indeed, state law and the city chatter provisions are essentially identical. Other state statutes similarly recognize a home-rule city's exclusive control over its public places. For instance, Tex Rev Civ. Stat. art. 1181 provides in pertinent part:

> No charter or any amendment thereof framed or adopted under this charter, shall ever grant to any person, firm or corporation any right or franchise to use or occupy the public streets, avenues, alleys or grounds of any such city, but the governing authority of any such city shall have the exclusive power and authority to make any such grant of any such franchise or right to use and occupy the - public streets, avenues, alleys, and grounds of the city....

This statute makes it patently clear that only the "governing body' of a city is authorized to grant permission for any 'person, firm or corporation to use or occupy a public street, avenue, alley or ground of the city' Thus, unless the "governing authority" grants tights or privileges, no rights or privileges are conveyed.

E. <u>Judicial Recognition of a Home Rule Cities' Control over Streets.</u>

The undeniable exclusive control that home rule cities enjoy over their public property and rights of way has been clearly recognized by Texas courts. See, e.g., City of San Antonio v. United Gas Pipeline Co., 388 S.W.2d 231, 234 (Tex. Civ. App.—San Antonio 1965, writ ref'd n.r.e.) (enjoining use of streets by a pipeline transmission company and stating it would be required to obtain a franchise to use city streets to serve a single industrial gas customer). Texas courts have also recognized that while cities have the authority to grant consent to gas companies to lay pipes under public rights of way, they also have right to prohibit or condition such use. Id. Accordingly, unless a person or entity has the permission or consent of a city to place pipes or other structures in, under, above or through public streets, avenues or alleys,, such structures are encroachments or purprestures upon public rights. Texas courts have continually held that a city has the authority to grant permission to prohibit the use by gas pipeline companies of property located under its streets, alleys and avenues. See, e.g., Grimes v. Corpus Christi Transmission Co., 829 SW.2d 335 (Tex. App.—Corpus Christi 1992, writ denied).

F. <u>A pipeline under a street is using the street.</u>

6

Further, where a company or entity desires to install a pipeline under a street, even if such is achieved by tunneling under the street, this constitutes a "use" of the street that requires a franchise or other express consent of the City. This point has been made by many Texas courts: *see, e.g.*, Davis v. State ex rel. Town of Anthony, 298 S.W.2d 219, 221 (Tex. Civ. App—El Paso 1957, writ ref'd, n.r.e.) and Alamo Carriage Services, Inc. v. City of San Antonio, 768 S.W.2d 937, 941 (Tex. App.—San Antonio 1989, no writ).

G. Purpresture.

As stated by the Texas Supreme Court in Hill Farm, Inc. v. Hill County, 436 S.W.2d 320 (Tex. 1969):

> The easement in a city street is generally held to be quite comprehensive. It is not confined to the surface but extends to a depth that will enable the urban authority to do that which is done in every street, including the laying of sewer, gas and water pipes.

436 S.W.2d at 321, citing City of San Antonio v. United Gas Pipeline, 388 S.W.2d 231 (Tex. Civ. App.—San Antonio 1965, writ ref'd n.r.e.) and West Texas Utilities Co. v. City of Baird, Tex. Civ. App.—Eastland 1956, writ ref'd n.r.e.). Hill involved the challenge by a pipeline company that did not own the land adjoining a public right of way to the trial court's order, affirmed by the Court of Civil Appeals, directing the removal of the pipeline from such public road. The Supreme Court defined as a "purpresture" an "encroachment upon public rights and easements, the appropriation to private use of that which belongs to the public," and concluded:

> **We recognize the right of the fee owner to use the subsurface in a manner that does not affect or impair enjoyment of easement, but a stranger will not be allowed to encroach upon such easement over the objection of the public agency vested with jurisdiction and control of the street or road.**
>
> . . .
>
> **We agree with the Court of Civil Appeals that (1) petitioner's pipeline constitutes an invasion of the public easement in the road...**

436 S.W.2d at 323-24 (citations omitted.) Subsequent Texas case law is in complete agreement with this opinion and its definition and application of the law of purpresture. *See, e.g.*, Trice v. State, 712 S.W.2d 842, 851 (Tex.

7

App.—Waco 1986, n. p.h.) ("State was entitled to a directed verdict on its theory that the bridge constituted a purprestures. This entitled the State to recover damages and injunctive relief to remove the bridge as an unlawful encroachment upon its land"); Hale County v. Davis, 572 S.W.2d 63, 65-66 (Tex. App.—Amarillo 1978, no pet.)

### 5. Conclusion.

The supreme court and the legislature have validated specifically the right of a city to require consent for use of its streets and the right to enjoin and seek damages for the non-consensual use by a non-fee simple owner of the property that lies within or under or along the City's streets, public property and rights of way. Defendant's previously asserted reliance upon a pre-Fleming case addressing only the applicability of a state tax law, not a local street rental ordinance and not addressing the right of a municipality to require and receive compensation for the use of city streets by a gas pipeline company and its related entities, is not dispositive of this issue.

**Summary Judgment Evidence Supporting Plaintiff's Response**: This response is supported by the following summary judgment evidence which is attached hereto and incorporated herein by reference for all purposes:

> The Affidavit of Plaintiff's employee, City Engineer Kenneth E. Gill, and verified Exhibits "A" through "E" attached thereto;

> Appendix "A," containing excerpted portion of Texas Constitutional and statutory laws applicable to this case; and

> Appendix "B," excerpted portions of the Victoria City Charter and Code of Ordinances.

WHEREFORE, Plaintiff, The City of Victoria, Texas, requests that the Court grant a partial summary judgment finding and adjudicating Defendants HPL's pipelines and related facilities that located within the City's streets, rights of way and public property to constitute as a matter of law a purpresture and an encroachment without consent upon the City's streets, rights of way and public property and that the Court grant Plaintiff such other and further relief to which it is justly entitled, at law or in equity.

Respectfully submitted,

Emmett Cole, Jr.
State Bar No. 00795885
Cole, Cole & Easley, P.C.
302 W. Forrest
P.O. Box 510
Victoria, TX 77902-0510
Tel: (361) 575-0551
Fax: (361) 575-0986
　　　and
Paul D. Andrews, P.C.
5959 South Staples Ste. 228A
Corpus Christi, TX 78413
Tel: (361) 658-6296
Fax: (361) 994-9801

By: _____
　　Paul D. Andrews
　　State Bar No. 01248600
　　Attorneys for
　　Plaintiff, The City of Victoria

## NOTICE OF HEARING

Notice is hereby given that the foregoing Plaintiff's Motion for Partial Summary Judgment has been set for hearing at 10:00 a.m. on the 7th day of October, 2005, before the 267th Judicial District Court of Victoria County, Texas, at the Victoria County Courthouse in Victoria, Texas.