FILED
05 SEP 30 PM 1:14

CAUSE NO. 03-6-59,833-C

| | | |
|---|---|---|
| CITY OF VICTORIA, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| v. | § | VICTORIA COUNTY, TEXAS |
| HOUSTON PIPE LINE COMPANY, et al. | § | |
| Defendants. | § | 267th JUDICIAL DISTRICT |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Houston Pipe Line Company LP ("HPL") files this response to Plaintiff's Motion For Partial Summary Judgment And Notice of Hearing ("Plaintiff's Motion") and respectfully shows the Court the following:

- Plaintiff's claims for trespass and purpresture fail as a matter of law because the State of Texas, not the City of Victoria ("City"), is the owner of the city streets and has authorized natural gas pipelines to be laid and operated under streets and roads.

- Plaintiff's claims for trespass and purpresture fail because the City has consented to the placement of HPL's pipeline and related facilities.

- Plaintiff's claims for trespass and purpresture are barred by laches; and

- Plaintiff's claims for trespass and purpresture are barred by equitable and/or quasi estoppel.

### INTRODUCTION

Defendant HPL[1] moved for summary judgment in this case on July 11, 2005,[2] demonstrating that the City's 1941 street rental ordinance does not apply to HPL under the undisputed facts. Seeking to sidestep HPL's motion for summary judgment and to take the

---

[1] Plaintiff's Original Petition confusingly names as defendants "entities generally known as HOUSTON PIPE LINE COMPANY, including but not limited to . . ." various names. Plaintiff's Motion now clarifies and admits that there is only one defendant, whose name is Houston Pipe Line Company LP. See Plaintiff's Motion at 1 (¶1 "Movants").

[2] Defendant's Motion for Summary Judgment, including all attachments, is hereby adopted and incorporated by reference.

310049462

EXHIBIT 6

offensive, the City has now filed its own motion for summary judgment based on claims for trespass and purpresture. Neither claim has merit and should be denied as a matter of law.

The City has known of HPL's natural gas pipeline for decades. It would be ludicrous to pretend otherwise. This knowledge may be demonstrated and documented at least as early as 1962, the year the City enacted an ordinance expressly granting HPL the right and privilege to construct and place a natural gas pipeline under and along certain streets and alleys in the City. Before this lawsuit, the City never complained about HPL's pipeline or related facilities and has never claimed that HPL was subject to charges under the City's street rental ordinance. Thereafter, HPL relocated a portion of its pipeline in the City of Victoria with the City's express written approval. HPL also supplied natural gas to the CP&L power plant in the City, until the plant ceased operation in 2002, and HPL has been and remains the exclusive supplier of natural gas to the City's local gas distribution company.

The City's asserted claims for trespass and purpresture fail first, because the State of Texas, not the City, owns the streets in the City, and has by statute authorized laying and operation of gas pipelines under those streets. Second, the City's own consent, as referenced above and demonstrated by its long-time acquiescence precludes such claims. Lastly, the City has offered no evidence of damages.

## UNDISPUTED FACTS

These facts are undisputed:

1. In 1962, the City by ordinance consented to the laying of a portion of HPL's natural gas pipeline in the City.

2. In 1964, the City approved in writing the relocation of HPL's natural gas pipeline in the City.

3. The City has never before this lawsuit made any complaint about HPL's pipeline and related facilities in the City.

4. The City has never before this lawsuit demanded or sought to impose any charge on account of HPL's pipeline and related facilities in the City under the street rental ordinance or otherwise.

5. HPL's natural gas pipeline in Victoria is a part of an interurban transmission pipeline and is not a local public utility in Victoria.

6. Had HPL been required to pay a street rental charge or other charge to the City by reason of HPL's natural gas pipeline and related facilities in the City, HPL would have passed those charges on to its pipeline customers, but it is impossible to pass on such charges currently.

## SUMMARY JUDGMENT EVIDENCE

This response is supported by summary judgment evidence, attached to this motion and incorporated herein by reference.

Exhibit A: Affidavit of Daniel J. Hyvl.

## SUMMARY JUDGMENT STANDARDS

"[A] trial court's only duty at the summary stage is to determine if a material question of fact exists." *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 422 (Tex. 2000). "[A] no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see also* TEX. R. CIV. P. 166a(i). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *King Ranch*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). In reviewing a summary judgment motion, the court must consider the evidence in the light most favorable to

the non-movant. *See King Ranch*, 188 S.W.3d at 751; *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995).

