**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
—BROWNSVILLE DIVISION—**

| | | |
|---|---|---|
| CITY OF SAN BENITO, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL NO. B-03-080 |
| | § | |
| KINDER MORGAN TEJAS PIPELINE, L.P., | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant's Motion for Summary Judgment [Docket No. 145], Defendant's Motion for Protective Order [Docket No. 148], Defendant's Motion for Leave to File Motion for Summary Judgment [Docket No. 150], Defendant's Motion for Leave to File Supplemental Authority [Docket No. 162]; and Defendant's Motion in Limine [Docket No. 166]. Defendant's Motion for Leave to File Motion for Summary Judgment [Docket No. 150] and Defendant's Motion for Leave to File Supplemental Authority [Docket No. 162] are **GRANTED**. For the reasons stated below, Defendant's Motion for Summary Judgment is also **GRANTED**. All other pending motions are **DENIED as moot**.[1]

**I.    BACKGROUND**

This case has a long and complicated procedural history. The original lawsuit had been on file for several years before it was removed to this Court on April 30, 2003. At that point, a Sixth Amended Petition was on file. The current live pleading in this Court is the City of San Benito's ("San Benito" or "the City") Eighth Amended Petition [Docket No. 76]. Although the number of

---

[1] Defendant's Motion for Protective Order [Docket No. 148] has already been rendered moot. After a telephonic conference was held on October 12, 2005, the parties submitted a Joint Motion to Enter an Agreed Protective and Confidentiality Order [Docket No. 158] that the Court granted less than two weeks later [Docket No. 159].

defendants has varied in each amended petition, over sixty defendants have been named in this lawsuit at one point or another, all of whom were alleged to be present or past owners of a gas pipeline that runs beneath the City of San Benito. After much delay and confusion, and without discussing the details, suffice it to say that a single defendant has emerged as the sole owner of the pipeline at issue in this case—the Kinder Morgan Tejas Pipeline, L.P. ("Kinder Morgan"). *See Docket Nos. 139, 141*. The facts as they pertain to the issue at hand are somewhat less convoluted.

Kinder Morgan and its predecessors have owned and operated an intrastate gas pipeline system now known as the Kinder Morgan Tejas Pipeline since 1986. A segment of that pipeline serves the La Palma electric generating plant in San Benito, Texas, and, by necessity, portions of the pipeline lie under the City's streets. Kinder Morgan's sole customer within San Benito is the La Palma plant, and it has never made sales from the pipeline to any other customer within the City.

On June 25, 1941, the City of San Benito passed Ordinance No. 478, an ordinance that allowed San Benito to charge gas utilities rental fees for the use of the City's "streets, alleys, parks and other public places." *See Docket No. 146*, Ex. C. The ordinance applies to "all persons and corporations using and maintaining any main and auxiliary lines, appurtenances and fixtures for the **sale <u>and</u> distribution** of natural gas" and charged two percent of the gross receipts from the sale and distribution of natural gas within the city limits. *Id.* (emphasis added). It appears as though Ordinance No. 478 was one of several local ordinances that were passed by municipalities in the wake of the changes made by the 47th Texas Legislature to Article 7060 of the Texas Revised Civil Statutes.

In 1936, the Texas Legislature passed an omnibus tax bill that imposed an occupation tax on "[e]ach individual, company, corporation or association, owning, operating or managing or

controlling any gas, electric light, electric power or water works…used for **local sale and distribution**." TEX. REV. CIV. STAT. ANN. art. 7060, Acts 1936, 44th Leg., 3d C.S., ch. 495, § 3, 1936 Tex. Gen. Laws 2071, 2072 (emphasis added), *repealed by* Acts 1959, 56th Leg., 3d C.S., ch. 1, § 7, 1956 Tex. Gen. Laws 187. The Act specifically prohibited cities from imposing an occupation tax "for the privilege of doing business" on any entity that was already paying an occupation tax to the State. *Id.* In 1941, the Texas Legislature amended Article 7060. Act of May 20, 1941, 47th Leg., R.S., ch. 184, art. V, § 1, 1941 Tex. Gen. Laws 283, *repealed by* Acts 1959, 56th Leg., 3d C.S., ch. 1, § 7, 1956 Tex. Gen. Laws 187. Although municipalities were still prohibited from imposing an occupation tax on entities that were already paying an occupation tax to the State, the 1941 amendments allowed them to make "a reasonable charge, otherwise lawful, for the use of [] streets, alleys, and public ways by a **public utility** in the conduct of its business." *Id.* at 284 (emphasis added). Any such charges, however, were limited to "two (2) per cent of the gross receipts of such utility within such municipality derived from the **sale** of gas, electric energy, or water." *Id.* (emphasis added).[2]