## ARGUMENTS AND AUTHORITIES

**I.  Plaintiff's Claim for Trespass Fails as a Matter of Law Because the State, Not the City, is the Owner of the City Streets.**

"A person is a trespasser where he enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or person in charge." *City of El Paso v. Zarate*, 917 S.W.2d 326, 330 (Tex. App.—El Paso 1996, no writ). In the present action, the City cannot maintain a trespass claim against HPL because the State of Texas, not the City, owns the City's streets where HPL is allegedly trespassing.

All streets and roads in the State of Texas, including city streets, belong to the State and not the local authority:

> The highways of the state, including streets of cities, belong to the state, and the state has full control and authority over them. They "are the property of and for the use of the state, which, through its Legislature, has absolute control over same, which control it may or may not, from time to time, delegate to the local authorities."

*West v. City of Waco*, 294 S.W. 832, 833-34 (Tex. 1927) (quoting *Robbins v. Limestone County*, 268 S.W. 915, 918 (Tex. 1925)); *see also Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644-45 (Tex. 2004) ("This Court has consistently recognized that the State has a superior ownership interest in its public roads. We have also recognized that the State's ownership interest in its roads is superior to that of its political subdivisions"); *City of Mission v. Popplewell*, 294 S.W.2d 712, 714 (Tex. 1946) ("[C]ourts everywhere decline to recognize that

the city possesses any property rights in the streets, although they may be a source of profit to the municipality. Their interest is exclusively public juris, and is in any respect wholly unlike property of the private corporation which is held for its own benefit and used for its private gain and advantage ... It has no proprietary title nor right to exclusive possession.").

Additionally, the state legislature has given the right to gas pipeline companies to use streets. *See* TEXAS UTIL. CODE § 181.005 ("A gas corporation has the right to lay and maintain lines over and across a public road, a railroad, railroad right-of-way, an interurban railroad, a street railroad, a canal or stream, or a municipal street or alley."); TEXAS UTIL. CODE § 181.022 ("A gas utility has the right to lay and maintain a gas facility through, under, along, across, or over a public highway, a public road, a public street or alley, or public water."). Since gas companies, such as HPL, have express authorization to place their pipelines under the city streets from the owner of those streets, the State of Texas, placement of the pipelines under streets does not constitute a trespass or any other wrongful conduct.

II.     **Plaintiff's Claims for Trespass and Purpresture Fail Because the City has Consented to the Placement of HPL's Pipeline and Related Facilities.**

"A purpresture is an encroachment **without consent** upon public rights, property, or easements, or the appropriation for private use of that which belongs to the public." *Rio Grande Valley Gas Co. v. City of Edinburg*, 59 S.W.3d 199, 224 (Tex. App.—Corpus Christi 2000, no pet.) (emphasis added), *aff'd in part and rev'd in part*, 129 S.W.3d 74 (Tex. 2003). "[C]onsent to enter property may be manifested by the owner's conduct or by the condition of the land itself." *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 672 (Tex. 1999) (O'Neill, J., dissenting). "Situations clearly exist 'where a trespass has been tolerated for such a sufficient period of time that the public believes it has permission of the possessor to use the property.'" *Id.* (quoting *Murphy v. Lower Neches Valley Auth.*, 529 S.W.2d 816, 820 (Tex. Civ. App.—Beaumont 1975),

*rev'd on other grounds*, 536 S.W.2d 561 (Tex. 1976). Consent will be implied if the owner (i) has actual knowledge that people have been entering the land and (ii) fails to take reasonable steps to prevent or discourage those persons from entering the land. *See General Mills Rest. v. Texas Wings, Inc.*, 12 S.W.3d 827, 835 (Tex. App.—Dallas 2000, no pet.) (finding that fact question existed as to whether or not restaurant consented to the use of its parking lots by the other business' patrons and employees).

In the present matter, the City had actual knowledge of HPL's pipeline and related facilities no later than October 15, 1962, when the City enacted Ordinance No. 62-25 which states:

> The City of Victoria does hereby grant unto the Houston Pipe Line Company, its successors and assigns, the right and privilege to construct and put in place the following: A natural gas pipe line under streets and alleys [in the City].