Relying on Ordinance No. 478, the City of San Benito sued numerous defendants claiming that they failed to pay for the use of City property and/or rights of way. The current claims against Kinder Morgan are for: (1) violating the City charter and/or statutes; (2) removal of purpresture; (3) unjust enrichment/quantum meruit; (4) trespass; (5) wrongful appropriation and/or pernance of profits; (6) tortious interference; and (7) negligence/negligence per se. *Docket No. 76*. San Benito claims that it is entitled to collect street rentals from Defendant under the ordinance and that Defendant's activities tortiously interfere with "other business activities of the City" and with "the

---

[2]   Article 7060 has essentially been re-codified at Texas Tax Code §§ 182.021–182.027.

City's ability to rent that space [being used by Defendant] to others." *Id.* San Benito seeks damages, including exemplary damages, declaratory relief, an order for an accounting, injunctive relief relating to preservation of records, and attorneys' fees.

## II.  DISCUSSION

Kinder Morgan's Motion for Summary Judgment contains three main arguments: (A) the Ordinance does not apply to Kinder Morgan or its pipeline because it does not and has not engaged in "distribution" of natural gas; (B) under Texas law, the City lacks the power to charge a street rental because the pipeline is an inter-urban business; and (C) statutes authorizing street rental charges do not apply to Kinder Morgan because it does not operate as a public utility. *Docket No. 145*. The Court finds merit in the first and third arguments raised by Kinder Morgan. The Court purposefully has chosen not to address Kinder Morgan's argument regarding the question of whether San Benito is precluded from charging inter-urban pipelines street rentals. Furthermore, the City of San Benito has failed to respond to Kinder Morgan's arguments that there is no evidence of tortious interference, tortious conduct of any kind, or damages to the City resulting from any alleged tort. Therefore, the Court will focus its discussion on the "distribution" and "public utility" arguments.

### A.   The "Distribution" Argument

Kinder Morgan argues that it did not "distribute" gas within the City of San Benito because the term "distribution" does not include the sale of gas to a single customer. Kinder Morgan's position is supported by a seventy-year-old Supreme Court of Texas case in which the court discussed the 1936 version of Article 7060.

In *Utilities Natural Gas Co. v. State of Texas*, 128 S.W.2d 1153 (Tex. 1939), the State sued

to recover occupation taxes from the defendant who failed to make the quarterly reports and occupation tax payments to the State Comptroller pursuant to Article 7060. The defendant owned and operated a natural gas producing, gathering, and transmission system in Refugio and Victoria Counties. Although the system at issue did not cross, use, or occupy any alleys, streets, or other public places within the city limits of Victoria, it did enter the city limits at a single point where it delivered the gas to—the premises of the Central Power & Light Co. ("CP&L"). CP&L was the defendant's sole customer within Victoria and the defendant did not sell or distribute gas to the general public. Although the court agreed that the pipeline was used to make a "sale" of gas within the city, it was not convinced that the "distribution" of gas had occurred. *Id.* at 1155. The court ruled that the Legislature did not intend the term "distribution" to mean "the transfer of the possession of gas, by means of the pipe line, to a single purchaser where such purchaser is the only customer to whom the gas company sells gas in the city." *Id.* Rather, the term means "the transfer of possession of gas to various individuals or concerns in the city." *Id.* Thus, the defendant was not subject to the occupation tax.

The facts in *Utilities Natural Gas Co.* and in the instant matter, while similar, are not identical. *Utilities Natural Gas Co.* involved an occupation tax while the case at hand involves a street rental charge.[3] Further, even though both sets of facts show that gas sales were made to a single customer within the city limits of a municipality, the pipeline involved in *Utilities Natural Gas Co.*, unlike the Kinder Morgan pipeline, did not intersect any of the city's streets or public ways. Moreover, the pipeline in *Utilities Natural Gas Co.* was located only within two counties.

---

[3] The Supreme Court of the United States has recognized a difference between the two. *See City of St. Louis v. W. Union Tel. Co.*, 148 U.S. 92, 97 (1893).