*See* City of Victoria Ordinance No. 62-25, attached as Exhibit E to the Affidavit of Kenneth E. Gill ("Exhibit E") attached to Plaintiff's Motion.[3] Prior to this lawsuit, the City never complained about HPL's pipeline and related facilities but to the contrary, documents produced by the City clearly evidence the City's knowledge of and acquiescence in HPL's pipeline and related facilities over an extended period of time. *See* Affidavit of Daniel J. Hyvl ("Hyvl Aff.") at ¶ 4, attached as Exhibit A. On May 19, 1964, the City sent HPL a letter expressly approving the relocation of a portion of HPL's pipeline located in the City:

> This letter will signify approval by the City of Victoria of your proposed relocation of an 18" natural gas pipe line along Hanselman Road and North Street.

---

[3] The ordinance and other documents in Exhibit E to Mr. Gill's Affidavit are self-authenticating since they were produced by the City in this lawsuit. *See* TEX. R. CIV. P. 193.7. The ordinance and other documents have also been authenticated by plaintiff. Additionally, the ordinance and other documents constitute an admission by party opponent and qualify as an exception to the hearsay rule. *See* TEX. R. EVID. 801(e)(2).

The City Council gave its approval at the regular meeting May 18, 1964.[4]

See id. On September 18, 1964, the City obtained certain rights of way from HPL as referenced in Ordinance No. 65-23 which states:

> WHEREAS, by instrument dated September 18, 1964, recorded in Volume 630, Page 326 of the Deed Records of Victoria County, Texas, Houston Pipe Line Company conveyed to the City of Victoria all that certain 18 inch pipe line and appurtenant right of way agreements and easements described therein, reference to which is made for a more particular description of the premises.

See City of Victoria Ordinance No. 65-23, attached as Exhibit E to Plaintiff's Motion. On November 6, 1987, the City entered into an Easement Agreement with HPL which states:

> WHEREAS, [Houston Pipe Line Company] acquired a pipeline easement from Nazareth Academy by an instrument dated May 26, 1925, filed of record in Volume 108, Page 629 of the Deed Records of Victoria County, Texas; and
>
> WHEREAS, City desires to construct and extend a roadway known as John Stockbauer Drive, hereinafter referred to as "Roadway: across a portion of [Houston Pipe Line Company's] easement and pipeline located therein and desires to obtain the authority and right from [Houston Pipe Line Company] to use a part of the easement surface area to construct such Roadway over and across said above-mentioned easement.

See Easement Agreement, dated November 6, 1987, attached as Exhibit E to Plaintiff's Motion.

On November 18, 1992, the City executed a Right-of-Way Permit with HPL which states:

> The City of Victoria, Texas, (City) a municipal corporation located in Victoria County, Texas, hereby grants the right, privilege and permission to Houston Pipe Line Company, (HPLC), located in Houston, Texas, to own, locate, maintain, operate, repair, replace and remove its existing pipeline and necessary appurtenances in, under and along Delmar Drive, between Hanselman Road and Lone Tree Road, in the City of Victoria, Victoria County, Texas.

See Right-of-Way Permit, attached as Exhibit E to Plaintiff's Motion. Not only do the documents attached to Plaintiff's Motion evidence consent by the City of HPL's pipeline and related facilities but the photographs attached to Plaintiff's Motion leave no doubt that HPL's

---

[4] Notably this letter written on City letterhead and signed by the City Manager was not produced by the City. It is unknown how many other documents have been lost or misplaced by the City and how many of these documents evidence further consent by the City of HPL's pipelines and related facilities.

facilities in Victoria were open, obvious, and known. *See* Photographs attached as Exhibit B to the Plaintiff's Motion. Therefore, the City was aware of HPL's pipeline and related facilities on its purported property but nevertheless the City failed to take any steps to prevent or discourage HPL's use of the City's alleged property until filing suit on June 11, 2003, some 41 years after the 1962 right of way was issued by the City to HPL. Consequently, the City has consented to the use of its streets by HPL as a matter of law and plaintiff's claims for trespass and purpresture fail. *See City of El Paso v. Zarate*, 917 S.W.2d 326, 330 (Tex. App.—El Paso 1996, no writ) (finding that the city was aware that the ponding area was being used by numerous persons for a long period of time and therefore gave its implied permission to use the area).