The pipeline at issue here is an extensive intrastate pipeline extending from as far southwest as Webb County, Texas, to as far north as Morris County, Texas. *See Docket No. 146*, Ex. B. Most importantly, however, is the fact that at the time *Utilities Natural Gas Co.* was decided, it was not clear whether cities could charge utilities street rentals. The San Benito Ordinance, however, was passed in 1941 soon after amendments were made to Article 7060 allowing cities to do so.

The key similarity between the facts in *Utilities Natural Gas Co.* and the case at hand is the fact that the San Benito ordinance also uses the language "sale **and** distribution." Like the court in *Utilities Natural Gas Co.*, this Court notes that there is no doubt that Kinder Morgan made sales to the La Palma plant within the city limits of San Benito, but there is nothing to indicate that the "distribution" of gas by Kinder Morgan has ever occurred. The City argues that the *Utilities Natural Gas Co.* case "only offers a narrow interpretation of the use of 'distribution' based on the tax issue and statute at hand." *Docket No. 149*, at 6. Indeed, the *Utilities Natural Gas Co.* court based its ruling on its interpretation of the intent of the Texas Legislature. Arguably, the intentions of the Texas Legislature and the City of San Benito are not comparable. The City of San Benito, however, passed the ordinance after a Supreme Court of Texas case was published interpreting the term "distribution." The 1941 version of Article 7060 permitted cities to charge public utilities for the use of their streets but capped the charges based on the gross receipts derived from the "sale of gas." 1941 Tex. Gen. Laws at 284. In accordance with the 1941 version of Article 7060, San Benito could have easily omitted the phrase "and distribution" from the ordinance thereby allowing street rental charges for the "sale" of gas within the City. Because the ordinance applies to entities that "sell **and** distribute" gas within the city limits of San Benito, Kinder Morgan, having only sold and delivered gas to a single customer on a privately-negotiated basis, is not subject to the street rental charges

authorized by San Benito Ordinance No. 478.

This Court notes that Kinder Morgan also attempts to underscore the court's ruling in *Utilities Natural Gas Co.* by arguing that the term "distribution" does not encompass sale to an individual consumer because its definition contemplates a plurality. It points to the Merriam-Webster definition of "distribution" as "to divide among several or many," and to the Black's Law Dictionary definition as "[t]he giving out or division among a number, sharing or parceling out, allotting, dispensing, apportioning." *Docket No. 145*, at 9–10. The City, on the other hand, points to the definition contained in Webster's New World Dictionary of American English as "simply dispensing, storing, selling or shipping." *Docket No. 149*, at 6–7. This Court finds the definition used by the Supreme Court of Texas in *Utilities Natural Gas Co.* to be more compelling than those offered by the parties.

### B. The "Public Utility" Argument[4]

Kinder Morgan also challenges San Benito's ability to charge a rental fee by arguing that it is not a "public utility" as that term is defined by either of the two statutes on which San Benito may attempt to rely as authorization for charging street rentals. *See* TEX. REV. CIV. STAT. ANN. art. 1175; TEX. TAX. CODE ANN. § 182.025. Article 1175 states that a home-rule municipality has the power to:

> prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas company, or **any other character of public utility** without first obtaining the consent of the governing authorities expressed by ordinance and upon paying such compensation as may be prescribed and upon such condition as may be provided by any such ordinance.

---

[4] San Benito failed to respond to this aspect of Kinder Morgan's Motion for Summary Judgment.

TEX. REV. CIV. STAT. ANN. art. 1175 (emphasis added). There is no dispute over whether San Benito is a home-rule municipality under Texas law. According to Kinder Morgan, a public utility is a business

> impressed with the public interest, and those engaged in that business must hold themselves out as serving or ready to serve all members of the public to the extent of their capacity, and the nature of the service must be such that all members of the public have an enforceable right to demand it.

*Docket No. 145*, at 15 (quoting 12 EUGENE MCQUILLAN, THE LAW OF MUNICIPAL CORPORATIONS § 34.08, at p.29 (3d ed. 1988)). Thus, Kinder Morgan argues that it does not satisfy the requirements of a public utility because it does not deliver gas to the general public and has only sold and delivered gas to a single customer on a privately-negotiated basis.

At the time the San Benito ordinance was passed, Article 7060 did not provide a definition of "public utility." Prior case law discusses the fact that no set definition existed under Texas law at the time those cases were decided.[5] For instance, the Civil Court of Appeals in Beaumont in 1928 discussed the meaning of public utility as follows:

> There is no set definition of what constitutes a "public utility," and in fact it would be difficult to construct one that would fit every conceivable case. "Utility" means the state or quality of being useful, hence the expression "public utility" means the state or quality of being useful to the public, generally used in the sense of "public use," carrying with it the duty to serve the public and treat all alike, and precludes the idea of service which is private in its nature.