III. **Plaintiff's Claims for Trespass and Purpresture are Barred by the Equitable Defenses of Laches and Estoppel or Quasi-Estoppel.**

"Texas courts have repeatedly held that, although equitable defenses do not generally apply to governmental entities when they are acting in their governmental capacity, equitable defenses may apply when justice requires it and no governmental function is impaired." *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 639 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding that laches was an available defense against a city who delayed for 30 years before attempting to recover alleged underpaid franchise fees); *see also Roberts v. Haltom City*, 543 S.W.2d 75, 80 (Tex. 1976) (applying estoppel to the city's claim); *City of Corpus Christi v. Nueces County Water Control & Improvement Dist. No. 3*, 540 S.W.2d 357, 378-79 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.) (applying laches to claims made by the city who waited for 40 years to bring its claims against a water district who in the meantime had made use of and became dependent on the water supply); *City of Dallas v. Rosenthal*, 239 S.W.2d 636, 637 (Tex. Civ. App.—Dallas 1951, writ ref'd n.r.e.) (stating that there are cases where "a municipality, even in exercise of a governmental function, may be

subjected to the same rules of equitable estoppel as are individuals where right and justice require it."). Equitable defenses impair a governmental function only if they "would erect a legal barrier to the city carrying out its governmental functions in the future." *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 368 (Tex. App.—Texarkana 2002, pet. denied) (applying estoppel against the city and finding that no governmental function was impaired because the city had been aware of plaintiff's drilling activities "for some time without objection"); *see also City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 223-24 (Tex. App.—San Antonio 2003, no pet.) (applying estoppel against the city and holding as a matter of law that no governmental function was impaired by preventing the city from enforcing its sign ordinance).

A.   **Plaintiff's Trespass and Purpresture Claims are Barred by Laches.**

"The essential elements of laches are (1) unreasonable delay in asserting one's legal or equitable rights and (2) a good faith change of position by another to his detriment because of the delay." *City of Wharton*, 101 S.W.3d at 639 (citing *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998)). Laches is a "doctrine 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 710 (5th Cir. 1994) (quoting *Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944)). In the present matter both elements of laches are present and therefore plaintiff's claims for trespass and purpresture fail.

As noted above, the City had actual knowledge of HPL's pipeline and related facilities no later than October 15, 1962, when the City enacted Ordinance No. 62-25. Additionally, on May 19, 1964, the City approved the relocation of a portion of HPL's pipeline located in the City. Despite the City's knowledge of HPL's pipeline and related facilities on the City's purported

property, the City delayed over 40 years before bringing the present lawsuit. The City's delay is unreasonable as a matter of law. *See City of Wharton*, 101 S.W.3d at 639 ("We hold that a delay of over 30 years is unreasonable as a matter of law.").

HPL also made a good faith change of position to its detriment because of the delay by the City in bringing the present lawsuit. Had the City made charges to HPL over the past several decades, HPL could and would have passed those charges on to its pipeline customers, including the owner of the Victoria power plant and the Victoria local gas distribution company (who would have undoubtedly passed those charges on to Victoria residents), but it is impossible to go back in time and pass on such charges now. *See* Hyvl Aff. at ¶ 5-6. Because of the City's delay in claiming fees or damages and complaining of the location of HPL's pipeline and related facilities, HPL would now be unable to collect from customers fees that should have been paid by such customers in the past particularly where such customers no longer exist or HPL's recovery of such fees would be barred by the statutes of limitation. *See id.* at ¶ 6. HPL, not being aware of any dispute by the City, has also expended a substantial amount of time and money on its pipeline and related facilities in the City and continues to do so as the exclusive supplier of the City's local gas distribution company, CenterPoint Energy. *See id.* at ¶ 7. Therefore, the City's delay resulted in a detrimental change of position by HPL and laches bars plaintiff's claims in this lawsuit.