*Moore v. Logan*, 10 S.W.2d 428, 434 (Tex. Civ. App.—Beaumont 1928, writ dism'd). Another court described a public utility as follows:

> [T]he term has no exact definition in law. The trend of modern decisions is to describe rather than to define a public utility as being a business or service which is

---

[5] It should be noted, however, that the Texas Legislature had declared certain businesses to be public utilities for the purposes of franchise taxes. *See generally Gulf States Utils. Co. v. State*, 46 S.W.2d 1018 (Tex. Civ. App.—Austin 1932, writ ref'd).

> engaged in regularly supplying the public with some commodity or service which is of public consequence and need, such as electricity, gas, water, transportation, or telephone or telegraph service.

*Gulf States Utils. Co. v. State*, 46 S.W.2d 1018, 1021 (Tex. Civ. App.—Austin 1932, writ ref'd).

Yet another court, in a case involving whether a home-rule city had properly granted a franchise for the gathering and collecting of garbage as a public utility, stated:

> It seems that one of the distinguishing characteristics of a public utility is the devotion of private property by the owner to a service useful to the public and which the public has a right to demand so long as it shall be continue, with reasonable efficiency, under proper charges.

*City of Wichita Falls v. Kemp Hotel Operating Co.*, 162 S.W.2d 150, 153 (Tex. Civ. App.—Fort Worth 1942), *aff'd by* 141 Tex. 90, 170 S.W.2d 217 (1943). Black's Law Dictionary defines a public utility as "[a] company that provides necessary services to the public, such as telephone lines and service, electricity, and water" or "[a] person, corporation, or other association that carries on an enterprise for the accommodation of the public, the members of which are entitled as a matter of right to use its facilities." BLACK'S LAW DICTIONARY 1582 (8th ed. 2004). Although this Court could cite to other sources for the definition of "public utility," the common thread in all of the definitions it has reviewed is that the utility in question, in this case a gas pipeline, must somehow serve the public. Kinder Morgan's sole relationship within the limits of the City of San Benito is with the La Palma electric plant. It is not a local distribution line that serves the residents of San Benito and, therefore, cannot be considered a public utility for the purposes of San Benito Ordinance No. 478.

This holding is underscored by the definition that now prevails under the Texas Tax Code. Currently, Texas Tax Code § 182.025(a) states:

> An incorporated city or town may make a reasonable lawful charge for the use of a

>city street, alley, or public way by a **public utility** in the course of its business.

TEX. TAX. CODE ANN. § 182.025 (emphasis added).  Section 182.025(e)(3)(A) defines public utility as:

>a person who owns or operates a gas or water works or water plant used for local **sale and distribution** located within an incorporated city or town in this state....

TEX. TAX. CODE ANN. § 182.025(e)(3)(A) (emphasis added). As has already been discussed, Kinder Morgan has sold but not distributed gas within San Benito. Therefore, Kinder Morgan cannot be considered a public utility under a plain interpretation of Section 182.025.

>**C.** **Tortious Conduct**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment evidence is viewed in the light most favorable to the non-movant. *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962). The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

Kinder Morgan's Motion for Summary Judgment was filed on July 18, 2005, and San Benito's response was filed on August 9, 2005. The City failed to present any evidence regarding

Kinder Morgan's alleged tortious conduct. Indeed, the response focused primarily on a discovery issue that was subsequently resolved and the City has not supplemented its response. Therefore, San Benito has failed to meet its burden to show this Court that a genuine issue of material fact exists with regard to the tortious conduct aspect of Kinder Morgan's Motion for Summary Judgment.

### III.  CONCLUSION

Kinder Morgan has not distributed gas within the city limits of San Benito. Furthermore, it is not a "public utility" as that term has been defined by either Texas case law or Texas law, or as that term is understood in everyday language. Therefore, Defendant's Motion for Leave to File Motion for Summary Judgment [Docket No. 150]; Defendant's Motion for Leave to File Supplemental Authority [Docket No. 162]; and Defendant's Motion for Summary Judgment [Docket No. 145] are hereby **GRANTED**. All other pending motions [Docket Nos. 148, 166] are hereby **DENIED as moot**.

Signed in Brownsville, Texas, this 27th day of January, 2006.

Andrew S. Hanen
United States District Judge