B. **Plaintiff's Trespass and Purpresture Claims are Barred by Equitable Estoppel and/or Quasi-Estoppel.**

"Equitable estoppel is based on the principle that 'one who by his conduct has induced another to act in a particular manner should not be permitted to adopt an inconsistent position and thereby cause loss or injury to the other.'" *Bopp*, 126 S.W.3d at 221 (quoting *Maguire Oil Co.*, 69 S.W.3d at 367). "[T]he doctrine of equitable estoppel requires: (1) a false representation

or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998). "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Maguire Oil Co.*, 69 S.W.3d at 367 n.7 (citing *Lopez v. Monoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)). Quasi-estoppel "applies when it would be unconscionable to allow a person to maintain a position inconsistent with the one to which he acquiesced, or from which he accepted a benefit." *Id.* Unlike equitable estoppel, however, "quasi-estoppel requires no showing of a false representation or of detrimental reliance." *Maguire Oil Co.*, 69 S.W.3d at 367 n.7 (citing *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 548 (Tex. App.—Austin 1999, pet. denied). Equitable estoppel and quasi-estoppel both apply to the present matter and bar plaintiff's claims in this lawsuit.

The plaintiff's claims are barred by equitable estoppel because the City had actual knowledge of HPL's pipeline and related facilities as far back as 1962 but never told HPL that it objected to the presence of HPL's pipeline and related facilities until filing this lawsuit over 40 years later. *See City of Lubbock v. Phillips Petroleum Co.*, 41 S.W.3d 149, 164 (Tex. App.—Amarillo 2000, no pet.) (applying estoppel against the city who made no objection to the pipeline companies' use of its easement for 24 years). The City's concealment of the fact that it objected to the presence of HPL's pipeline and related facilities resulted in HPL not only supplying gas to the CP&L power plant in the City but also becoming the exclusive supplier of gas to the City's local gas distribution company. HPL has also expended a substantial amount of time and money on its pipeline and related facilities in the City and continues to do so as the

exclusive supplier of the City's local gas distribution company, CenterPoint Energy. At the very least the City's conduct warrants the application of quasi-estoppel because it would be unconscionable to allow the City to maintain its current lawsuit which it waited almost 41 years to file and during which time the City benefited from HPL's supplying gas not only to CP&L, the City's power plant, but also to the City's local gas distribution company.

IV.  **Under Texas Law, Cities May Charge Street Rental Only to a Local Business.**

The authorities cited in Plaintiff's Motion have no bearing on the City's attempted tort claims, which are wholly distinct from claims for rent under the street rental ordinance.

The authorities cited by the City, including particularly *Fleming v. Houston Lighting & Power Co.*, 138 S.W.2d 520, 522 (Tex. 1940), *rehearing overruled*, 143 S.W.2d 923 (Tex. 1940), *cert. denied*, 313 U.S. 560 (1941), stand for the proposition that a city may charge street rent to a local public utility (such charges are generally known as franchise fees), but not to an interurban business. This holding, which is inapplicable to HPL, because its pipeline is an interurban business, not a local public utility, is based on past precedent and is confirmed by later court decisions. *See* Hyvl Aff. at ¶ 3.

An "interurban" business has an "absolute" right to "pass through a city or town, over and upon its streets," and a city has "no authority to deny that right." *City of Brownwood v. Brown Tel. & Tel. Co.*, 157 S.W. 1163, 1165 (Tex. 1913). In other words, a city has no authority to require a business to accept its ordinances as a "condition precedent" to entering the city. *Id.*

In *City of Arlington v. Lillard*, 294 S.W. 829, 830 (Tex. 1927), the Texas Supreme Court described this interurban limitation as follows:

> The limitation of power in mind and adhered to here is that the jurisdiction and power exercised by a municipal corporation is and must be confined to the territory of its situs (except where authorized for purely local purposes) to its inhabitants, to its corporate entity, "and cannot be divorced therefrom, either in fact, thought or law."

regulatory powers over intrastate long distance telephone service, "[e]xcept for such regulation as will avoid inconveniences to a city," and that the trial court properly enjoined the city from enforcing the provisions of the rate regulatory ordinance. *Id.* at 263.

Similarly, in *County of Harris v. Tennessee Prod. Pipe Line Co.*, 332 S.W.2d 777, 778 (Tex. Civ. App.—Houston 1960, no writ), Harris County appealed a trial court judgment perpetually enjoining it from interfering with an intercounty pipeline company's laying of pipelines across and under county roads. The County in *Tennessee Prod. Pipe Line* asserted that the court erred in its decree for the reason that the Texas legislature has delegated to Harris County the power and duty to build, repair, and maintain county roads and therefore its official orders with respect to crossings are within its jurisdiction. *See id.* at 779. The pipeline contended that it had the statutory right to lay its pipeline across and under any public road or highway in the state without obtaining a permit or license from the County. *See id.* After reviewing the *City of Brownwood* and *Lillard* cases, discussed above, the *County of Harris* court agreed with the pipeline company, holding that a county had no power to deny a pipeline company the right to lay its intercounty pipelines under and across county roads without first obtaining a license or permit to do so. *See id.* at 781.

As a gas pipeline company, HPL enjoys the same statutory rights, and under *Fleming* the City is precluded from charging a street rent to an interurban gas pipeline.

The City's reliance on TEX. REV. CIV. STAT. ANN. art. 1175(2) is likewise misplaced because that statute applies only to a "public utility." *See* TEX. REV. CIV. STAT. ANN. art. 1175(a)(1) (emphasis added) ("A home-rule municipality has the following powers: 1. To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas company, or any other

character of public utility."). HPL is not a public utility. *See* Hyvl Aff. at ¶ 3. HPL asks the Court to take judicial notice that the gas public utility in Victoria is CenterPoint Energy.

## CONCLUSION

WHEREFORE PREMISES CONSIDERED, Houston Pipe Line Company LP respectfully requests that this Court deny Plaintiff's Motion, and for such other and further relief to which it may be justly entitled.

Respectfully submitted,

_____
Osborne J. Dykes, III
State Bar No. 06325500
William D. Wood
State Bar No. 21916500
Jeffrey D. Palmer
State Bar No. 24027585
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: 713-651-5151
Facsimile: 713-651-5246

**COUNSEL FOR DEFENDANT
HOUSTON PIPE LINE COMPANY LP**

### CERTIFICATE OF SERVICE

This pleading has been served in compliance with the rules of the TEXAS RULES OF CIVIL PROCEDURE on September 30, 2005 on all counsel of record via certified mail, return receipt requested.

_____
Jeffrey D. Palmer

31004946.2                                    - 15 -

CAUSE NO. 03-6-59,833-C

| | | |
|---|---|---|
| CITY OF VICTORIA, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| V. | § | VICTORIA COUNTY, TEXAS |
| HOUSTON PIPE LINE COMPANY, et al. | § | |
| Defendants. | § | 267th JUDICIAL DISTRICT |

## AFFIDAVIT OF DANIEL J. HYVL

THE STATE OF TEXAS §
§
THE COUNTY OF HARRIS §

Daniel J. Hyvl, being duly sworn, upon oath, deposes and says:

1. My name is Daniel J. Hyvl. I am over the age of eighteen and am competent to testify as to the matters contained herein. The facts set forth herein are true and correct to my personal knowledge. If called to testify in this matter, I could and would testify to the matters set forth in this Affidavit from my own personal knowledge.

2. I have been employed by and/or performed duties as in-house counsel for Houston Pipe Line Company LP ("HPL") during the period March 1967 through March 2005. As an in-house counsel for HPL, I am familiar with HPL's records relating to the location of its pipelines and was involved with the negotiation of agreements with HPL's suppliers and customers, including Central Power and Light Company ("CP&L").

3. HPL's natural gas pipeline in Victoria is a part of an interurban transmission pipeline and is not a local public utility in Victoria.

4. Before filing this lawsuit, the City of Victoria ("City") never complained about the location of HPL's pipeline or related facilities in the City and has never claimed that HPL

was subject to charges under the City's street rental ordinance or otherwise. In fact, on at least one occasion, in early 1964, the City approved the relocation of a portion of HPL's pipeline located within the City of Victoria. *See* Letter from the City of Victoria's City Manager John Lee to W.G. Berlet of Houston Pipe Line Company, attached as Exhibit 1.

5. HPL would have passed on to its customers, including the CP&L power plant in the City of Victoria and the local gas distribution company in the City of Victoria, any fees or costs paid to the City for HPL's pipeline and related facilities in Victoria.

6. Because of the City's delay in claiming fees or damages and complaining of the location of HPL's pipeline and related facilities, HPL would now be unable to collect from customers fees that should have been paid by such customers in the past particularly where such customers no longer exist or HPL's recovery of such fees would be barred by the statutes of limitation.

7. Additionally, HPL has in the past expended and continues to expend a substantial amount of time and money on its pipeline and related facilities in the City so that HPL can continue to make deliveries to the City of Victoria's local gas distribution company, CenterPoint Energy.

FURTHER, AFFIANT SAYETH NOT.

_____
Daniel J. Hyvl